IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:20-CV-00330-LCB-JEP

| | | |
|---|---|---|
| COREY BETHEL | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **BRIEF IN SUPPORT** |
| | ) | **OF** |
| D.H. ROGERS, Sheriff of Guilford | ) | **MOTION TO SET ASIDE** |
| County, North Carolina, in his official | ) | **ENTRY OF DEFAULT** |
| capacity, | ) | |
| | ) | |
| Defendant. | ) | |

## PREAMBLE

**COMES NOW** Defendant Sheriff D.H. Rogers, through Counsel, pursuant to Fed.

R. Civ. P. 55(c), and submits this Brief in support of his Motion to set aside the Entry of

Default (Doc. #8) entered on June 3, 2020.

## STATEMENT OF THE CASE

The Complaint was filed April 14, 2020 and seeks declaratory and injunctive relief

arising from Plaintiff's status as registered sex offender in North Carolina. (Doc. #1, pp. 1-

2). That status relates to military courts-martial convictions Plaintiff received in 2017 for

"sexual abuse of a child" under Article 120b(c) of the Uniform Code of Military Justice.

(Doc. #1, ¶¶ 10-11). That Article is violated when a service member commits a lewd act

upon a child. Id. The Complaint, *inter alia,* alleges that *"a Sheriff's Deputy"* made the

legal determination that Plaintiff's military courts-martial convictions were a reportable

offense under the "substantial similarity" analysis in N.C. Gen. Stat. § 14-208.6, and that

1

*"Plaintiff was given no notice or opportunity to be heard prior to the determination that he was required to register on the basis of 'substantial similarity'."* (Id., ¶¶ 15-18, 29-33).

Plaintiff seeks a judicial declaration that he did not receive due process from said Deputy or his employer—Guilford County Sheriff Danny Rogers--during that decision-making process. (Doc. #1, p. 7). Plaintiff also seeks affirmative injunctive relief, requiring Sheriff Rogers to remove Plaintiff from the Registry and prohibiting the Sheriff from enforcing sex offender statutes against him. Id.

Plaintiff contends Sheriff Rogers was served with the Summons and Complaint via certified mail on April 17, 2020. (*See* Doc. ##6, 6-1). Plaintiff waited until June 3, 2020 before filing his Affidavit of Service (id.) and his accompanying Motion for Entry of Default (Doc. #7). The Clerk of Court recorded an Entry of Default against Sheriff Rogers that same day—June 3, 2020. (Doc. #8). A copy of the Entry of Default was received by the Sheriff from the Clerk via mail on Monday, June 8, 2020. (Serrin Aff. ¶ 16). Sheriff Rogers took timely action and filed the instant Motion to Set Aside the Entry of Default, with supporting Affidavits and this Brief on Friday, June 12, 2020.

## STATEMENT OF THE FACTS

### A.    Facts Related to the Entry of Default

Ms. Shannon Serrin has been employed by the Guilford County Sheriff's Office as the North Carolina certified paralegal assigned to Sheriff's Legal Team since 2018. (Serrin Aff. ¶ 2). In April of 2020, that team consisted of Deputy County Attorney James Secor, Assistant County Attorney Thomas Carruthers, and Paralegal Serrin. Id.

2

As part of her duties in <u>April 2020</u>, Ms. Serrin collected the legal mail from the mailroom inside the Sheriff's Office and screened it to determine what action was necessary. (Serrin Aff. ¶ 3). On <u>Thursday, April 16, 2020</u>, Paralegal Serrin received a <u>first-class</u> mail envelope from Plaintiff's attorney Dubbeling addressed to Sheriff Rogers (hereinafter referred to as Plaintiff's **"first mailing"**). <u>Id.</u> The envelope contained a letter dated <u>April 14, 2020</u> and an unfiled copy of the Complaint. <u>Id.</u> The letter stated this was a courtesy copy of the Complaint and that Mr. Dubbeling would *"arrange to have this lawsuit officially served upon [the Sheriff] . . . "*. <u>Id.</u> The letter did not say when or how that service would take place. <u>Id.</u> A copy of the first mailing is attached as **Ex. No. 4** to the Secor Affidavit.

Ms. Serrin provided Plaintiff's first mailing to Sheriff's Attorney Secor who directed her to begin tracking the matter on the Court's PACER system for service of process. (Serrin Aff. ¶ 3; Secor Aff. ¶ 17). Once the Sheriff was served with the Summons and Complaint, Mr. Secor intended to contact Plaintiff's Counsel and ask them to consent to a 30-day extension of time to file an Answer or other response. (Secor Aff. ¶ 22). [1]

---

[1] That first mailing came as the work load of the Sheriff's Attorneys had significantly increased due to the COVID-19 pandemic. (Secor Aff. ¶¶ 19-20). During that same time, Attorney Carruthers resigned to take a job with the NC League of Municipalities. <u>Id.</u> at ¶ 21. His last day in the office was <u>May 1, 2020</u> and his position has not been filled. <u>Id.</u>

According to the United States Postal Service ("USPS") certified mail receipt (the "green card") attached to Plaintiff's Affidavit of Service (Doc. #6-1 at p. 2), the Summons and Complaint were delivered to the Sheriff's Office at 400 W. Washington Street on the following day, Friday, April 17, 2020. (Serrin Aff. ¶ 4). This packet of materials is hereinafter referred to as Mr. Dubbeling's **"second mailing"**. The green card for the second mailing was not, however, signed by any employee or agent of the Sheriff. Id. Moreover, the abbreviations appearing on the green card, "RT C101" and "AUTH C19", are not designations used by the Sheriff's Office. Id.

Instead, the green card for Attorney Dubbeling's second mailing appears to have been initialed by the postman who delivered the mail on Friday, April 17, 2020. (Serrin Aff. ¶ 5). It appears the green card was initialed in this manner pursuant to a new USPS policy, spawned by the COVID-19 pandemic, which permits USPS employees to sign the green card to minimize contact with the addressee. Id. Paralegal Serrin was not, however, aware of this new USPS procedure for certified mail on April 17, 2020, but researched it after receiving the Entry of Default from the Clerk via first class mail on June 8, 2020. (Serrin Aff. ¶ 6). Based on that research, "RT C101" appears to refer to the postman's route number; and "AUTH C19" appears to refer to the new USPS COVID-19 procedure which authorizes the postman to sign the green card in place of the addressee. Id.

Paralegal Serrin has reviewed her calendar and the video recorded by the lobby camera in the Sheriff's Office at 400 W. Washington Street. (Serrin Aff. ¶ 8). On Friday, April 17, 2020, she attended a morning meeting with a citizen. Id. At approximately 9:50

4

a.m., Ms. Serrin escorted the citizen to the lobby.  Id.  As shown by the video, as Ms. Serrin opened the front door for the citizen to exit, the postman entered the lobby with the daily mail.  (Serrin Aff. ¶ 9).  The postman placed a stack of mail on the front desk and then left the building.  Id.  The postman did not ask for any signatures nor did he say that there was "certified mail" in the stack of mail that he had just delivered.  Id.

During the research she performed after receiving the Entry of Default on June 8, 2020, Paralegal Serrin located some additional guidance on the new USPS procedure for delivering certified mail during the COVID-19 pandemic.  (Serrin Aff. ¶ 10).  Upon information and belief, attached as **Exhibit No. 1** to Ms. Serrin's Affidavit, is a protocol issued by the Post Office.  Id.  Among other things, the protocol says that the postman, *"[w]hile maintaining a safe, appropriate distance will request the customer's first initial and last name."* Id.  Presumably this is done so that the postman can place the customer's first initial and last name on the green card.  Id.  The postman who delivered Mr. Dubbeling's second mailing on April 17, 2020 did not, however, follow this new USPS procedure.  Id.  Had he done so, Paralegal Serrin would have known that he was delivering a certified mailing and immediately alerted the Sheriff's Attorneys.  Id.

Paralegal Serrin's review of the video shows that after the postman left, she picked up an envelope in the stack, opened it in the lobby, and took the envelope with her.  (Serrin Aff. ¶ 11).  She believes this envelope contained the Summons and filed Complaint because after she received the Entry of Default on June 8, 2020, the Post Office provided the email attached to her Affidavit as **Ex. No. 2**.  Id.  That email shows 9:47 a.m. as the time Mr.

5

Dubbeling's second mailing was delivered to the Sheriff's Office on <u>April 17, 2020</u>. <u>Id.</u> This coincides with Ms. Serrin's trip to the lobby that day at approximately 9:50 a.m.. <u>Id.</u>

Ms. Serrin did not notice the certified mail markings on the envelope containing the second mailing and does not recall reading the letter that came with it. (Serrin Aff. ¶ 12).[2] Based on the manner in which the postman delivered the envelope, however, Ms. Serrin would have assumed it was a first-class mail delivery of an additional courtesy copy of the Complaint. <u>Id.</u> As a certified paralegal, Ms. Serrin is very familiar with service via certified mail. <u>Id.</u> Because, however, of the way the postman delivered this envelope, she did not perceive it to be a certified mailing. <u>Id.</u> If she had, she would have immediately notified the Sheriff's Attorneys and calendared the matter for response in 21 days. <u>Id.</u>

Immediately after receiving Mr. Dubbeling's second mailing on <u>April 17, 2020</u>, Paralegal Serrin accessed the PACER website to retrieve the docket report and to check for any information regarding service of the Complaint. (Serrin Aff. ¶ 13). Nothing on the Court's docket report indicated service on Sheriff Rogers had been completed. <u>Id.</u> From PACER, Ms. Serrin downloaded a copy of the filed Complaint. <u>Id.</u> At 10:16 a.m., (just 25 minutes after receiving Attorney Dubbeling's second mailing at approximately 9:50 a.m.), Ms. Serrin sent the downloaded copy of the filed Complaint (Doc. #1) via email to

---

[2] During <u>April and May 2020</u>, because of COVID-19, Ms. Serrin only worked in the office two to three days a week and worked from home on the other days. (Serrin Aff. ¶ 7). As a result, her in-office days were much busier than usual. <u>Id.</u>

the Sheriff's Attorneys (Secor and Carruthers) and specifically informed them that the Sheriff **had not** yet been served.  Id.  A copy of that email and its attachments are included as **Ex. No. 3** to Paralegal Serrin's Affidavit.  Id.  As best she can recall, Ms. Serrin then placed the envelope she had received from the postman and its contents (i.e., the second mailing) inside the case file in Attorney Carruthers' office.  Id. [3]

Friday, May 1, 2020 was Attorney Carruthers' last day of work at the Sheriff's Office before going on terminal leave.  (Serrin Aff. ¶ 14).  Since Paralegal Serrin had informed the Sheriff's Attorneys via her email on April 17, 2020 that Sheriff Rogers had not yet been served (which was her good faith understanding at the time), she does not believe Attorney Carruthers would have had any reason to review the contents of the envelope between April 17th and May 1, 2020.  Id.  Ms. Serrin contacted Attorney Carruthers by phone on June 8, 2020 after she received the Entry of Default, and he confirmed that he had not.  Id.  Further, on June 10, 2020, Ms. Serrin requested a search of Attorney Carruthers' emails between April 10, 2020 and June 6, 2020, for any emails which could have been sent to Mr. Carruthers by the Plaintiff's lawyers regarding service of the Complaint.  Id.  No such emails were found.  Id.

---

[3] The originals from Attorney Dubbeling's second mailing were later found on June 8, 2020 (after the default entry was received).  The second mailing was located amongst the file materials in Attorney Carruthers' former office.  (Secor Aff. ¶¶ 21 - 25).

Sheriff's Attorney Secor was not in the office the day Mr. Dubbeling's second mailing arrived (April 17, 2020) and he never saw that mailing. (Secor Aff. ¶ 24). More importantly, Sheriff Rogers—the named Defendant—never saw the second mailing. Id.

As part of her duties, Paralegal Serrin reviews PACER for new filings or additional filings pertaining to the Sheriff's Office. (Serrin Aff. ¶15). Once alerted to the existence of a new lawsuit, Ms. Serrin regularly checks the docket report of that case via PACER to determine if her clients have been served with a Summons and Complaint. Id. The following is an accurate list of dates between April 1, 2020 and June 2, 2020 that she reviewed PACER. Id.

- April 17, 2020
- April 21, 2020
- April 30, 2020
- May 4, 2020
- May 7, 2020
- May 13, 2020
- May 19, 2020
- May 27, 2020
- June 2, 2020

On each of those dates, Ms. Serrin checked the status of service in this suit. (Serrin Aff. ¶15). She found nothing in the docket report reflecting service of the Summons and Complaint on Sheriff Rogers. Id. If she had found something, she would have immediately alerted the Sheriff's Attorneys and calendared a response in 21 days. Id.

On Monday, June 8, 2020, Ms. Serrin retrieved the mail from the Sheriff's Office mailroom and discovered the Entry of Default sent by the Clerk of Court via first class mail. (Serrin Aff. ¶16). Upon receipt, she informed Attorney Secor and reviewed PACER to discover additional filings by the Plaintiff on June 3, 2020—the day after the last date that she had checked PACER the preceding week as shown above. Id.

On <u>Tuesday, June 9, 2020</u>, Ms. Serrin retrieved the mail and it included a first-class mail envelope from Attorney Dubbeling (addressed to Sheriff Rogers) containing the Affidavit of Service and Motion for Entry of Default. (Serrin Aff. ¶17) (hereinafter referred to as Plaintiff's **"third mailing"**.). Although the Certificates of Service for the Affidavit of Service and Motion for Entry of Default state that Plaintiff's counsel served these pleadings via first class mail on <u>Wednesday, June 3, 2020</u>, the envelope which bore these documents is postmarked on the afternoon of <u>Friday, June 5, 2020</u>. (Secor Aff. ¶ 29). Copies of these materials are attached as **Ex. No. 7** to the Secor Affidavit. <u>Id</u>. Again, those documents were not received by the Sheriff's Attorney until <u>Tuesday, June 9, 2020</u>. <u>Id</u>. It is not clear who is responsible for that additional two-day delay in the mailing. It could have been the Post Office. <u>Id</u>. That delay is, however, yet another irregularity in Plaintiff's service of process in this case, and it further ensured that the Motion for Entry of Default would never reach Sheriff Rogers until after the Clerk had already entered the default. <u>Id</u>.

Prior to the filing of this lawsuit, Sheriff's Attorney Secor had communicated directly with the Plaintiff (before he was represented by counsel) and one of his two Attorneys of record on a number of occasions during the <u>Fall of 2018</u> and in <u>September 2019</u>. (Secor Aff. ¶¶ 3, 4, 9 – 12, 15, 26; and **Ex. Nos. 2** and **3** thereto). While Plaintiff's counsel may not have been legally obligated to notify Mr. Secor that the Sheriff had been served, they clearly knew who he (Secor) was and, more importantly, <u>that he represented the Sheriff with respect to Plaintiff's claims in this specific matter</u>. (Secor Aff. ¶ 26). Attorney Secor's contact information and biography are also posted on the Sheriff's

9

internet website at this link: https://www.guilfordcountync.gov/our-county/sheriff-s-office/about-gcso/sheriff-s-attorneys, making him an easy to reach. Id. Despite that, Plaintiff's lawyers never informed Mr. Secor that Sheriff Rogers had purportedly been served with the Summons and Complaint on April 17, 2020. Id. As a result, Mr. Secor had no notice that Sheriff Rogers had purportedly been served until he received a copy the Entry of Default from the Clerk via first class mail on Monday, June 8, 2020. (Id. at ¶ 27).

Furthermore, the default-related motion and documents filed by Plaintiff on June 3, 2020 (see Doc. #6) reflect that although he contends Sheriff Rogers was served with the Summons and Complaint via certified mail on April 17, 2020, Plaintiff's Affidavit of Service was not filed by his counsel for another six weeks until June 3, 2020 when it was filed contemporaneously with his Motion for Entry of Default. (Secor Aff. ¶ 28). As a result, although the Sheriff's paralegal, Ms. Serrin, was diligently and regularly checking PACER for confirmation of service during April, May and June 2020, her efforts were stymied by the Plaintiff's prolonged delay in filing the Affidavit of Service. Id.

## B. Facts Related to Due Process and Sheriff Rogers' Meritorious Defense

The procedural history of this matter dates back to October 9, 2018--18 months before suit was filed, when Plaintiff and Deputy P. Murphy of the GCSO's Sex Offender Registration Unit contacted the in-house legal advisor for the Sheriff's Office--Deputy County Attorney Secor. (Secor Aff. ¶¶ 3-4). Plaintiff and Deputy Murphy sought Attorney Secor's assistance in determining whether Plaintiff's military convictions qualified as a

10

"reportable offense" under N.C. Gen. Stat. § 14-208.6, and whether Plaintiff would be required to register as a sex offender.  <u>Id.</u>  The pertinent portions of the statute read:

**N.C. General Statute § 14-208.6.  Definitions.**

(4)      "Reportable conviction" means: . . .

c.      A final conviction in a federal jurisdiction (<u>**including a court martial**</u>) of an offense, which is <u>**substantially similar**</u> to an offense against a minor or a sexually violent offense as defined by this section.

At the very crux of Plaintiff's Complaint are his allegations that *"a Sheriff's Deputy"* made the legal determination that his military convictions qualified as a reportable offense under the "substantial similarity" test in Gen. Stat. § 14-208.6, and that *"Plaintiff was given no notice or opportunity to be heard prior to the determination that he was required to register on the basis of 'substantial similarity'."*  (Doc. #1, ¶¶ 15-18, 29-33).  Both of these statements are false, and given they are critical to Plaintiff's ability to sustain his claims in the action, they warrant a decision on the factual and legal merits of this case, not a disposition based on an Entry of Default.

Specifically, and as to the first contention, the decision concerning whether Plaintiff's military convictions satisfied the "substantially similar" analysis under Gen. Stat. § 14-208.6 was not made by a Deputy Sheriff, but rather the undersigned—an attorney since <u>1990</u>.  (Secor Aff. ¶ 8).  Plaintiff knew—before suit was filed—this decision was made by an attorney acting as legal advisor to the Sheriff, yet still alleged in the Complaint, that this determination was made by a layman Deputy.  Why?  Probably, because that fits much better into his "lack of due process" narrative.

11

As to the second contention, contrary to his claims, Plaintiff was given substantial notice and opportunity to be heard. Copies of Attorney Secor's email communications with Plaintiff (prior to him retaining counsel) are attached as **Ex. No. 2** to the Secor Affidavit. Those written communications between Mr. Secor (on behalf of the Sheriff) and Plaintiff took place over a two-month period from <u>October 9, 2018</u> to <u>December 17, 2018</u>, **before** Mr. Secor determined that Plaintiff's courts-martial convictions satisfied the "substantially similar" analysis under Gen. Stat. § 14-208.6. (Secor Aff. ¶ 9 and Ex. No. 2 thereto).

In addition to these email communications, Mr. Secor also spoke to Plaintiff by phone on several occasions during <u>October, November and/or December 2018</u>, to discuss the status of his research, to seek Plaintiff's input and information about the military convictions, and to repeatedly encourage him to retain local counsel. (Secor Aff. ¶ 10).

To ensure his decision was based on all the information available, Attorney Secor not only sought input from the Plaintiff, but also from the military attorney ("JAG") representing Plaintiff as his Military Appellate Defender. (Secor Aff. at ¶ 11). In addition, Mr. Secor obtained and read the Plaintiff's courts-martial judgment and the <u>656 page</u> transcript of those proceedings; and he also thoroughly researched the elements of the military charges and those of comparable North Carolina criminal statutes. (<u>Id</u>.).

As shown by Mr. Secor's written communications with Plaintiff dated <u>December 17, 2018</u> and <u>October 15, 2018</u> (Secor Aff.--**Ex. No. 2,** pp. 1-8**)**, he provided Plaintiff with a detailed explanation regarding how and why he determined the courts-martial convictions were a reportable offense under Gen. Stat. § 14-208.6. (Secor Aff. ¶ 12). In particular,

those convictions were substantially similar to the criminal offense of "taking indecent liberties with a child" under N.C. Gen. Stat. §14-202.1. Id. The same written communications reflect Mr. Secor provided Plaintiff with specific supporting citations to the military trial transcript, North Carolina statutes, and relevant case law.

It is one thing for Plaintiff and his lawyers to argue that the NC sex offender statutes do not provide a mechanism for due process; or to contend that despite Mr. Secor's actions above, that Plaintiff did not receive sufficient due process. However, to baldly state *"Plaintiff was given __no__ notice or opportunity to be heard prior to the determination that he was required to register on the basis of 'substantial similarity'"* as they have in the Complaint (Doc. #1 at ¶¶ 15-18 and 29-33; emphasis added) is quite another matter and a complete misstatement of the facts. Given the abundant evidence included in and attached to the Secor Affidavit, it is clear that those allegations lack any legitimate factual basis.

Why is the foregoing discussion relevant to the instant Motion to Set Aside the Entry of Default? Because the actions of the Sheriff's Attorney and his detailed communications with the Plaintiff (as documented in the Secor Affidavit and **Ex. No. 2** thereto), demonstrate Sheriff Rogers has a valid defense to this lawsuit precisely because those actions refute the Complaint's allegations that (a) a Deputy Sheriff performed the "substantial similarity" analysis required by N.C. Gen. Stat. § 14-208.6; and (b) that the *"Plaintiff was given no notice or opportunity to be heard prior to the determination that he was required to register*

13

*on the basis of 'substantial similarity'."* (Doc. #1, ¶¶ 15-18 and 29-33).[4] On the contrary, the "substantial similarity" analysis was performed by an experienced Attorney for the Sheriff's Office and Plaintiff was given substantial notice and the opportunity to be heard.

## LAW AND ARGUMENT

### A.  The Legal Standards

As a starting point, Fed. R. Civ. P. 55(c) states that an entry of default may be set aside "for good cause".  Moreover, the District Court has broad discretion in setting aside a default entry. <u>Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.</u>, 383 F.2d 249, 251 (4th Cir.1967). A very recent opinion by Senior United States District Court Judge N. Carlton Tilley, Jr. in the Middle District, contains a thorough discussion of the applicable law. A copy of that opinion is attached as **Ex. No. 1** to this Brief.  In that case-- <u>MacRegen, Inc. v. Burnette</u>, No. 1:19CV591, 2020 WL 2097631, at *2 (M.D.N.C. May 1, 2020)—Judge Tilley set aside an entry of default and reasoned as follows:

---

[4] Nine months later, Plaintiff's Attorney Zellmer contacted the Sheriff's Attorneys in <u>September 2019</u> and asked that they revisit this determination.  As described in ¶¶ 15 to 16 of the Secor Affidavit, the Assistant Sheriff's Attorney Carruthers (the former City Attorney for Greensboro and a lawyer with over 30 years of experience), reviewed the arguments presented by both sides and came to the same determination as Attorney Secor. <u>Id.</u> at 15-16.  The email communications with Plaintiff's Attorney Zellmer are attached as **Ex. No. 3** to the Secor Affidavit.

14

When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the [non-moving] party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citing Payne ex. Rel. Estate of Calzada v. Brake, 439 F.3d 198, 204 (4th Cir. 2006)); see also United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982) ("Relief from a judgment of default should be granted where the defaulting party acts with reasonable diligence in seeking to set aside the default and tenders a meritorious defense.")  Although a court has discretion on whether to set aside an entry of default, there is a "strong preference that ... defaults be avoided and that claims and defenses be disposed of on their merits." Reynolds Innovations, Inc. v. E-Cigarette Direct, LLC, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012) (citing Colleton Preparatory Acad., Inc., 616 F.3d at 417). " 'Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so the case may be heard on the merits.' " USF Ins. Co. v. Bullins Painting, Inc., No. 1:11CV410, 2012 WL 4462004, at *1 (M.D.N.C. Sept. 25, 2012) (quoting Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969)).

To establish a meritorious defense, [Defendant] . . . must provide "a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for [him]." <u>Moradi</u>, 673 F.2d at 727; see also <u>Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.</u>, 843 F.2d 808, 812 (4th Cir. 1988) ("A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party ...."). However, "[t]he defaulting party 'is not required to establish a meritorious defense by a preponderance of the evidence[;] ... the mere assertion of facts constituting a meritorious defense' may suffice." <u>Terry v. Swift Trans.</u>, No. 1:16CV256, 2017 WL 4236923, at *3 (M.D.N.C. Sept. 22, 2017) (citing Cent. Operating Co. v. Util. Workers of Am., AFL-CIO, 491 F.2d 245, 252 n.8 (4th Cir. 1974).

### 1. "The Meritorious Defense" Requirement

Notwithstanding his allegations to the contrary, Plaintiff was provided with ample due process, including notice and the opportunity to be heard, before it was determined by an experienced attorney at the Sheriff's Office, that Plaintiff was required to register as a sex offender. (Secor Aff. ¶¶ 3 – 4, 8). That decision-making process took place over a two-month period from <u>October 9</u> to <u>December 17, 2018</u>. (Secor Aff. ¶ 9 and Ex. No. 2 thereto).

During that period, the undersigned counsel for the Sheriff not only sought substantial input from Plaintiff, but also from his military appellate defender. (Secor Aff. ¶¶ 10 - 11). In addition, the undersigned read the courts-martial judgment and the <u>656 page</u> transcript of the military court proceedings. <u>Id.</u> at 11. The undersigned also thoroughly

researched the elements of the military charges for which Plaintiff was convicted and the elements of all potentially comparable North Carolina criminal statutes. Id.

On December 17, 2018, at the conclusion of that lengthy process, the undersigned provided Plaintiff with a detailed written explanation concerning why his courts-martial convictions constituted a reportable offense under Gen. Stat. § 14-208.6, thus requiring him to register a sex offender. (Secor Aff. ¶ 12). In sum, Plaintiff received his due process and the determination that his military convictions were for offenses "substantially similar" to North Carolina crimes, was both factually and legally well-grounded.

Last, the prior decision by the Federal District Court in the USDC-EDNC in Meredith v. Stein, 355 F.Supp.3d 355 (E.D.N.C.) (2018), upon which Plaintiff primarily relies, is readily distinguishable from the matter *sub judice*. In Meredith, the decision by a Sheriff's Deputy to place the plaintiff on the Sex Offender Registry was made without any showing of due process. The facts cited by the Meredith Court are limited, but there is no indication that the Deputy in that case made his/her decision after consulting counsel, received any evidence from the plaintiff (i.e., the registrant), nor that he/she provided the plaintiff with any legal or factual basis for the decision to place him on the registry. *See* id. at pp. 359-60, 364-65. What happened in the Meredith matter is a far cry from how the Plaintiff *sub judice* was treated by the Sheriff Rogers' Office and its undersigned Attorney.

## 2. The Reasonable Promptness Requirement

The Entry of Default was recorded by the Clerk on June 3, 2020 (Doc. #8). A copy was received from Clerk by the Sheriff's staff on Monday, June 8, 2020. (Serrin Aff. ¶

17

16). Just 4 days after receipt (and 9 days after entry), Sheriff Rogers, filed the instant Motion to Set Aside the Entry of Default, along with detailed supporting Affidavits, and this Brief. The "reasonable promptness" requirement has been satisfied.

### 3. "Good Cause" and the "Personal Responsibility of the Defaulting Party"

Ms. Serrin, the paralegal for the Sheriff's Office, received a courtesy copy of the unfiled Complaint from Plaintiff's Counsel on <u>April 16, 2020</u>, via first class mail. (Serrin Aff. at ¶ 3). Thereafter, at the request of the Sheriff's Attorney, she began diligently examining PACER filings approximately once each week to determine when service would be consummated so that a timely response to the Complaint could be filed. (Serrin Aff. ¶¶ 3 and 15; Secor Aff. ¶ 22). Each time Paralegal Serrin checked PACER, she found no indication of service of the Summons and Complaint. (Serrin Aff. ¶ 15). Although Plaintiff contends service of the Summons and Complaint was made via certified mail on <u>April 17, 2020</u>, no Affidavit of Service was filed by Plaintiff until some 6 weeks later--on <u>June 3, 2020</u>. (Serrin Aff. ¶ 16; Secor Aff. ¶ 28). On that date, the Affidavit of Service was finally filed--contemporaneously with Plaintiff's Motion for Entry of Default. (Secor Aff. ¶ 28 and *see* Doc. #6). As a result of Plaintiff's 6 week delay in filing the Affidavit of Service, Sheriff Rogers' diligent efforts to regularly check the PACER website for service during <u>April, May and early June 2020</u> were thoroughly thwarted. (Secor Aff. ¶ 28).

The certified mail receipt (a/k/a "the green card") attached to Plaintiff's Affidavit of Service (Doc. #6-1), which purports to reflect service of the Summons and Complaint on <u>April 17, 2020</u>, was not signed for by Sheriff Rogers, his employees, attorneys, or

authorized agents. (Serrin Aff. ¶ 4). Instead, it was initialed by a postal worker under the purported authority of a new COVID-19 delivery protocol implemented by the USPS on March 20, 2020. (Serrin Aff. ¶ 5). As a result of this unusual and unorthodox protocol, the mailing was inadvertently (but understandably) perceived by the Sheriff's Paralegal Serrin as first-class mail—not a certified mailing intended to effect service of process. (Serrin Aff. ¶¶ 4 - 13). This good faith misunderstanding on Ms. Serrin's part is clearly corroborated by the email she sent to Sheriff's Attorneys Secor and Carruthers on April 17, 2020, in which she informed them the Complaint had been filed, but that Sheriff Rogers had not yet been served. (Serrin Aff. ¶ 13 and **Ex. No. 3**; Secor Aff. ¶ 25 and **Ex. No. 6**).

Last, while notifying opposing counsel that his/her client has been formally served with the Summons and Complaint may not be required by the Federal Rules, the Plaintiff and at least one of his two lawyers knew that the undersigned attorney was representing Sheriff Rogers in connection with the same claims involved in this lawsuit. In fact, the undersigned had multiple, detailed written communications concerning these claims with Plaintiff in 2018 (prior to Plaintiff being represented by counsel), and then with one of Plaintiff's attorneys in 2019. (Secor Aff. ¶¶ 9, 15 - 17; and Ex. Nos. 2 and 3 to that Affidavit). At no time, however, was the undersigned counsel for the Sheriff ever notified by Plaintiff's counsel that Sheriff Rogers had been served with the Summons and Complaint. Instead, the undersigned's first notice that service had purportedly been completed was his receipt of the Entry of Default on June 8, 2020. (Secor Aff. ¶¶ 23 - 27).

The undersigned counsel for Sheriff Rogers has practiced law for nearly 30 years and is familiar with the customs and practices of the local Bar. Common professional courtesy should have prompted the lawyers representing the Plaintiff to alert the Sheriff's Attorney that his client, Sheriff Rogers, had been served with the Summons and Complaint. This is particularly true here when opposing counsel knew the undersigned represented Sheriff Rogers in connection with the very claims upon which this lawsuit is based. The unwillingness to extend this basic courtesy, coupled with the Plaintiff's 6 week delay in filing the Affidavit of Service for the Summons and Complaint; Plaintiff's decision to file the Affidavit of Service the same day he filed his Motion for Entry of Default; and the discrepancy on the Certificates of Service for Plaintiff's Default Motion; also played a role in the events resulting in the Entry of Default. (Secor Aff. ¶¶ 26, 28 and 29). To the extent the Court finds that the undersigned Counsel for Sheriff Rogers or his staff are responsible for the default entry, the undersigned will own it. That said, the observations above concerning the actions of Plaintiff and his representatives—which contributed to this situation--are both appropriate and justified.

In sum, the failure to file a timely response to the Complaint was due to a good faith mistake and excusable neglect. There is no evidence that Sheriff Rogers or his counsel acted willfully or with gross negligence. In fact, the evidence shows that neither Sheriff Rogers nor his undersigned attorney ever saw Plaintiff's second mailing (which contained the Summons and filed Complaint) until after the default had been entered. Hence, good cause for setting aside this entry of default has been established.

### 4. **No Prejudice to the Plaintiff**

The claims in the Complaint arise from a decision made on <u>December 17, 2018</u> concerning Plaintiff's obligation to register as a sex offender due to his military convictions. (Secor Aff. at ¶ 14). This lawsuit was not, however, instituted until <u>April 14, 2020</u>—**some 16 months after** that decision. Plaintiff's 16-month delay in taking legal action, dispels any notion that time is of the essence. This lawsuit was filed nearly **<u>7 months after</u>** Plaintiff's Attorney Zellmer first began representing the Plaintiff in mid-September 2019, and first notified the Sheriff's Attorney that he was challenging the Sheriff's determination. (Secor Aff. ¶¶ 15-17). That 7-month delay further undermines any credible argument that Plaintiff will be prejudiced by the mere passage of time. Moreover, Plaintiff was content to wait 6 weeks after the purported service of the Summons and Complaint before filing his Affidavit of Service and Motion for Entry of Default.

In his Complaint, Plaintiff also contends that the stigma of appearing in the sex offender registry adversely impacts him. As his lawyer put it, ***"Plaintiff is subject to public opprobrium and reputational harm."*** (Doc. #1 at ¶ 22). This is not particularly compelling because, as shown by **Ex. No. 1** to the Secor Affidavit, Plaintiff was not only convicted (pursuant to his guilty plea) of two counts of sexual abuse of a child (the equivalent of felony offenses in his General Courts-martial), but also received a Bad Conduct Discharge from the Air Force. Those convictions and the discreditable nature of Plaintiff's military discharge will likely surface during any thorough background check by a potential employer, and are as likely as his sex offender status to damage his reputation.

**5. The "History of Dilatory Action" Requirement**

Neither Sheriff Rogers nor his undersigned counsel have any record of "dilatory action" with this Court nor any other for that matter.

**6. The Public Safety Issue**

The Plaintiff has been convicted of two sexual offenses involving children under the age of 16. He was 23 years of age at the time of the offenses. He is presently included in the NC Sex Offender Registry. The Registry is a valuable resource which warns the public of the identity and whereabouts of convicted sex offenders. The interests of public safety require a hearing on the merits of this case before a decision is made to remove Plaintiff from that Registry. If following a full hearing, this Court decides to remove him from the Registry, then that will be a judicially-blessed decision which the parties will accept. To remove Plaintiff from the Registry based, however, upon a default (particularly a default obtained under the circumstances described above), would expose the public to potential danger without first conducting a proper legal and factual examination. The Entry of Default should be set aside and this case should be heard on its merits.

## CONCLUSION

**WHEREFORE** Sheriff Rogers moves the Court to set aside the Entry of Default dated June 3, 2020 and allow him to file an Answer or other response to the Complaint.

This the <u>12th</u> day of June, 2020.

/s/  J. D. Secor III
James D. Secor III (NCSB #17594)
jsecor@guilfordcountync.gov
**OF COUNSEL**
Guilford County Sheriff's Office
400 W. Washington St., Greensboro NC 27401
T:  336-641-3161 / F: 336-641-6729

## <u>CERTIFICATION</u>

Pursuant to Local Rule 7.3(d), the undersigned verifies that the foregoing Brief does not exceed **<u>6,250</u>** words—including the body of the Brief, its headings and footnotes, but excluding the caption, signature lines, certificate of service, and this certification.

This the 12th day of June, 2020.

/s/  James D. Secor III
James D. Secor III (NCSB #17594)
*Attorney for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing **MOTION TO SET ASIDE ENTRY OF DEFAULT** was served upon all parties in accordance with the provisions of Rule 5 of the North Carolina Rules of Civil Procedure by electronic mail and by depositing a copy hereof, postage prepaid, in the United States Mail, addressed as follows:

Peter Zellmer
Peter D. Zellmer, PLLC
421 N. Edgeworth St.
Greensboro, NC 27401
*Attorney for Plaintiff*

Paul Moore Dubbeling
P.M. Dubbeling, PLLC
210 North Columbia St.
Chapel Hill, NC 27514
*Attorney for Plaintiff*

This the 12th day of June, 2020.

/s/ J. D. Secor III
James D. Secor III
*Attorney for Defendant*
*Sheriff Danny H. Rogers*