

# Department of Defense
# INSTRUCTION

**NUMBER** 1325.07
March 11, 2013
Incorporating Change 4, August 19, 2020

USD(P&R)

SUBJECT:    Administration of Military Correctional Facilities and Clemency and Parole Authority

References:   See Enclosure 1

1. <u>PURPOSE</u>.  This instruction:

a.  Reissues DoD Instruction (DoDI) 1325.7 (Reference (a)) to implement policy, assign responsibilities, and prescribe procedures pursuant to DoD Directive (DoDD) 1325.04 (Reference (b)) and in accordance with (IAW) the authority in DoDD 5124.02 (Reference (c)) to carry out the administration and operation of military correctional programs and facilities and the administration and operation of military clemency and parole programs.

b.  Implements Section 1565 of Title 10, United States Code (Reference (d) (also known as "The Justice for All Act of 2004, as amended"), which requires collection of deoxyribonucleic acid (DNA) samples from each person who is or has been convicted of a qualifying military offense.

c.  Implements Section 40702 of Title 34, United States Code (Reference (e)) (also known as "The DNA Fingerprint Act of 2005, as amended"), which expands the requirements to take DNA samples from those who would have fingerprints taken at arrest or similar appropriate stages of the military law enforcement and investigation process.

d.  Revises the offenses for which sex offender notification is required, in accordance with Section 20901 et seq., of Title 34, United States Code, also known as the "Sex Offender and Registration Notification Act" (Reference (f)), and adds notification to the United States Marshals Service Sex Offender Targeting Center in accordance with paragraph 1.2.d. of DoDI 5525.20 (Reference g).

e.  Revises established policy on the award of good conduct time (GCT) and abatement time for other purposes to emphasize performance and affirmative rehabilitative steps taken by prisoners.

f.  Provides detailed guidance on the use of administrative disciplinary actions to achieve consistency among all military correctional facilities (MCF).

g.  Supersedes and cancels Under Secretary of Defense for Personnel and Readiness (USD(P&R)) Memorandums (References (h) and (i)).

h.  Incorporates and cancels the Mandatory Supervised Release Memorandum of Understanding (Reference (j).

2.  <u>APPLICABILITY</u>.  This instruction applies to OSD, the Military Departments, (including the Coast Guard at all times, including when it is a Service of the Department of Homeland Security by agreement with that Department) the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD (referred to collectively in this instruction as the "DoD Components").

3.  <u>POLICY</u>

a.  It is DoD policy that corrections programs operated by the Military Services should strive to achieve uniformity, effectiveness, and efficiency in the administration of corrections functions and clemency and supervision programs, IAW Reference (b).  Clemency and parole programs shall be administered by the Military Departments to foster the safe and appropriate release of military offenders under terms and conditions consistent with the needs of society, the rights and interests of victims, and the rehabilitation of the prisoner.

b.  Waivers to this instruction may be granted by the USD(P&R), and will remain in effect no longer than for a maximum of 18 months from the date of approval. Such waiver requests shall provide justification and, where applicable, indicate any measures considered necessary to compensate for the waived requirement(s).  Requests for an exception to the provisions of this instruction shall be forwarded, via the chain of command, to the Chair, DoD Corrections Council, Office of the Under Secretary of Defense for Personnel and Readiness, Office of Legal Policy (OUSD(P&R) LP), for processing to the USD(P&R).

4.  <u>RESPONSIBILITIES</u>

a.  <u>USD(P&R)</u>.  The USD(P&R):

(1)  Monitors compliance with Reference (b) and this instruction.

(2)  Ensures that the DoD Corrections Council makes recommendations on policies and procedures to promote uniformity, effectiveness, and efficiency in military correctional programs, including clemency and supervised release programs, and MCF operations.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 2 of 93

b. <u>Secretaries of the Military Departments and Commandant of the Coast Guard</u>. The Secretaries of the Military Departments and Commandant of the Coast Guard ensure Departmental compliance with Reference (b) and this instruction.

5. <u>PROCEDURES</u>. See Enclosure 2.

6. <u>INFORMATION COLLECTIONS</u>.

a. Annual Report on Victim and Witness Assistance, DD Form 2706, referred to in Table 7 of Appendix 5 of this instruction has been assigned report control symbol DD-P&R(A)1952 IAW the procedures in Volume 1 of DoD Manual 8910.01 (Reference (k)).

b. Annual Correctional Report, DD Form 2720, referred to in Table 7 of Appendix 5 and paragraph 3 of Enclosure 3 of this instruction has been assigned report control symbol DD-P&R(A)2067 IAW the procedures in Reference (k).

7. <u>RELEASABILITY</u>. **Cleared for public release.** This instruction is available on the Directives Division Website at http://www.esd.whs.mil/DD.

8. <u>SUMMARY OF CHANGE 4</u>. The changes to this issuance are administrative and are made in accordance with Directive-type Memorandum-20-003 (Reference (l)). They:

a. Clarify parole procedures for military prisoners transferred to the Federal Bureau of Prisons (FBOP) following the discontinuation of parole or revocation hearings by the United States Parole Commission for Service members transferred to the FBOP.

b. Establish the Military Department clemency and parole boards' (C&PB) authority to determine the terms and conditions of any clemency, parole, and mandatory supervised release (MSR) for military prisoners transferred to the FBOP.

c. Update responsibilities for the United States Disciplinary Barracks to coordinate with FBOP officials for input in making clemency, parole, and MSR reviews, which it will in turn provide to the Military Departments' C&PB.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 3 of 93

9.  <u>EFFECTIVE DATE</u>.  This instruction is effective March 11, 2013.

Jessica L. Wright
Acting Under Secretary of
Defense for Personnel and Readiness

Enclosures
    1.  References
    2.  Procedures
    3.  Information Requirements
Glossary

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 4 of 93

# TABLE OF CONTENTS

ENCLOSURE 1: REFERENCES ........................................................................................7

ENCLOSURE 2: PROCEDURES .....................................................................................9

GENERAL .........................................................................................................................9
TRANSFER AND INTAKE PROCEDURES ...................................................................9
SENTENCE COMPUTATION ........................................................................................10
CLASSIFICATION AND USE OF FACILITIES .........................................................11
CUSTODY LEVEL CLASSIFICATION FOR LEVEL I AND LEVEL II PRISONERS .....14
CUSTODY LEVEL CLASSIFICATION FOR LEVEL III PRISONERS .........................14
CUSTODY LEVELS .......................................................................................................15
    Maximum Custody.......................................................................................................15
    Medium Custody...........................................................................................................15
    Minimum Custody ........................................................................................................15
    Installation Custody and/or Trusty..............................................................................15
PRISONER ADMINISTRATION...................................................................................16
    Health and Comfort Supplies ......................................................................................16
    Use of Prisoners' Personal Funds ..............................................................................16
    Prisoner Clothing Allowances .....................................................................................16
    Gratuities ......................................................................................................................17
    Correspondence and Visits ..........................................................................................17
    American Red Cross .....................................................................................................19
BOARDS ..........................................................................................................................19
    Discipline and Adjustment (D&A) Boards..................................................................19
    Disposition Boards........................................................................................................19
    Classification and Assignment Boards ........................................................................19
ADMINISTRATIVE CONTROL AND DISCIPLINARY MEASURES.............................19
PROGRAMS IN MILITARY CORRECTIONAL FACILITIES.........................................21
EXERCISE, MORALE, AND RECREATION ACTIVITIES............................................22
RELIGIOUS ACTIVITIES .............................................................................................23
MCF STAFFING AND PERSONNEL REQUIREMENTS ...........................................23
TRANSFER TO FEDERAL INSTITUTIONS ...............................................................24
CLEMENCY, PAROLE, MSR, REENLISTMENT, AND RESTORATION TO DUTY .....25
ELIGIBILITY AND PROCEDURES FOR CONSIDERATION FOR CLEMENCY,
    RESTORATION, AND REENLISTMENT.................................................................27
ELIGIBILITY AND PROCEDURES FOR GRANTING PAROLE .....................................30
ELIGIBILITY, PROCEDURES, AND SELECTION OF PRISONERS FOR MSR AT
    THEIR MRD................................................................................................................32
    Eligibility .....................................................................................................................32
    Procedures....................................................................................................................32
    Criteria .........................................................................................................................32
    Submission Guidelines.................................................................................................33
    Military Department C&PB Responsibilities .............................................................33

Case 1:20-cv-00330-LCB-JEP    Document 26-1    Filed 06/10/21    Page 5 of 93

MCF Responsibilities............................................................34

RELEASING PROCEDURES FOR SUPERVISED RELEASE (PAROLE OR MSR) ........34

    Supervised Release .........................................................34

    MCF Responsibilities and General Provisions .........................34

    Military Department C&PB Responsibilities ...........................37

MONITORING PROCEDURES DURING SUPERVISED RELEASE (PAROLE AND

    MSR)..................................................................................37

    MCF Responsibilities.......................................................37

    Military Department C&PB Responsibilities ...........................37

PROCEDURES FOR REVOKING SUPERVISED RELEASE (PAROLE OR MSR)..........38

RELEASE PROCEDURES ....................................................................41

V/W ASSISTANCE REQUIREMENTS....................................................43

DNA COLLECTION AND ANALYSIS REQUIREMENTS ..............................44

DoD FORMS ....................................................................................44


APPENDIXES:

    1. OFFENSE SEVERITY SCALE (ALPHABETICAL) UCMJ CODES FOR DoD

       USE ..............................................................................45

    2. TEMPLATE FOR ACKNOWLEDGEMENT OF MANDATORY SUPERVISED

       RELEASE (MSR BRIEFING) ............................................... 69

    3. ABATEMENT OF SENTENCES TO CONFINEMENT ........................... 70

    4. LISTING OF OFFENSES REQUIRING SEX OFFENDER PROCESSING............ 79

    5. FORMS ......................................................................... 87


ENCLOSURE 3:  INFORMATION REQUIREMENTS ................................... 89

GLOSSARY ..................................................................................... 90

    PART I:  ABBREVIATIONS AND ACRONYMS ........................................ 90

    PART II:  DEFINITIONS................................................................. 91

TABLES

    1. UCMJ Codes For DoD Use ..........................................................45

    2. Old Partial Month Rate of Earning Table ...................................... 71

    3. Partial Month Rate of Earning Table ........................................... 72

    4. Offenses Defined before October 1, 2007 ...................................... 80

    5. Offenses Defined on or after October 1, 2007 and before June 28, 2012......... 81

    6. Offenses Defined on or after June 28, 2012 .................................... 84

    7. DoD Forms ............................................................................. 87

FIGURE

    Template for Acknowledgment of Mandatory Supervised Release (MSR) Briefing............. 69

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 6 of 93

ENCLOSURE 1

REFERENCES

(a)   DoD Instruction 1325.7, "Administration of Military Correctional Facilities and Clemency and Parole Authority," July 17, 2001 (hereby cancelled)

(b)   DoD Directive 1325.04, "Confinement of Military Prisoners and Administration of Military Correctional Programs and Facilities," August 17, 2001

(c)   DoD Directive 5124.02, "Under Secretary of Defense for Personnel and Readiness (USD(P&R))," June 23, 2008

(d)   Section 1565 of Title 10, United States Code (amended by Section 203(c) of Public Law 108-405 (October 30, 2004), also known as "The Justice for All Act of 2004"

(e)   Section 40702 of Title 34, United States Code, also known as "The DNA Fingerprint Act of 2005", as amended

(f)   Section 20901 et seq., of Title 34, United States Code, also known as the "Sex Offender Registration and Notification Act"

(g)   DoD Instruction 5525.20, "Registered Sex Offender (RSO) Management in DoD," November 14, 2016

(h)   Under Secretary of Defense for Personnel and Readiness Memorandum, "Change to DoD Policy on Abatement of Sentences to Confinement," June 23, 2004 (hereby cancelled)

(i)   Under Secretary of Defense for Personnel and Readiness Memorandum, "Clarification of DoD Policy on Abatement of Sentences to Confinement," September 17, 2004 (hereby cancelled)

(j)   Memorandum of Understanding Among Department of Defense Service Clemency and Parole Boards and Corrections Headquarters Agencies, "Standardized Procedures for Management of Supervised Release," March 2, 2006 (hereby cancelled)

(k)   DoD Manual 8910.01, Volume 1, "DoD Information Collections Manual: Procedures for DoD Internal Information Collections," June 30, 2014, as amended

(l)   Directive-type Memorandum 20-003, "DoD Parole Authority for Service Members Transferred to Federal Bureau of Prisons Facilities," August 19, 2020

(m)  DoD 1325.7-M, "DoD Sentence Computation Manual," July 27, 2004, as amended

(n)   DoD Instruction 1300.17, "Accommodation of Religious Practices Within the Military Services," February 10, 2009, as amended

(o)   DoD Instruction 1030.2, "Victim and Witness Assistance Procedures," June 4, 2004

(p)   Manual for Courts-Martial United States, 2012 Edition.

(q)   DoD Directive 1030.01, "Victim and Witness Assistance," April 13, 2004

(r)   DoD Instruction 5505.14, "Deoxyribonucleic Acid (DNA) Collection Requirements for Criminal Investigations, Law Enforcement, Corrections, and Commanders," December 22, 2015

(s)   DoD 7750.07-M, "DoD Forms Management Program Procedures Manual," May 7, 2008, as amended

(t)   DoD Instruction 7730.47, "Defense Incident-Based Reporting System (DIBRS)," January 23, 2014

(u)   DoD 7730.47-M, "Defense Incident-Based Reporting System (DIBRS): Data Segments and Elements," dates vary by volume

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 7 of 93

(v)   Section 101-11.204 of Title 41, Code of Federal Regulations, "Interagency Reports Management Program," July 2002

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 8 of 93

ENCLOSURE 2

PROCEDURES

1. <u>GENERAL</u>. The MCF shall be operated to maintain good order, discipline, safety, and security. Procedures for operating facilities, processing prisoners, and conducting programs shall be uniform to the maximum extent possible. A prisoner confined in an MCF shall be subject to the rules of the confining facility regardless of the Service affiliation of the prisoner. The forms referenced in this instruction or their electronic equivalent shall be used to promote uniformity, effectiveness, and efficiency in the administration of correctional facilities and of clemency and supervised release programs.

2. <u>TRANSFER AND INTAKE PROCEDURES</u>

   a. A military prisoner's place of confinement shall be determined by the DoD designation system or respective Service corrections headquarters.

     (1) To facilitate the transfer/intake, confining officials shall complete DD Form 2707, "Confinement Order." Transferring commanders will ensure that medications and required documents accompany the prisoner to assist in risk assessment and appropriate classification of prisoners, to include:

       (a) All reasonably available investigative reports concerning the confining offense(s) (to include victim and witness statements and investigator's summary).

       (b) Medical records and dental records (hardcopy records do not need to be transferred with the prisoner when available in electronic databases).

       (c) Completed victim/witness forms, report of results of trial, statement of conduct to include all disciplinary reports received while in confinement, previous confinement records, court-martial promulgating order, if any, and no contact orders/restrictions.

       (d) Permanent change of station orders, military personnel file, Common Access Card or military identification card, and microfiche/film (restricted file) if so kept and available.

       (e) All pending disciplinary actions to be completed and closed, if transferred from an MCF.

       (f) Any documents which indicate whether the prisoner, based on conviction, is required to register as a sex offender.

     (2) If an MCF, including military/security police detention cells, is not reasonably available, prisoners may be confined in civilian facilities used by the U.S. Marshals Service. If a facility used or approved by the U.S. Marshals Service is not reasonably available, a military

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 9 of 93

prisoner may be transferred to a facility accredited by the American Correctional Association (ACA) or facility accredited by the State in which the prisoner is to be confined.

(3)  Coordination for transfer from one Service's custody to the facility of another Service must be made with the Service corrections headquarters of the receiving Service at a minimum of 48 hours prior to the transfer.  Pretrial confinement transfers do not require 48 hours' notice.  After coordination is made, the transferring Service will notify the gaining MCF and will provide the prisoner's name, gender, offenses, sentence, assigned escorts, arrival time and date, and any potential problems or issues.

b.  MCF commanders shall establish processing procedures that will ensure maintenance of good order, discipline, safety, and security of persons and property.  DD Form 2710, "Prisoner Background Summary," (or computer-generated equivalent) shall be used to facilitate processing of prisoners placed in MCFs.

c.  A prisoner should be promptly transferred to an appropriate facility as soon as the convening authority has taken action on the sentence.  A prisoner may be transferred to an appropriate facility before the convening authority takes action when required by the needs of the Service.  If properly authorized, a prisoner may be transferred to an appropriate facility or assigned to an organization to participate in a return-to-duty program.

d.  The MCF will coordinate with U.S. Immigration and Customs Enforcement to review records for possible deportation of a foreign national prisoner whose personnel records do not clearly indicate that they are U.S. citizens.  A foreign national prisoner will be notified of his or her right to have access, and have access, to diplomatic representatives.  MCF commanders shall forward information on charge(s), final judicial action, and place of confinement to

U.S. Immigration and Customs Enforcement
Office of Detention and Removal Operations
425 I Street, N.W., Suite: 6260
ATTN:  DRO/CAP/Military Removal
Washington, DC  20536
Fax: (202) 616-8762, voice telephone (202) 616-8714

3.  SENTENCE COMPUTATION

a.  Sentence computation shall be calculated IAW DoD 1325.7-M (Reference (m)), for a prisoner with a sentence adjudged after July 26, 2004, or IAW Service regulations for a prisoner with a sentence adjudged prior to July 27, 2004.

b.  The DD Form 2710-1, "Prisoner Sentence Computation," or a computer-generated equivalent, shall be used to compute sentences consistent with the provision of Reference (m) for a prisoner with a sentence adjudged after July 26, 2004, or Service regulations for a prisoner with a sentence adjudged prior to July 27, 2004.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 10 of 93

c.  Notwithstanding any other provision of this instruction or Reference (m), if a prisoner (accused) is confined in a non-military facility for a charge or offense for which the prisoner had been arrested after the commission of the offense for which the military sentence was imposed, the prisoner (accused) shall receive no credit for such time confined in the non-military facility when calculating his or her sentence adjudged at court-martial.

4.  <u>CLASSIFICATION AND USE OF FACILITIES</u>

a.  To promote effective and efficient corrections programs, the Military Services shall classify facilities based on the physical security features of the facility, assigned or available staff, and the availability of treatment, training, and work programs.  Changes in the classification of a facility shall be staffed for comment with the DoD Corrections Council and the USD(P&R) prior to implementation.  All MCFs shall be classified as Level I, II, or III.

(1)  Level I facilities are minimum security facilities capable of providing pre-trial and post-trial confinement for prisoners classified as minimum risk.  The facilities may temporarily hold prisoners classified with a higher risk; for example, pre-trial detainees, prisoners held for post-trial court appearances, or those pending transfer.  The maximum period of post-trial confinement provided by any Level I facility shall not exceed 1 year.

(a)  Characteristics of a standalone Level I facility include:

<u>1</u>.  Single-fenced perimeter with periodic roving patrol.

<u>2</u>.  Internal security hardware/walls.

<u>3</u>.  Single cells.

<u>4</u>.  Multiple occupant cells or dormitory.

<u>5</u>.  At least 5 percent segregation cells (single cells).

(b)  Level I facilities require staff supervision and movement control based on design and population, which is less than a Level II facility.  Confinement facilities collocated with military/security police stations do not require a single-fenced perimeter and may be designated by their respective Service as a Level I facility.

(c)  Level I facilities shall provide, at a minimum:

<u>1</u>.  Access to counseling services.

<u>2</u>.  Crisis intervention.

<u>3</u>.  Victim impact awareness

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 11 of 93

4.  Work opportunities.

5.  Substance abuse/drug and alcohol education.

(2)  Level II facilities are medium security facilities capable of providing pre-trial and post-trial confinement (up to 5 years) for medium risk prisoners.

(a)  Facility characteristics include:

1.  Double-fenced perimeter with electronic detection system and internal security hardware/walls, with periodic roving patrol or towers.

2.  Single or double occupant cells.

3.  Between 6 and 12 percent segregation cells based on requirements determined by Service corrections headquarters.

4.  A wide variety of work and appropriate offense-specific programs based on the needs of the prisoners.

5.  Less staff supervision and movement control than a Level III facility.

(b)  At a minimum, a Level II facility should provide:

1.  Crisis intervention counseling.

2.  Drug and alcohol treatment.

3.  Victim-impact awareness.

4.  Stress and anger management.

5.  Vocational training.

6.  Functional skills testing.

7.  Remedial education.

8.  High school-level education classes or a general equivalency diploma (GED) program.

(c)  Programs at each Level II facility should be based on a needs assessment of the prisoner population.

(3)  Level III facilities are maximum security facilities designed for high-risk, long-term (including life), and death sentence prisoners, and are capable of providing post-trial

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 12 of 93

confinement exceeding that of Level II facilities. The United States Disciplinary Barracks (USDB) shall not provide pretrial confinement. Level II facilities with a mission to confine Level III long-term prisoners may provide pre-trial confinement.

    (a)  Characteristics of a Level III facility include:

        1.  Double-fenced perimeter with electronic detection system.

        2.  Internal security sensor system.

        3.  High security walls.

        4.  Detention hardware.

        5.  Roving patrol or towers.

        6.  Single occupant cells.

        7.  Fifteen percent segregation cells.

        8.  Close staff supervision and movement control (higher staff-prisoner ratio than a Level II facility).

        9.  A wide variety of work and appropriate offense-specific programs based on the needs of the prisoners.

    (b)  At a minimum, Level III facilities shall include:

        1.  Crisis intervention counseling.

        2.  Drug and alcohol treatment.

        3.  Victim-impact awareness.

        4.  Stress and anger management.

        5.  Vocational training.

        6.  Functional skills testing.

        7.  Remedial education.

        8.  High school-level education classes or a GED program.

    (c)  Level III facilities shall provide all the programs and services available in Level II facilities based on assessed prisoner needs.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 13 of 93

b.  All facility physical security feature characteristics described in paragraphs 4a(1)-(3) of this enclosure are required for facilities with final designs approved after the effective date of this instruction.  While the characteristics discussed contain best practices, all existing facilities, to include facilities with final designs approved prior to the effective date of this instruction, are exempt from these requirements.

c.  Male and female prisoners may be confined in the same MCF.  The sleeping and personal hygiene areas for male and female prisoners shall be separate.

5.  <u>CUSTODY LEVEL CLASSIFICATION FOR LEVEL I AND LEVEL II PRISONERS</u>

a.  During the reception process, a prisoner (pre- or post-trial) will receive an initial custody classification.  Correctional officials shall use DD Form 2710, "Prisoner Background Summary," and DD Form 2711, "Initial Custody Classification," or computer-generated equivalent, to document the classification process.

b.  A prisoner's custody reclassification shall be conducted by the classification board IAW Service regulations, this instruction, and Reference (b).  MCF personnel shall use DD Form 2711-1, "Custody Reclassification," and Appendix 1 of this enclosure to document reclassification actions.

c.  In making the appropriate custody classification level assignment, using an objective classification system, all facts and circumstances shall be considered including, but not limited to, the prisoner's: offense(s), history of violence and prior criminal history, detainers and warrants, sentencing status, escape history, institutional disciplinary history, substance abuse, stability factors (e.g., age, employment, residence, family ties), mental health evaluation, and quality of participation in treatment and educational programs.

6.  <u>CUSTODY LEVEL CLASSIFICATION FOR LEVEL III PRISONERS</u>.  In making the appropriate custody classification level assignment, in addition to the procedures detailed in section 5, Level III MCFs shall develop and use an objective classification system based on the assessed risk applicable to the prisoner.

a.  Assessed risk considered will be identified as internal risk and external risk.  Significant changes in this system shall be coordinated with the DoD Corrections Council at least 90 days prior to implementation.

b.  Level II facilities with a mission to confine a small population of Level III long-term prisoners may use the Level II classification system used by a majority of that facility.

c.  Initial risk assessment will include, but is not limited to:

(1)  Consideration of length of sentence.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 14 of 93

(2)  Time served in confinement.

(3)  Criminal behavior elements associated with increased risk.

(4)  Mental health of the prisoner.

(5)  Criminal history.

(6)  Previous institutional adjustment.

(7)  Existence of detainers.


7.  <u>CUSTODY LEVELS</u>

a.  A custody level dictates the degree of staff supervision required for an individual prisoner at that security level facility.  In addition to the factors presented in paragraph 5.c., assignment to custody levels shall also consider length of sentence, time served in confinement, criminal behavior elements associated with increased risk, mental health of the prisoner, criminal history, and previous institutional adjustment.

b.  A prisoner's custody level within any given security level institution is routinely reviewed and may change for various reasons during the period of confinement.  The review process that determines the prisoner's custody level will be IAW institution standing operating procedures and facility Service regulations, and all reviews will be documented in the prisoner's file.  The four basic custody levels are:

(1)  <u>Maximum Custody</u>.  Maximum custody prisoners require special custodial supervision due to the seriousness of their offenses, high risk of causing injury to self or others, high escape risk, or a disposition toward or history of being dangerous, violent, or noncompliant with confinement authorities, among other factors.  Accordingly, quarters and work assignments may be assigned to ensure maximum control and supervision.

(2)  <u>Medium Custody</u>.  Medium custody prisoners pose a minimal risk of harm toward others and adjust well to confinement and controlled institutional living.  If authorized by the MCF commander, such prisoners may be assigned work details outside the facility under continuous supervision.

(3)  <u>Minimum Custody</u>.  Minimum custody prisoners do not pose a risk of harm towards others and the general public; adjust well to confinement and controlled institutional living, and are considered to be sufficiently dependable to be assigned work details outside the facility.  If authorized by the MCF commander, such prisoners may be assigned work details outside the facility under minimal supervision.

(4)  <u>Installation Custody or Trusty</u>.  Installation custody or trusty prisoners, are considered by the MCF commander to be reliable and dependable and are able to live, work, and

train with minimal supervision.  MCF commanders may grant other privileges deemed appropriate.


8.  PRISONER ADMINISTRATION

    a.  Health and Comfort Supplies

        (1)  Supplies necessary for personal hygiene and maintenance of good health shall be provided to all military prisoners.  The Military Services may also provide supplies for a prisoner's comfort and establish monetary or quantity limitations on any supplies and other limitations as deemed appropriate by Service corrections headquarters.

        (2)  Supplies issued to persons in a non-pay status shall be paid from appropriated funds. The cost of health and comfort supplies provided to persons in a pay status shall be charged against their pay accounts or paid from their personal funds.

    b.  Use of a Prisoner's Personal Funds

        (1)  Personal funds of prisoners shall be held in safekeeping.

        (2)  In addition to an authorized allowance for health and comfort items, a prisoner shall be permitted to use personal funds for other items as authorized by Service corrections headquarters.  Additional use of personal funds may be permitted for special purposes such as purchase of educational materials, remittances to dependents, payment of debts or attorney's fees, or restitution to victims.

        (3)  Service corrections headquarters may impose reasonable limitations on a prisoner's use of personal funds.

    c.  Prisoner Clothing Allowances

        (1)  The Military Services may prescribe mandatory clothing or uniforms for a prisoner confined in an MCF that the Service operates.  A prisoner shall wear the prisoner uniform or work uniform directed by the MCF commander.

        (2)  If a distinctive prisoner uniform is prescribed, it shall be provided at Government expense.

        (3)  All necessary items of clothing for a prisoner confined in a non-pay status shall be provided at Government expense.

        (4)  A prisoner shall wear prescribed Service uniforms during appearances before courts-martial and post-trial hearings if not discharged, as determined by the local Staff Judge Advocate's Office, and for other appropriate events and occasions as authorized by the MCF commander.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 16 of 93

(5)  A prisoner confined without essential clothing shall be provided suitable clothing, on a temporary loan basis, by the MCF commander.  Permanent issue items, except for distinctive prisoner clothing, shall be subject to personal funds withdrawal if the prisoner is in a pay status. In cases requiring the issuance of Service-unique items to members of other Services, reimbursement shall be made on a cross-Service basis.

d.  Gratuities.  Upon release from an MCF, a prisoner who is not returning to duty may be provided suitable clothing in addition to other grants and gratuities as may be authorized by appropriate DoD or Service regulation.

e.  Correspondence and Visits

(1)  An MCF commander may limit correspondence and visiting privileges for a prisoner based on the protection of public safety, an institution's schedule, space, or institutional order and security.

(2)  Visits or correspondence with a prisoner may be limited when necessary to maintain security and control or for treatment purposes.

(a)  Correspondence and visits with family members should be approved unless the security needs of the facility, the treatment program of the prisoner, or the circumstances of the offense committed warrant limitations or disapproval.

(b)  For the protection, health, safety, and welfare of the victims and witnesses, correspondence and visits with victims will ordinarily not be permitted.  If the victim or witness is an immediate family member, the correspondence or visit may be approved in advance by the MCF commander.  Victims and witnesses include, but are not limited to, all those persons listed on the DD Form 2704 or named in any specification which resulted in a finding of guilty and has not been discussed upon appellate review.  A prisoner may not request or cause a third party to contact a victim or witness without the advance approval of the MCF commander.

(c)  Other persons and correspondence may be approved if the visit or correspondence would be in the best interests of the prisoner and not inconsistent with safety and security of the community and the facility.

(d)  Correspondence with a prisoner in another correctional facility will not be permitted unless such individual is an immediate family member and the correspondence is approved in advance by the MCF commander and the MCF commander or warden of the other facility.

(e)  Disapproval of correspondence and visitor requests shall be documented as a permanent part of the prisoner's file.

(3)  Non-privileged mail (incoming and outgoing) may be opened to ensure that money, stamps, personal property, and valuables are brought under the control of the MCF and that the prisoner does not receive contraband.  MCF officials shall limit the scope of the inspection of

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 17 of 93

correspondence to that reasonably necessary to control property, prevent receipt of contraband, and otherwise provide for the safety and security of the facility and the community.

(4)  Privileged mail (incoming and outgoing) may be opened only in the presence of the prisoner.

(a)  Military or civilian attorneys of record must mark "Privileged Mail" on the front of the envelope for it to be considered privileged mail.

(b)  Initial correspondence with any attorney listed in professional or other directories that is marked "Privileged Mail" on the front of the envelope will be considered privileged mail.

(5)  Restrictions shall not be placed on the number of letters to and from authorized correspondents, except as necessary to maintain security and control, or to prevent unreasonable or excessive individual use of outgoing mail privileges.  Restrictions or limitations on correspondence privileges must be approved by the MCF commander.

(6)  A prisoner's letters containing accusations, charges, or complaints shall be forwarded through the proper channels to the official who has the authority to correct the complaint or alleged wrong.  Petitions or writs for release shall be forwarded to the proper authority.

(7)  A prisoner may receive packages and articles other than correspondence, under reasonable terms, conditions, and limitations approved by the MCF commander.

(8)  A prisoner shall be provided reasonable postage as a health and comfort item. Postage for a prisoner in a non-pay status shall be purchased from appropriated funds.  A prisoner in a pay status may purchase his or her postage using personal funds.

(9)  A prisoner shall be allowed reasonable opportunity to make telephone calls at no expense to the Government.  The MCF commander may limit the number and length of a prisoner's telephone calls.  Calls may be monitored.

(10)  The facility will provide a telephone that is not monitored for a prisoner to call his or her attorneys of record or clergyman.  Telephone calls to non-government attorneys or non-government clergyman will be at no expense to the government.

(11)  Any form of contact with a victim or witness (V/W) must be approved by the MCF commander as described in paragraph 8.e.(2) of this enclosure.

(12)  Personal interviews and telephonic communications between a prisoner and media representatives are not authorized unless a determination is made that such interview or communication serves a legitimate public interest or is in the best interest of the military. Service regulations shall specify procedures for approving and conducting personal interviews between prisoners and members of the media.  Written communication with media representatives is permitted subject to this instruction and Service regulations.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 18 of 93

f. <u>American Red Cross</u>. The American Red Cross may be used, IAW existing agreements, as the primary agency to provide a prisoner with community and family information.

9. <u>BOARDS</u>

a. <u>Discipline and Adjustment (D&A) Boards</u>. D&A boards shall be established to recommend to MCF commanders or designated representatives whether administrative action should be taken against a prisoner for misconduct, rules violations, or adjustment problems.

b. <u>Disposition Boards</u>. Each MCF will establish a disposition board (in person, telephonic, or via video teleconference) to make recommendations for a prisoner's clemency, parole, and MSR. Parole, clemency, and MSR requests will be forwarded along with the disposition board's recommendation through the MCF commander to the appropriate Military Department C&PB. For Service members transferred to FBOP facilities, the Commandant, USDB, will coordinate with the FBOP to obtain input beforehand and the applicable MCF commander will make clemency, parole, and MSR recommendations to the Military Department C&PBs.

c. <u>Classification and Assignment Boards</u>. An MCF may establish a classification and assignment board to review and recommend custody levels, work and billeting assignments, and treatment program or training assignments. MCF commanders may use the disposition board for these purposes.

10. <u>ADMINISTRATIVE CONTROL AND DISCIPLINARY MEASURES</u>

a. The DD Form 2713, "Prisoner Observation Report," is used to document a prisoner's behavior, both positive and negative, in situations not covered in related forms. DD Form 2714, "Prisoner Disciplinary Report/Action," and DD 2712, "Prisoner Evaluation," are used to document a violation of facility rules and regulations.

b. MCF commanders or designated representatives are authorized to impose disciplinary measures on a prisoner due to misconduct, rules violations, or adjustment problems.

c. MCF commanders or designated representatives are authorized to impose administrative control measures on a prisoner to maintain good order and discipline, prevent injuries, maintain proper health standards, and ensure safety.

d. A prisoner may be placed in segregation for either administrative or disciplinary reasons. A prisoner in segregation shall be closely supervised and precautions shall be taken in the preparation, equipping, inspection, and supervision of segregation quarters to maintain a healthy environment and prevent escapes and injuries. When segregation is imposed, the MCF commander or designated representative will review the action within 72 hours.

e. The status of a prisoner in administrative segregation and protective custody will be reviewed by the classification board or other authorized staff group every 7 days for the first

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 19 of 93

2 months and at least every 30 days thereafter.  Continuous confinement in administrative segregation or protective custody for over 30 days requires the review and approval of the MCF commander.  A qualified/credentialed mental health provider shall personally interview and prepare a written report on any prisoner remaining in segregation for over 30 days.  If administrative segregation continues beyond 30 days, a mental health assessment by a credentialed mental health provider shall be made at least every 3 months – or more frequently, if prescribed by the chief medical authority.

f.  When a prisoner is transferred to segregation for either administrative or disciplinary reasons, health care personnel will be informed immediately and will provide assessment and review as indicated by the protocols established by the facility health authority.  Thereafter, medical personnel shall visit the prisoner in segregation at least once every day to observe the prisoner's health and the sanitary conditions of the segregation.  Medical personnel shall immediately inform the MCF commander of any unhealthful, unsafe, or unsanitary condition.  MCF commanders will ensure immediate and appropriate action is taken to correct any noted problem or unhealthful condition.  MCF commanders or the commander's representative shall conduct a daily visit to a prisoner in segregation.

g.  A prisoner is entitled to an informal evidentiary hearing before a D&A board on the need for disciplinary segregation.  The prisoner shall be given notice of the basis for disciplinary segregation and an opportunity to make an oral or written statement.

(1)  The hearing shall be conducted by an individual appointed by the MCF commander, who will review the evidence and make recommendations to the commander or designated representative.  The recommendation of the hearing officer shall not be binding on the MCF commander or designated representative.

(2)  If the MCF commander disagrees with the recommendation, notice shall be provided to the prisoner with reasons for the decision.

(3)  A prisoner is only placed in disciplinary segregation for a rules violation considered by a D&A board and approved by the MCF commander or designated representative.  A prisoner held in disciplinary segregation for periods exceeding 60 days shall be provided the same program services and privileges as a prisoner in administrative segregation and protective custody.

h.  MCF commanders or designated representatives are authorized to impose one or more disciplinary measures on a person confined under their jurisdiction for misconduct or infraction of regulations, including:

(1)  Reprimand or warning.

(2)  Loss of one or more privileges, or restrictions on movement or activities.

(3)  Extra duty.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 20 of 93

(4)  Reduction of custody or classification.

(5)  Forfeiture or suspension of earned GCT, earned time (ET) abatement, or special acts abatement (SAA).  See Glossary and Appendix 3 for specific requirements.

(6)  Disciplinary segregation.

(7)  Restitution for damages or loss of property belonging to the facility or persons.

i.  A suspension period of any disciplinary measure shall not exceed 6 months.

j.  The MCF commander or designated representative must approve any disciplinary measure prior to imposition.  The DD Form 2714 shall be used to report prisoner infractions of rules and regulations.  All disciplinary actions commence as approved and directed by the MCF commander or designated representative.

k.  MCF commanders may restore any action imposed as a disciplinary measure, including suspended or forfeited earned GCT, ET, or SAA from any prior commander or activity.

l.  The USDB Commandant may restore any action imposed as a disciplinary measure, including suspended or forfeited earned GCT, ET, or SAA for prisoners permanently transferred to the Federal Bureau of Prisons (FBOP).


11.  <u>PROGRAMS IN MILITARY CORRECTIONAL FACILITIES</u>

a.  Programs of regular work, training, and rehabilitation shall be conducted to offset a prisoner's costs, increases the prisoner's usefulness, prevents idleness, aids in alleviating custodial problems, and prepares the prisoner for release from confinement and successful reentry into the community.

b.  DD Form 2712 shall be used to document performance in work and training.

c.  A prisoner's participation in such programs shall be based on the needs and resources of the MCF and on the prisoner's needs in terms of confinement, capabilities, motivation for successful adjustment, and in preparation for community release.  The combined time spent in training programs and employment should approximate the work day in the community.

(1)  A prisoner should be afforded a reasonable opportunity to participate in basic educational, vocational, and rehabilitative training and useful work for the Government consistent with available facilities, personnel, and resources.

(2)  Each Service should establish policies and procedures for prisoner return-to-duty programs.  The scope of these programs shall be determined by available resources, facilities, personnel, and the needs of the Service.  A prisoner shall be evaluated IAW their Service

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 21 of 93

regulations for suitability for the program and provided appropriate opportunities to improve potential for return-to-duty.

(3) Except in the case of a prisoner sentenced to death, prisoners shall be afforded reasonable opportunities to participate in meaningful treatment programs. Programs should be offered based on the capabilities and classification level of the MCF and prisoner needs. Level I facilities shall provide drug and alcohol education. In addition to drug and alcohol education, Level II and III facilities shall provide reasonable opportunities for participation in offense-related rehabilitation programs, victim impact, and stress or anger management programs.

(a) Significant changes in rehabilitation and treatment programs, including all proposals to discontinue established programs in Level II and III facilities, shall be coordinated with the DoD Corrections Council and the USD(P&R) prior to implementation. Rehabilitation and treatment programs shall reflect sound correctional philosophy, as well as current behavioral theory and treatment methodology.

(b) Sexual offender treatment records should remain confidential and, absent a court order to the contrary, may not be subject to release for use during the Government's case in chief on the merits or its initial presentation of evidence on sentencing during any retrial or rehearing ordered by an appellate authority.

d. Except in the case of a prisoner sentenced to death, all physically qualified prisoners shall be required to engage in useful work projects or vocational training to develop occupational skills or good work habits consistent with the prisoners' custody level, skills, and physical abilities. MCF commanders shall promote opportunities for on-the-job training consistent with prisoner custody classification, the prisoner's need for retraining to increase employability upon release, and facility resources. When authorized by law and Military Service regulations, prisoners in a non-pay status may be compensated for work performed as part of a correctional program using appropriated funds. The use of nonappropriated funds (NAF) to compensate a prisoner assigned to a NAF-generating work position is authorized when determined appropriate by the Military Services.

e. The Military Services are encouraged to establish vocational training programs in Level II and Level III correctional facilities. Vocational training shall be designed to provide prisoners with the opportunity to acquire meaningful occupational skills. MCFs may also operate prisoner vocational training as NAF instrumentalities.

12. EXERCISE, MORALE, AND RECREATION ACTIVITIES

a. Morale and recreation activities maintain a prisoner's physical condition, mental health, and morale and should be provided at all correctional facilities.

b. Morale and recreational activities should include appropriate access to fiction and nonfiction books, periodicals, newspapers, motion pictures, radio, television, physical recreation facilities and equipment, competitive sports, and special programs and events.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 22 of 93

c. Military Services may authorize the use of funds generated by a prisoner's work to supplement other available sources of funds for morale and recreation activities.

d. A prisoner shall be afforded a reasonable opportunity to participate in physical exercise consistent with personnel, space, and other resources necessary to conduct a safe, efficient, and effective program.


13. RELIGIOUS ACTIVITIES

a. A prisoner should be afforded opportunities to participate in religious activities, consistent with available resources and the need to maintain good order and discipline.

b. Religious and spiritual activities should be designed to accommodate a variety of religions IAW DoDI 1300.17 (Reference (n)). Authorized religious activities in an MCF include worship services, sacramental ministry, pastoral counseling, religious education, spiritual growth, prayer, and meditation.

c. Religious practices that include controlled substances are prohibited unless the Service corrections headquarters, following consultation with a legal advisor, determines that such use is consistent with law, DoD policy, and Reference (n).


14. MCF STAFFING AND PERSONNEL REQUIREMENTS

a. MCF personnel and Level I, II, and III staff that are required to be trained to support MCF commanders and MCF operations include:

(1) Correctional personnel responsible for the security and control of prisoners. Such personnel shall be graduates of civilian or military corrections training programs, or be former corrections officials, employees, or specialists at military or civilian confinement facilities. Security staff performing a corrections mission at a police or security station determined to be a Level I facility by the Service shall meet Service training requirements. The Services are encouraged to obtain the same training as for Level II and III facilities.

(2) Chaplaincy personnel, responsible to the MCF for providing religious instruction, guidance, and services for prisoners.

(3) Medical and healthcare providers, responsible to the MCF commander for the health of prisoners and the sanitary conditions of the facility.

(4) Licensed and credentialed mental healthcare professionals and paraprofessionals including psychiatrists, clinical psychologists, social workers, and mental health technicians, responsible for the assessment and treatment of prisoners presenting special personality problems or psychiatric disorders.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 23 of 93

    (5)  Correctional treatment personnel such as:

        (a)  Supervisors and interviewers, responsible for compiling case histories and other background data required to plan correctional programs for an individual prisoner and for providing the basis for recommendations for clemency, restoration to duty, or other appropriate disposition.

        (b)  Supervisors and instructor personnel, responsible for assessing a prisoner's educational needs and providing educational training and programs.

        (c)  Supervisor and instructor personnel, responsible for assessing a prisoner's vocational needs and providing vocational programs.

        (d)  Correctional counselors, responsible for counseling a prisoner.

    (6)  Victim/Witness Assistance Coordinators, responsible for providing notifications of a prisoner's status as required by DoDI 1030.2 (Reference (o)).

  b.  All MCF personnel shall:

    (1)  Possess a high degree of maturity.

    (2)  Have no civilian felony convictions or court-martial convictions for any offense for which a maximum authorized sentence to confinement exceeds 1 year, whether or not adjudged to be in excess of 1 year.

  c.  All MCF staff members shall meet ACA preservice and inservice training standards. Security staff performing a corrections mission at a police or security station determined to be a Level I facility by the Service shall meet Service training requirements.

  d.  Transient personnel shall not be used for functions involving contact with a prisoner, except when approved by the Service corrections headquarters that provides oversight of the facility.


15.  <u>TRANSFER TO FEDERAL INSTITUTIONS</u>

  a.  A prisoner may be transferred to FBOP facilities with the concurrence of or by direction of the appropriate Secretary of the Military Department concerned (hereinafter referred to as "the Secretary concerned")  and by agreement with the FBOP.  Authority to transfer a prisoner to the FBOP confers no right on a prisoner to request transfer or be transferred.  The DoD Executive Agent for Level III Corrections shall maintain a memorandum of agreement (MOA) with the FBOP containing the terms and conditions for the transfer of a prisoner to the FBOP.  Changes in this MOA after the effective date of the instruction should be coordinated with the DoD Corrections Council.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 24 of 93

b.  Factors for determining whether to transfer a prisoner to a FBOP facility include:

(1)  The prisoner's demonstrated potential for return to duty or rehabilitation.

(2)  The nature and circumstances of the prisoner's offenses.

(3)  The prisoner's confinement file, including participation in rehabilitation programs.

(4)  The status of the prisoner's court-martial appeal and involvement in other legal proceedings.

(5)  The nature and circumstances of the prisoner's sentence, including length of sentence to confinement.

(6)  The prisoner's age.

(7)  Any other special circumstance relating to the prisoner, the needs of the Service, or the interests of national security.

c.  A prisoner's desire to be or not to be transferred to the FBOP need not be considered in making the transfer decision.

d.  A prisoner proposed for transfer to a FBOP facility for inpatient psychiatric treatment shall be afforded procedural due process including:

(1)  Notice of the proposed transfer.

(2)  Representation by an attorney or representative of the prisoner's choice provided at no cost to the Government, or by appointed military counsel certified as a judge advocate IAW Chapter 47, section 827b of Manual for Courts-Martial United States, (Reference o)), also known as Article 27(b) of the Uniform Code of Military Justice (UCMJ).

(3)  The opportunity for a hearing before a military judge.

16.  CLEMENCY, PAROLE, MSR, REENLISTMENT, AND RESTORATION TO DUTY

a.  The Secretary concerned has the authority, for a prisoner who at the time of commission of his or her offense was subject to the authority of that Secretary, to:

(1)  Remit or suspend a part or all of the unexecuted portion of any sentence adjudged by a court-martial to include adjusting significant disparities in approved sentences.  For a prisoner serving an approved unsuspended sentence of confinement for life without eligibility for parole, only the Secretary concerned may exercise this authority personally and only after the prisoner has served a period of confinement of not less than 20 years.  The reduction, suspension, or

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 25 of 93

remittance of sentences shall be consistent with the maintenance of good order and discipline in the Military Services and when in the best interest of society and the prisoner.

    (2) Restore to duty or reenlist selected offenders.

    (3) Parole military prisoners.

    (4) Direct release of prisoners on MSR.

  b. A prisoner shall be informed that there is no right to clemency, parole, reenlistment, or restoration.

  c. The supervised release of a prisoner who is not granted parole prior to his or her minimum release date (MRD) is a highly effective technique to provide an orderly transition to civilian life for a released prisoner and to better protect the communities into which such prisoner is released.

  d. The Secretary concerned shall establish a C&PB to assist the Secretary to execute clemency, parole, and MSR authority, and to serve as the primary authority for administration of clemency, parole, and MSR policy and programs. The Military Department C&PB shall have approval authority for all clemency, parole, MSR, restoration to duty, and reenlistment actions, except those for which the Secretary concerned has expressly withheld approval authority or for which this instruction expressly withholds to the Secretary concerned. The Military Department C&PB:

    (1) May consider a prisoner confined at the FBOP for parole, clemency, MSR, restoration to duty, and reenlistment, as eligible.

    (2) Shall strive for uniformity of operations consistent with individual Service needs. Representatives from the Military Department C&PBs shall meet at least semiannually to exchange views on clemency, parole, and MSR philosophy, procedures, significant cases, and similar matters. Minutes of the meetings will be provided to the DoD Corrections Council. A representative of each Military Department C&PB shall serve as a voting member of the DoD Corrections Council.

  e. MCF disposition boards shall provide clemency, parole, and MSR recommendations to the Military Department C&PB concerned. DD Form 2715, "Clemency/Parole Submission," DD Form 2715-1, "Disposition Board Recommendation," DD Form 2715-2, "Prisoner Summary Data," DD Form 2715-3, "Prisoner Restoration, Clemency and Parole Statement," and DD Form 2719, "Continuation Sheet," or their electronic equivalent shall be used for this purpose.

  f. When considering an individual for clemency, parole, MSR, restoration to duty, or reenlistment, a Military Department C&PB shall consider:

    (1) The nature and the circumstances of the prisoner's offenses.

    (2) The prisoner's military and civilian history.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 26 of 93

(3)  The prisoner's confinement file, including offense-related rehabilitation programs.

(4)  The personal characteristics of the prisoner, including age, education, marital and family status, and psychological profile.

(5)  The impact of the prisoner's offense on the victim and the prisoner's efforts to make restitution to the victim.

(6)  The protection and welfare of society.

(7)  The need for good order and discipline in the Service.

(8)  Other matters, as appropriate.


17.  ELIGIBILITY AND PROCEDURES FOR CONSIDERATION FOR CLEMENCY, RESTORATION, AND REENLISTMENT.  The Military Department C&PB shall consider a prisoner for clemency, restoration to duty, or reenlistment when the court-martial convening authority has taken action on the sentence, the prisoner's case has been reviewed by an MCF, disposition board, or probation official; and the prisoner meets the eligibility criteria.  Prisoners may waive consideration by the Military Department C&PB IAW instructions issued by the Military Department C&PB concerned.  A prisoner sentenced to death is ineligible for consideration by a Military Department C&PB.

a.  When a prisoner's approved unsuspended sentence includes no confinement or the approved unsuspended sentence to confinement is less than 12 months, normally there shall be no consideration by the Military Department C&PB.  The Secretaries concerned may direct that the Military Department C&PB consider those cases.

b.  The rules in this paragraph govern consideration for clemency, restoration, and reenlistment by the  Military Department C&PB for a prisoner whose sentence is adjudged fewer than 30 days after the date of this instruction.

(1)  When a prisoner's approved unsuspended sentence to confinement is 12 months or more, initial consideration by the Military Department C&PB shall not be more than 9 months from the date that confinement began.  The time may, however, be extended to allow up to 90 days processing time between the date the convening authority's actions is received at the MCF and the initial consideration by the  Military Department C&PB.  This paragraph does not apply to those a prisoner serving an approved unsuspended sentence of confinement for life without eligibility for parole adjudged for offenses committed after October 31, 2000.

(2)  When a prisoner's approved unsuspended sentence:

(a)  Is 12 months or more, but less than 20 years, consideration by the Military Department C&PB shall be at least annually, following the initial review.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 27 of 93

(b)  Is 20 years or more, but less than 30 years, consideration by the Military Department C&PB shall be at least annually beginning three years from the date confinement began.

(c)  Is 30 years or more, including life, consideration by the Military Department C&PB shall be at least annually beginning 10 years from the date that confinement began.

(3)  When a prisoner's approved unsuspended sentence includes confinement for life without eligibility for parole, consideration by the Military Department C&PB shall be at least once every 3 years beginning 20 years after the date confinement began.  The Secretary concerned may not delegate the authority to grant clemency for approved sentences of life without eligibility for parole.  Subordinate clemency approval authorities may deny clemency for approved sentences of life without eligibility for parole.

c.  The rules in this paragraph govern consideration for clemency, restoration, and reenlistment by the Military Department C&PB for a prisoner's adjudged sentence that takes place more than 29 days after the date of this instruction.

(1)  When a prisoner's approved unsuspended sentence to confinement is 12 months or more, but less than 10 years, initial consideration by the Military Department C&PB shall not be more than 9 months after the date confinement began.  Subsequent reviews will occur at least annually thereafter.  The time may, however, be extended to allow up to 90 days processing time between the date the convening authority's action is received at the MCF and the initial consideration by the  Military Department C&PB.

(2)  When a prisoner's approved unsuspended sentence is 10 years or more, initial consideration by the Military Department C&PB shall be at least annually, beginning when the prisoner would otherwise be eligible for parole IAW section 18 of this enclosure, whether or not the prisoner had an approved unsuspended punitive or administrative discharge or dismissal or an approved retirement.  This subparagraph does not apply to those a prisoner serving an approved unsuspended sentence of confinement for life without eligibility for parole adjudged for offenses committed after October 31, 2000.  Subsequent reviews will occur at least annually.

(a)  The MCF commander confining a prisoner with an unsuspended sentence to confinement of 10 years or more may recommend the Military Department C&PB review the prisoner for clemency due to extraordinary reasons before the prisoner would otherwise be eligible for an initial clemency review.

(b)  A prisoner with an approved unsuspended sentence to confinement of 10 years or more may request the Military Department C&PB for a clemency review due to extraordinary reasons, before the prisoner would otherwise be eligible for an initial clemency review.  The request should set out those extraordinary reasons and be sent to the Military Department C&PB through the MCF commander.  The request may be rejected by the Chair of the Military Department C&PB.  If the Military Department C&PB's Chair accepts the request for review by the Military Department C&PB, the Chair will notify the facility in order for the facility to make

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 28 of 93

appropriate V/W notifications, to initiate a review of the prisoner, and to provide the Military Department C&PB the MCF staff's and commander's recommendations concerning the clemency request before the Military Department C&PB reviews the prisoner for clemency.

(c)  Due to extraordinary reasons a Military Department C&PB Chair may direct an initial clemency review of a prisoner before the prisoner would otherwise be eligible for an initial clemency review.  In such a case, the Chair shall notify the facility to make appropriate V/W notifications and to initiate a review of the prisoner, and to provide to the Military Department C&PB the MCF staff's and commander's recommendations concerning the clemency request before the Service C&PB reviews the prisoner for clemency.

(3)  When a prisoner's approved unsuspended sentence includes confinement for life without eligibility for parole, consideration by the Military Department C&PB shall be at least once every 3 years, beginning 20 years after the date confinement began.  The Secretary concerned may not delegate the authority to grant clemency for any portion of approved sentences of life without eligibility for parole.  Subordinate clemency approval authorities may deny clemency for approved sentences of life without eligibility for parole.

d.  Except in the case of a prisoner sentenced to death or to confinement for life without parole, the  Military Department C&PB may for cause grant special consideration for clemency, restoration to duty, or reenlistment.

e.  A prisoner released on supervision shall be considered, upon the prisoner's request, by the Military Department C&PB for clemency, restoration, and reenlistment 12 months after release on supervision and annually thereafter, upon request, until expiration of the sentence.

(1)  When a prisoner has been returned to military control as a supervision violator, the prisoner's consideration for clemency, parole, restoration, and reenlistment shall normally be 12 months after the prisoner's return to military control and annually thereafter.

(2)  When a prisoner is not returned to military control, but supervision has been revoked and reinstituted, the  Military Department C&PB shall normally consider the prisoner, upon the prisoner's request, for clemency, restoration, and reenlistment 12 months after supervision has been reinstated and annually thereafter upon request.

f.  When a prisoner is considered for parole IAW section 18 of this enclosure, the  Military Department C&PB may also consider the prisoner for clemency, and upon request, for restoration to duty or reenlistment.

g.  The rules in this paragraph govern consideration of restoration to duty or reenlistment of prisoners.

(1)  Each Military Department shall provide a program to restore or reenlist prisoners IAW the needs of that Military Department.  A prisoner is afforded no right by this instruction to participate in any particular restoration program.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 29 of 93

(2)  In selecting prisoners and supervisees for restoration or reenlistment, consideration should be given to their demonstrated motivation for future honorable service, Military Department needs, demonstrated ability to perform military duties in a creditable manner, mental and physical fitness for continued service, and the impact of the supervisee's restoration or reenlistment on the morale, good order, and discipline of the Military Department.

(3)  The needs of the Military Department govern reenlistment and restoration programs, not the desires of individual prisoners.  A prisoner not selected for reenlistment or a restoration program may not appeal, or otherwise contest, nonselection unless applicable Service regulations provide a right of appeal.


18.  ELIGIBILITY AND PROCEDURES FOR GRANTING PAROLE

a.  The Military Department C&PB will consider a prisoner for parole when the prisoner first becomes eligible and annually thereafter.  Military prisoners confined in FBOP facilities as of the publication date of Reference (l) will be considered annually based on the date that the United States Parole Commission would have next considered the prisoner for parole.  A prisoner is eligible for release on parole when requested by the prisoner, and when:

(1)  The prisoner has an approved unsuspended punitive discharge or dismissal or an approved administrative discharge or retirement.

(2)  The unsuspended sentence or aggregate sentence to confinement is 12 months or more.

(a)  In cases in which the sentence to confinement is less than 30 years, the prisoner must have served one-third of the term of confinement, but in no case less than 6 months.

(b)  In cases in which the sentence to confinement is 30 years or more up to and including life, the prisoner has served at least 10 years of confinement.

(c)  In cases in which a prisoner is convicted of an offense committed after February 15, 2000, and has been sentenced to confinement for life, the prisoner must have served at least 20 years of confinement.

b.  A prisoner sentenced to death or to life without eligibility for parole is ineligible for parole.

c.  A prisoner otherwise eligible for parole, with an approved sentence including a fine, with a provision for further confinement if the fine is not paid, shall be considered for parole by a Military Department C&PB based on the approved sentence to confinement.  Confinement resulting from failure of the prisoner to pay a fine shall not be considered in computing eligibility for consideration by a Military Department C&PB.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 30 of 93

d.  A prisoner with an approved sentence that includes a fine and no confinement, but with a provision for confinement if the fine is not paid, shall be considered for parole by a Military Department C&PB on his or her imprisonment if the fine is not paid, and if otherwise eligible for parole.

e.  Projected GCT and other abatement of confinement shall be excluded in computing eligibility for parole.

f.  Unless an earlier parole consideration of the prisoner is directed by the Secretary concerned, is requested by the MCF commander, or is initiated by the Military Department C&PB on its own motion, the Military Department C&PB normally shall not reconsider for parole a prisoner whose parole has been revoked until the prisoner has served 12 months in confinement after return to military custody.

g.  When exceptional circumstances exist or for other good cause, and consistent with Military Department C&PB authority in paragraph 16d., a Military Department C&PB may waive any prisoner's parole eligibility requirement, except for those prisoners sentenced to death or to life without eligibility for parole, or in other cases of a special nature reserved for final decision by the Secretary concerned.

h.  When considering a prisoner for release on supervision, the FBOP's Victim/Witness Notification Program office and/or the MCF commander shall provide all victims listed on the DD Form 2704 who indicated a desire to be notified an opportunity to provide information to the Military Department C&PB in advance of its determination, as documented in the confinement file.

i.  A prisoner requesting parole shall submit a supervision plan and agree in writing to abide by that plan.  The supervision plan shall indicate, at a minimum, where and with whom the supervisee will live and, except in the case of a medically disabled prisoner, either guaranteed employment, an offer of effective assistance to obtain employment, or acceptance in a valid educational or vocational program, and, if applicable, a restitution plan.

j.  Parole may be granted until the expiration of a prisoner's full sentence regardless of GCT or other sentence abatements.  Prisoners who accept parole shall waive all GCT, ET, and SAA, earned up to the date of release on parole.

k.  A prisoner who is denied parole shall be provided a written explanation.  A prisoner denied parole may submit a parole appeal within 30 calendar days of notification of the denial. The Secretary concerned shall make the final decision on parole appeals.  After the appropriate authority makes a final decision, no further appeal is authorized.

l.  A supervisee shall remain on supervision provided the supervisee complies with the conditions of supervision.  The Military Department C&PB, as an act of clemency, may end supervision before the expiration of a prisoner's full sentence.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 31 of 93

19.  ELIGIBILITY, PROCEDURES, AND SELECTION OF PRISONERS FOR MSR AT
THEIR MRD

    a.  Eligibility.  Only a prisoner with an approved finding of guilty for an offense committed
after August 15, 2001, and who is eligible for parole, IAW paragraph 18.a. of this enclosure, is
eligible for MSR.

    b.  Procedures.  When considering a prisoner for MSR, an MCF and the Military Department
C&PB shall apply the following procedures:

        (1)  An MCF shall inform a prisoner who is eligible for MSR, in writing using the
template provided in the figure at Appendix 2 of this enclosure, and ensure the prisoner
acknowledges receipt during reception/in-processing time period.  The signed copy of the MSR
acknowledgement shall be filed in the prisoner's confinement file.

        (2)  A prisoner who is returning to a military unit for continued duty (e.g., retention on
active duty, administrative discharge) shall not be reviewed by the Military Department C&PB
for MSR.  A prisoner who is returning to a military unit for out-processing/appellate leave and is
otherwise eligible for parole shall be reviewed.

    c.  Criteria

        (1)  A prisoner whose approved sentence (or adjudged sentence, if the convening
authority has not acted) to confinement is less than 3 years shall not normally be reviewed by the
Military Department C&PB for MSR, but shall be reviewed by the MCF commander.  If an MCF
commander determines that MSR may be appropriate for such a prisoner, the commander shall
forward a recommendation to the Military Department C&PB for a decision at the prisoner's last
Military Department C&PB review before the prisoner's MRD.  The recommendation and case
file shall be forwarded to the Military Department C&PB, whenever possible, no later than
4 months prior to the prisoner's MRD.

        (2)  The Military Department C&PB shall review all prisoners for MSR, including those
prisoners returned to confinement as a supervision violator, with an approved sentence (or
adjudged sentence, if the convening authority has not acted) to confinement of 3 years or longer.

        (3)  When considering a prisoner for release on supervision, the MCF commander shall
provide all witnesses listed on the DD Form 2704 who indicated a desire to be notified an
opportunity to provide information to the Military Department C&PB in advance of its
determination, as documented in the confinement file.

        (4)  The Military Department  C&PB may direct the review of any prisoner for MSR and
can direct the MCF to have any prisoner with less than a 3-year sentence to confinement provide
an MSR supervision plan for the Military Department C&PB review as a prerequisite for release
on MSR.  A prisoner with a 3-year sentence to confinement or longer must prepare an MSR
supervision plan for review before the Military Department C&PB reviews the prisoner for

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 32 of 93

MSR, and the plan must be acceptable to the Military Department C&PB before the prisoner is released on MSR.

(5)  To accommodate these reviews, the MCF shall submit MSR documentation IAW paragraph 19.d. of this enclosure.

(6)  After the Military Department C&PB reviews and accepts an MSR supervision plan, the facility will send the approved plan to the appropriate U.S. probation office for review and approval by the supervising U.S. probation officer (USPO).

d.  Submission Guidelines

(1)  A case file shall be submitted to the Military Department C&PB on each prisoner eligible for MSR IAW paragraph 19.c. of this enclosure.  The case file shall be created in the same manner as a request for parole consideration.  It shall include an MSR supervision plan (verified residence; verified employment, effective employment assistance, or acceptance into a valid educational or vocational program) and, if applicable, a restitution plan.  A prisoner's willful or negligent failure to prepare an acceptable supervision plan may result in a D&A board and loss of GCT, ET, and SAA, for failure to follow an order or dereliction of duty.  For prisoners whose award of GCT, ET, or SAA is conditioned, as outlined in Appendix 3, the MCF commanders shall not award the GCT, ET, or SAA until the supervisory USPO approves such a plan.  If the Military Department C&PB decides that MSR is not required for a prisoner, the MCF commander shall award the GCT, ET, or SAA to the prisoner.

(2)  A prisoner's MSR supervision plan and case file will be considered at the prisoner's last disposition board before the prisoner's MRD.

(3)  Those prisoners not scheduled for a disposition board prior to their MRD or who waive their last disposition board are still required to have their MSR supervision plan reviewed for MSR by the Military Department C&PB.  MCF commanders shall forward to the Military Department C&PB an MSR supervision plan and case file on eligible candidates, whenever possible, no later than 4 months prior to the MRD.

e.  Military Department C&PB Responsibilities

(1)  The Military Department C&PB will promptly review (within 45 days of receipt) each supervision plan and case file.

(2)  If a prisoner is approved for MSR, the Military Department C&PB shall promptly transmit by electronic means its decisional documents (e.g., the DD Form 2716-1, "Department of Defense Certificate of Parole") and mail the originals to the MCF.

(3)  The terms and conditions of MSR release, as determined by the Military Department C&PB and identified in the MSR supervision plan, shall be communicated to the prisoner using DD Form 2716-1.  The Military Department C&PB may impose additional reasonable supervision conditions to the MSR supervision plan that, in the judgment of the Military

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 33 of 93

Department C&PB, would further a released prisoner's orderly and successful transition to civilian life, or that would protect better the communities into which the prisoner is released. The Military Department C&PB, at its discretion or upon the request of the supervising USPO, may modify any terms or conditions of supervision or may terminate supervision entirely. These modifications shall be communicated in writing to the prisoner.

(4) If the Military Department C&PB should reject an MSR supervision plan, the plan shall be returned promptly to the submitting MCF with an explanation of the plan's deficiencies for the prisoner's expeditious review, revision, and resubmission by the prisoner through the facility staff. The Military Department C&PB will notify the MCF when it is determined the prisoner willfully or negligently did not submit an acceptable release plan in order for the MCF to take appropriate action.

f. <u>MCF Responsibilities</u>. If MSR plans are rejected by the respective Military Department C&PB, the MCF facilities:

(1) May consider a D&A board for the loss of GCT, ET, and SAA for a prisoner whose failure to follow an order or dereliction of duty offense occurred before October 2, 2004, and who is eligible for MSR and willfully or negligently fails to prepare an acceptable supervision plan.

(2) Shall not award such credits, until such a plan is accepted by the Military Department C&PB and approved by the supervising USPO for a prisoner whose offenses all occurred after October 1, 2004, and thus whose award of GCT, ET, or SAA is conditioned on the prisoner submitting an acceptable supervision plan.

## 20. RELEASING PROCEDURES FOR SUPERVISED RELEASE (PAROLE OR MSR)

a. <u>Supervised Release</u>. "Supervised release" refers to both parole and MSR, and a prisoner on parole or MSR is a "supervisee."

b. <u>MCF Responsibilities and General Provisions</u>

(1) A prisoner who meets the criteria for MSR review (see subparagraphs 19.c.(1), 19.c.(2), and 19.c.(4) of this enclosure) shall not be released at his or her MRD without first being considered and approved or disapproved for MSR in writing by the Military Department C&PB. If the facility has not received a decision on a prisoner's MSR from the respective Military Department C&PB 90 days prior to the prisoner's projected MRD, the MCF commander will contact the Military Department C&PB for guidance and resolution. The Military Department C&PB will provide by fax, or by a similarly prompt written communication, an MSR decision no later than 75 days before the prisoner's projected MRD. If the MCF has not received a decision 60 days prior to the prisoner's projected MRD, the MCF commander shall contact its correctional headquarters for assistance in resolving the lack of a decision by the Military Department C&PB.

Case 1:20-cv-00330-LCB-JEP    Document 26-1    Filed 06/10/21    Page 34 of 93

(2)  Upon notification that a prisoner has been selected for supervised release, the MCF shall notify the prisoner and coordinate the supervision plan with the appropriate USPO.  The prisoner shall acknowledge in writing the receipt of the terms and conditions of supervision and any modifications.  The prisoner may request, in writing, reconsideration of the MSR decision or modification of its conditions through the MCF commander to the Military Department C&PB within 30 calendar days of notification of the selection.  The appropriate Military Department C&PB official will make the final decision.

(3)  If the prisoner refuses to acknowledge receipt in writing of an order onto MSR, the notification shall be witnessed, certifying that the prisoner was advised of the terms and conditions of MSR and of the provisions of the release including the loss of GCT, ET, and SAA for willful failure to comply with all aspects of the DoD MSR program.

(4)  The departure of the prisoner from the MCF constitutes acceptance of the terms and conditions of MSR and operates as a waiver of all accrued GCT, ET, and SAA.

(5)  If the prisoner refuses to depart the MCF, the prisoner is subject to disciplinary action.  A prisoner who refuses to accept the conditions of supervision may forfeit all earned GCT, ET, and SAA.  For prisoners whose award of GCT, ET, or SAA is conditioned, as outlined on the appropriate decisional documents, on an acceptable supervision plan, the MCF commander shall not award the abatement.

(6)  If the USPO has not approved the supervision plan 30 days before the prisoner's projected MRD, the MCF commander or designated representative shall notify the respective Military Department C&PB, which shall work with the USPO to resolve any problems.

(a) If due to the sole fault of the MCF staff, the Military Department C&PB, or the USPO, a supervision plan has not been reviewed or a prisoner is unable to provide an acceptable supervision plan to either the Military Department C&PB or the USPO, the prisoner shall not be held past the prisoner's projected MRD.

(b) The Military Department C&PB shall determine, no later than 10 days before the prisoner's projected MRD, whether the failure to provide an acceptable plan was willful or otherwise at the fault of the prisoner.  A prisoner's willful or negligent failure to prepare an acceptable supervision plan may result in a D&A board and loss of GCT, ET, and SAA, for failure to follow an order or dereliction of duty.  The prisoner will be given a new projected MRD and subject to another MSR review and plan approval.  For prisoners whose award of GCT, ET, or SAA is conditioned, as outlined in Appendix 3, the MCF commanders shall not award the GCT, ET, or SAA until the supervisory USPO approves such a plan or the prisoner reaches his/her maximum release date.

(c) If the Military Department C&PB determines a prisoner was at fault in not providing or willfully or negligently did not provide an acceptable supervision plan, the prisoner may appeal that decision within 30 calendar days of notification of the Military Department C&PB's decision.  The Secretary concerned authorized to make final decisions on parole appeals shall make the final decision on these appeals.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 35 of 93

(7)  Within 3 duty days after the prisoner's release, the MCF shall send the Military Department C&PB an electronic copy of the signed supervised release certificate and signed attachments, and the supervising USPO's name, telephone number, fax number, and address.

(8)  The MCF shall maintain prisoner files and perform all administrative responsibilities for all supervisees assigned to that MCF.

(9)  The MCF shall ensure Victim/Witness Assistance Program (V/WAP), DNA sample collection, and sex offender registration and notification requirements are met.

(10)  V/Ws shall be notified that the prisoner will be released and where the prisoner will reside, along with the contact information for the prisoner's USPO.

(11)  The MCF shall prepare and submit Federal Bureau of Investigation (FBI) Form I-12, "Flash/Cancellation Notice," on each prisoner released on supervised release.

(12)  In addition to the provisions of the terms and conditions of supervision, and any modifications and other correspondence from the Military Department C&PB to the supervising USPO, the MCF shall provide (to the supervising USPO):

(a)  The prisoner's background information (i.e., educational level, programs completed in confinement, including vocational, treatment, and self-growth programs).

(b)  A mental health synopsis of the prisoner.

(c)  Court-martial orders reflecting convening authority action; if not completed, the result of trial.

(d)  The Stipulation of Fact, if any, from the record of trial.

(e)  A statement or evidence indicating the prisoner's DNA sample was collected and sent to the repository.

(f)  A statement or record indicating sex offender notifications, if necessary, have been made, to federal, State, and local authorities.

(g)  The names and addresses of Vs/Ws registered with the facility V/W assistance coordinator for the purpose of managing the supervisee's release plan.  The USPO will be informed that the names and addresses are not to be disclosed to any third party without the consent of the MCF V/W assistance coordinator.

(h)  A memorandum stating the Vs/Ws have been notified of the approximate date the prisoner will be released on supervision and the city and State to which the prisoner has been released.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 36 of 93

(i)  A memorandum requesting that the supervising USPO provide written notice to the MCF and the Military Department C&PB if the supervisee is transferred to another district.

c.  <u>Military Department C&PB Responsibilities</u>.  The Military Department C&PB:

(1)  May establish and subsequently modify conditions of supervision as reasonable and appropriate, to include a restitution plan, participation and progress in substance abuse or sex-offender treatment or participation in counseling or therapy programs.  The conditions of supervision shall include a requirement that the supervisee shall comply with State and local registration requirements, such as sex-offender registration, that apply in the location in which the supervisee will reside.  The Military Department C&PB may use DD Form 2716, "Parole Acknowledgement Letter," and DD Form 2716-1, "Department of Defense Certificate of Supervised Release," for these purposes.

(2)  Assists the MCF to coordinate supervision plans with the USPOs as necessary.

(3)  Maintains a case file on all supervisees.


21.  <u>MONITORING PROCEDURES DURING SUPERVISED RELEASE (PAROLE AND MSR)</u>

a.  <u>MCF Responsibilities</u>.  The MCF:

(1)  Maintains prisoner confinement files for all supervisees placed on supervised release IAW Service regulations.

(2)  Ensures V/WAP requirements are met IAW section 24 of this enclosure.

(3)  Provides Military Department C&PB with prisoner files upon request.

b.  <u>Military Department C&PB Responsibilities</u>.  Military Department C&PBs:

(1)  Coordinate directly with the supervising USPO concerning any modifications to the supervision plan, release conditions, and violations of the conditions of supervision and provide copies of the decisional documents for such actions to the MCF for inclusion in the prisoner's file.

(2)  Receive clemency matters from the supervisee and the supervising USPO for clemency review.

(3)  Coordinate with facility for V/W notification IAW section 24 of this enclosure.
(4)  Maintain a case file on all supervisees IAW Service regulations.


22.  <u>PROCEDURES FOR REVOKING SUPERVISED RELEASE (PAROLE OR MSR)</u>

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 37 of 93

a.  On receipt of credible information that a supervisee may have violated a condition of supervision, the Military Department C&PB concerned may suspend the supervision, determine the supervisee violated a condition of supervision, and, if so, revoke the supervisee's supervision.  The Military Department C&PB may also order the supervisee's return to military custody pending resolution of the alleged violation. A supervisee released from FBOP will not be returned to military custody but will be returned to the designated federal facility assigned by the FBOP.

(1)  When a supervisee has been suspended, the Military Department C&PB shall determine promptly whether probable cause exists to believe a supervisee violated a condition of supervision.  A Military Department C&PB may order a preliminary interview to make a recommendation to the Military Department C&PB as to whether probable cause exists in order to proceed to a supervision violation hearing.  The Military Department C&PB may determine that such probable cause exists without a preliminary interview; e.g., the supervisee absconds supervision, or pleads guilty to, is convicted of, or a court takes action tantamount to, a finding of guilty for an offense that is punishable by imprisonment, or if a civilian court issues a warrant for the supervisee's arrest or orders a supervisee's continued confinement or IAW subparagraph 22.a.(3) of this enclosure.

(2)  If a preliminary interview is performed to determine whether probable cause exists, it shall normally provide the following process:

(a)  The interview shall be conducted by a neutral and detached person.

(b)  The supervisee shall be provided written notice of the preliminary interview, including the purpose of that interview.

(c)  The supervisee shall be given notice of the evidence on which the preliminary interview is based and an opportunity to be heard and to present relevant matters.  Witnesses called by the supervisee shall be at no expense to the Government.

(d)  When requested by a supervisee not represented by a civilian attorney, a military attorney shall be provided, as designated by defense services of the appropriate Military Department; however, the supervisee has no right to a military attorney of his or her choice.

(e)  If the person conducting the preliminary interview finds probable cause to believe that the supervisee violated any condition of supervision, the Military Department C&PB may order a supervision violation hearing.

(3)  When a supervisee's supervision has been suspended and the supervisee has been returned to military custody, the Military Department C&PB may determine a supervision violation hearing can be held as promptly as a preliminary interview.  In such a case, the Military Department C&PB  may forgo the preliminary interview to determine whether probable cause exists to believe a supervisee violated a condition of supervision and order a supervision

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 38 of 93

violation hearing to determine whether the supervisee violated a condition of supervision and, if so, whether to revoke the supervisee's supervision.

(4)  The violation hearing shall be conducted before a supervisee's parole or MSR is revoked.

(5)  When a supervision violation hearing is performed, it shall normally provide the following process:

(a)  Unless the supervisee is returned to military custody, it shall normally be held at or near the place of the alleged violation.  When the supervisee has been returned to an MCF or is confined by civil authorities, the supervision violation hearing may be held at the place of confinement.

(b)  The prisoner's Military Department C&PB shall appoint a hearing officer or panel to conduct a supervision violation hearing.  The hearing officer or panel shall be neutral and detached, and need not be, or include, a judicial officer or attorney.

(c)  The supervisee shall be given written notice of the violation hearing.  The notice to the supervisee shall inform the supervisee of the alleged violation, the purpose of the supervision violation hearing, the evidence on which the supervision violation hearing is based, the supervisee's rights at the supervision violation hearing, and the options available to the Military Department C&PB.

(d)  Evidence on which a finding of violation may be based shall be disclosed to the supervisee at least 10 days before the supervision violation hearing.  If evidence supporting a supervision violation is discovered subsequent to the hearing, the supervisee shall be given 10 days to respond in writing to the new evidence.

(e)  The scope of a supervision violation hearing shall be limited to the examination of evidence of an alleged supervision violation, relevant questioning of witnesses, pertinent statements as to an alleged supervision violation, whether the supervision should be revoked, and whether the supervisee should be re-incarcerated.

(f)  The supervisee may present, at no expense to the Government, witnesses and documentary evidence on his or her behalf and may cross-examine adverse witnesses subject to limitations imposed by the hearing officer or panel for good cause.  The hearing officer or panel may limit or exclude any irrelevant or repetitious witness, statement, question, or documentary evidence.

(g)  If the supervision violation hearing is not held at or near the place of the alleged violation, the hearing officer should make reasonable efforts to contact and to have those witnesses requested by the supervisee testify by phone, unless the hearing officer determines the witness's testimony is irrelevant, repetitious or could be presented adequately through another medium, such as documentary evidence.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 39 of 93

(h)  The supervisee may be represented at a supervision violation hearing by a civilian attorney or other representative of his or her choice at no expense to the Government.  When requested by a supervisee not represented by a civilian attorney, a military attorney shall be provided, as designated by Defense Services of the appropriate Military Department; however, the supervisee has no right to a military attorney of his or her choice.

<u>1</u>.  The role of any representative or attorney shall be limited to the examination of witnesses, presentation of evidence, and the offering of a statement on the supervisee's behalf as to whether supervision should be revoked.  Challenges to the supervision violation hearing proceeding shall not be permitted.

<u>2</u>.  If the supervisee requests a military attorney and the supervision violation hearing is held in an MCF, the legal/judge advocate office that supports the MCF shall provide any authorized defense services relating to the hearing.  In those rare cases when the legal/judge advocate office cannot provide support relating to a supervision violation hearing, it or the correctional headquarters will provide in writing to the supervisee's Military Department C&PB (with a copy to OSD(P&R) LP) a detailed justification for its inability to support the hearing.

<u>3</u>.  If the supervisee requests a military attorney and the supervision violation hearing is held in the local community; e.g., without the supervisee's return to an MCF, the supervisee's Military Service shall provide any authorized military defense services relating to the hearing.

(6)  Supervision may be revoked based on a finding that a supervisee has violated a condition of supervision by failure to pay a fine or make restitution only if the supervisee refused to pay the fine or make restitution when the supervisee had sufficient resources; or the supervisee failed to make sufficient bona fide efforts to obtain employment, or legally acquire funds with which to pay the fine or make restitution.  If the supervisee could not pay the fine or make restitution, despite sufficient bona fide efforts to acquire the resources to do so, supervision may be revoked only if no alternative disposition exists that will adequately serve the need for good order and discipline within the Military Services and the correctional treatment of the supervisee.

(7)  A supervisee may waive a preliminary interview or a supervision violation hearing or both.  The Military Department C&PB, at any stage of investigating an alleged supervision violation, may offer the supervisee an expedited proceeding.  The offer will summarize the facts and explain that the Military Department C&PB believes it has the facts to determine appropriate action in the case; the general due process to which the supervisee is entitled in a preliminary interview or supervision violation hearing or both; and the action the Military Department C&PB will take if the supervisee waives the specific due process entitled.  If the supervisee does not accept the expedited proceedings, the Military Department C&PB will not consider that decision in making its final decision in the supervisee's case.

(8)  A Military Department C&PB shall take final action on the findings and recommendations of the officer or panel conducting a supervision violation hearing.  A determination by a Military Department C&PB to revoke supervision shall be supported by a preponderance of the evidence, as determined by the Military Department C&PB, that the

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 40 of 93

supervisee has violated a condition of supervision and that the violation warrants supervision revocation. The fact that a supervisee has neither committed a criminal offense nor been convicted of committing a criminal offense does not prevent a decision to revoke supervision.

b. A prisoner whose parole or MSR is revoked shall receive credit for time spent on supervision except:

(1) If, after being released on supervision, the supervisee commits and pleads guilty to, is convicted of, or a court takes action tantamount to a finding of guilty to a new offense that is punishable by a term of imprisonment (even if no imprisonment is actually imposed), the Military Department C&PB may order the forfeiture of the time from the date after release to the date of suspension, revocation, or return to custody to serve the military sentence. To support sentence computation, the Military Department C&PB shall provide the MCF commander in writing the inclusive dates of credit. Such forfeited time shall not be credited to the service of the military sentence. If such plea, finding, action, or conviction occurs subsequent to a supervision violation hearing, a Military Department C&PB may reconsider the forfeiture of time served on supervision or other disposition, as appropriate.

(2) If the Military Department C&PB finds that a supervisee refused or failed to respond to any reasonable request, order, or summons of a Military Department C&PB or any agent thereof, including the assigned USPO, or if a Military Department C&PB finds that the supervisee was not in material compliance with the conditions of supervision, a Military Department C&PB may order the forfeiture of time from the date of the refusal, failure, or violation to the date of revocation or return to custody to serve the military sentence. The length of time between release on supervision and the refusal, failure, or violation, and the nature and seriousness of the misconduct shall be considered in determining whether a supervisee was ever in material compliance with the supervision conditions.

c. The computation of any sentence to be served will be done IAW Reference (m) for a prisoner's sentence adjudged after July 26, 2004, or Service regulations for a prisoner with a sentence adjudged before July 27, 2004.

23. RELEASE PROCEDURES

a. MCF commanders shall ensure that DD Form 2708, "Receipt For Pre-Trial/Post Trial Prisoner or Detained Person" or comparable documentation is prepared and maintained to reflect that a prisoner has been taken out of an MCF for any reason.

b. MCF commanders shall ensure that DD Form 2717, "Department of Defense Voluntary/Involuntary Appellate Leave Action," or comparable documentation is prepared and maintained when a prisoner with an unexecuted punitive discharge is released from confinement.

c. MCF commanders shall ensure that DD Form 2718, "Prisoner's Release Order," or comparable documentation is prepared and maintained upon each prisoner's final release from the facility.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 41 of 93

d. MCF commanders shall not release a prisoner whose sentence has been set aside by the decision of an appellate court until such release is specifically directed by The Judge Advocate General of the prisoner's Service or other competent authority.

e. Before final release from confinement, MCF commanders shall advise a prisoner convicted at a general or special court-martial of an offense requiring registration as a sex offender (see Tables 4 and 5 at Appendix 4 for a list of covered offenses) of the registration requirements of the State, tribe, or territory in which the prisoner will reside upon release from confinement. The notice provided to a prisoner shall contain information that the prisoner is subject to a registration requirement as a sex offender in any State, tribe, or territory in which the person resides, is employed, carries on a vocation, or is a student, and that the MCF commander has made or shall make the notifications to local, State, tribe, or territory law enforcement officials discussed in paragraph 23.f., of this enclosure.

(1) MCF commanders shall ensure that all available records concerning a prisoner are reviewed to determine if the prisoner has been convicted of a covered offense at a general or special court-martial. The notice requirements shall apply to all prisoners who were convicted of a covered offense at a general or special court-martial whenever the records fail to reflect a prior notice has been made.

(2) MCFs shall obtain the prisoner's acknowledgement in writing that the prisoner was informed of the registration requirements using DD Form 2791, "Notice of Release/Acknowledgement of Convicted Sex Offender Registration Requirements," or equivalent. The documentation shall be made part of the prisoner's permanent file and maintained by the prisoner's branch of Service according to policies and regulations prescribed by the Secretary concerned.

f. Before release of a prisoner convicted of a covered sex offense (see Appendix 4), at a general or special court-martial, MCF commanders shall provide written notice of the release to U.S. Marshals Service, National Sex Offender Targeting Center; the chief law enforcement officer of the State, tribe, territory, or local jurisdiction in which the prisoner will reside; and to the State or local agency responsible for the receipt or maintenance of a sex offender registration in the State, tribe, territory, or local jurisdiction in which the person will reside. MCF commanders shall ensure that all available records concerning a prisoner are reviewed to determine if the prisoner to be released has been convicted of a covered offense at a general or special court-martial.

(1) The chief law enforcement officer of the tribe or local jurisdiction is the appropriate municipal or county law enforcement agent with jurisdictional authority consistent with the prisoner's release address. When multiple jurisdictions have overlapping authority, the more geographically specific agency should be notified. MCF commanders may refer to the National Directory of Law Enforcement Administrators to identify appropriate State, tribe, territory, and local chief law enforcement officers.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 42 of 93

(2)  The written notice provided pursuant to this paragraph shall include the place where the prisoner intends to reside and information that the prisoner shall be subject to registration. The notice shall also include the prisoner's criminal history and a description of the offense of which the prisoner was convicted and any restrictions or conditions of release.

(3)  Notice shall be provided at least 5 days before release date if the expected place of residence following release is known to the MCF.

(4)  The Secretaries concerned shall establish a system to verify that required notifications have been made for prisoners and military members whose sentences do not include confinement.

(5)  Notice about a subsequent change of residence by a prisoner falling within this paragraph during any period of supervised release or parole will be provided to State, tribal, territorial, or local authorities as well as the U.S. Marshals Service National Sex Offender Targeting Center.

(6)  Notification to State, tribal, territorial, and local authorities as well as the U.S. Marshals Service, National Sex Offender Targeting Center is not required for a military prisoner transferred to another MCF.  However, upon the transfer of a military prisoner who is subject to this paragraph to a facility under the control of the FBOP, the MCF from which the prisoner is being transferred shall provide written notification to the FBOP that the prisoner has been convicted of a covered sex offense at a general or special court-martial.  If a military prisoner remains confined in a facility under the control of the FBOP until the time of release, the FBOP shall provide notice of release and inform the prisoner concerning registration obligations.


24.  V/W ASSISTANCE REQUIREMENTS

a.  The V/WAPs established by each Service shall include procedures to provide timely advance notice to those victims and witnesses indicating a desire to be so notified of any significant change in the status of a prisoner confined in an MCF.  Notifications and procedures shall be consistent with Reference (p) and DoDD 1030.01 (Reference (q)).  Any victim or witness shall, at the discretion of the Secretary concerned, be afforded an opportunity to make a personal appearance at a Military Department C&PB hearing.

b.  The Military Services shall establish and administer a central repository to serve as a clearinghouse of information on a prisoner's status and to collect and report data on V/W assistance, including notification of changes in a prisoner's confinement status.

c.  Upon confinement of a prisoner, the facility staff shall review the DD Form 2704 to ensure it is properly completed.  If there is a question concerning named persons or contact information, it will be immediately referred to the appropriate Staff Judge Advocate for correction.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 43 of 93

25. DNA COLLECTION AND ANALYSIS REQUIREMENTS

   a.  IAW DoDI 5505.14 (Reference (r)), MCF commanders shall verify that a prisoner confined, or to be confined, in their facility as a result of any general or special court-martial conviction has had a DNA sample taken and submitted to the United States Army Criminal Investigative Laboratory (USACIL).

   b.  When such prisoners are ordered into confinement, the commander must present adequate documentation indicating that a DNA sample has been taken to be submitted to USACIL.

   c.  MCF commanders may accept such prisoners into their MCF without adequate documentation that a DNA sample has been  received by USACIL, but they must contact USACIL to confirm receipt of the DNA sample.  If USACIL cannot confirm receipt of the DNA sample sent in a timely manner, MCF commanders must collect and forward to USACIL a DNA sample using the procedures found in Reference (r).

   d.  MCF commanders will ensure that a Service member who has been ordered into pretrial confinement by a competent military authority has a DNA sample taken and submitted to USACIL after completion of the commander's 72-hour memorandum required by Rule for Court Martial 305(h)(2)(C) of Reference (p).

   e.  Nothing in this section requires an additional DNA sample to be taken and submitted if USACIL confirms receipt of a DNA sample taken.


26. DoD FORMS.  For a list of DoD forms used for the administration of MCFs, see Appendix 5 of this enclosure.  The forms can be found at the DoD Forms Management Program website: http://www.esd.whs.mil/Directives/forms/.

   Appendixes:
      1. Offense Severity Scale (Alphabetical) UCMJ Codes for DoD Use
      2. Acknowledgement of Mandatory Supervised Release (MSR Briefing)
      3. Abatement of Sentences to Confinement
      4. Listing of Offenses Requiring Sex Offender Processing
      5. DoD Forms

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 44 of 93

APPENDIX 1 TO ENCLOSURE 2

OFFENSE SEVERITY SCALE (ALPHABETICAL) UCMJ CODES FOR DoD USE

The offense severity scale will be used when an offense severity is scored to determine risk to include classification and parole worksheet. Severity of offenses marked with an asterisk (*) are to be determined on a range of 1 through 8 by the classifier. Maximum punitive discharge is categorized as: Bad Conduct Discharge (BCD); Dishonorable Discharge (DD); or None, as applicable. A death sentence includes a dishonorable discharge or dismissal (in the case of an officer) as appropriate. Confinement is a necessary incident of a sentence of death, but not a part of it. (See "Other Penalties", Rule for Courts-Martial 1004(e) of Reference (p)). Maximum confinement is noted by: years (Y); months (M); Life; mandatory minimum life with or without eligibility for parole (MLif), Death; or as prescribed (PRES).

Table 1. UCMJ Codes For DoD Use

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 082-A | Solicit: Commit/Attempt | * | None | |
| 082-B1 | Solicit: Desert | 3 | DD | 3 Y |
| 082-B2 | Solicit: Mutiny | 5 | DD | 10 Y |
| 082-B3 | Solicit: Misbehave Before Enemy | 5 | DD | 10 Y |
| 082-B4 | Solicit: Act of Sedition | 5 | DD | 10 Y |
| 083-A- | Fraudulent Enlistment | 3 | DD | 2 Y |
| 083-B- | Fraudulent Separation | 3 | DD | 5 Y |
| 084-A- | Unlawful Enlistment/Appointment | 3 | DD | 5 Y |
| 084-B- | Unlawful Separation | 3 | DD | 5 Y |
| 085-A- | Desert: Avoid Duty, Hazardous | 4 | DD | 5 Y |
| 085-B1 | Desert: Terminate by Apprehension | 3 | DD | 3 Y |
| 085-B2 | Desert: Otherwise Terminate | 2 | DD | 2 Y |
| 085-C1 | Desert: Before Notice: Apprehend | 3 | DD | 3 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 45 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 085-C2 | Desert:  Before Notice: Other | 1 | DD | 2 Y |
| 085-D- | Desert:  In Time of War | 8 | Death | Life |
| 086-A1 | UA:  From Place of Duty | 1 | None | 1 Month (M) |
| 086-A2 | UA:  To Place of Duty | 1 | None | 1 M |
| 086-B1 | UA:  3 Days or Less | 1 | None | 1 M |
| 086-B2 | UA:  Over 3 Less than 30 Days | 1 | None | 6 M |
| 086-B3 | UA:  Over 30 Days | 1 | DD | 1 Y |
| 086-B4 | UA:  Over 30 Apprehended | 2 | DD | 18 M |
| 086-C1 | UA:  Watch or Guard | 1 | None | 3 M |
| 086-C2 | UA:  Intent to Abandon | 1 | BCD | 6 M |
| 086-D- | UA:  Avoid Maneuvers | 1 | BCD | 6 M |
| 087-A- | Miss Movement: Design | 2 | DD | 2 Y |
| 087-B- | Miss Movement:  Neglect | 1 | BCD | 1 Y |
| 088--- | Contempt toward Officials | 2 | DIS | 1Y |
| 089--- | Disrespect toward Superior | 1 | BCD | 1 Y |
| 090-A1 | Assault:  CWO by WO or Enlisted | 5 | DD | 10 Y |
| 090-A2 | Assault:  In Time of War | 8 | Death | Life |
| 090-B1 | Disobey:  Lawful Order of Commissioned Officer | 3 | DD | 5 Y |
| 090-B2 | Disobey:  In Time of War | 8 | Death | Life |
| 091-A1 | Assault:  CWO by WO or Enlisted | 3 | DD | 5 Y |
| 091-A2 | Assault:  Superior NCO/PO | 2 | DD | 3 Y |
| 091-A3 | Assault:  Other NCO/PO | 2 | DD | 1 Y |
| 091-B1 | Disobey:  CWO | 2 | DD | 2 Y |
| 091-B2 | Disobey:  NCO or PO | 1 | BCD | 1 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 46 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 091-C1 | Disrespect: CWO in Execution of Office | 2 | BCD | 9 M |
| 091-C2 | Disrespect: Superior NCO/PO in Execution of Office | 2 | BCD | 6 M |
| 091-C3 | Disrespect: Other NCO/PO in Execution of Office | 1 | None | 3 M |
| 092-A0 | Fail to Obey General Order: Other | 2 | DD | 2 Y |
| 092-A1 | Fail to Obey General Order: Appearance | 2 | DD | 2 Y |
| 092-A2 | Fail to Obey General Order: Black Market | 2 | DD | 2 Y |
| 092-A3 | Fail to Obey General Order: Fraternization | 2 | DD | 2 Y |
| 092-A4 | Fail to Obey General Order: Paraphernalia | 2 | DD | 2 Y |
| 092-A5 | Fail to Obey General Order: Security | 2 | DD | 2 Y |
| 092-A6 | Fail to Obey General Order: Sexual Harassment | 2 | DD | 2 Y |
| 092-A7 | Fail to Obey General Order: Standards Of Conduct | 2 | DD | 2 Y |
| 092-A8 | Fail to Obey General Order: Traffic | 2 | DD | 2 Y |
| 092-A9 | Fail to Obey General Order: Weapons | 2 | DD | 2 Y |
| 092-B- | Fail to Obey Other Order | 1 | BCD | 6 M |
| 092-C1 | Derelict Duties: Neglect | 1 | None | 3 M |
| 092-C2 | Derelict Duties: Willful | 2 | BCD | 6 M |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 47 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 092C2A | Derelict Duties:  Willful Misuse of Government Travel Card | 2 | BCD | 6 M |
| 092C2B | Derelict Duties:  Willful Misuse of Government Purchase Card | 2 | BCD | 6 M |
| 093--- | Cruelty of Subordinates | 3 | DD | 1 Y |
| 094-A1 | Mutiny:  By Violence or Disturbance | 8 | Death | Life |
| 094-A2 | Mutiny:  Refusing To Obey Orders or Perform Duty | 8 | Death | Life |
| 094-A3 | Mutiny:  Failure to Prevent or Suppress | 8 | Death | Life |
| 094-A4 | Mutiny:  Failure to Report | 8 | Death | Life |
| 094-B1 | Sedition | 8 | Death | Life |
| 094-B2 | Sedition: Failure to Prevent or Suppress | 8 | Death | Life |
| 094-B3 | Sedition:  Failure to Report | 8 | Death | Life |
| 095-A- | Resist Apprehension | 2 | BCD | 1 Y |
| 095-B- | Break Arrest | 1 | BCD | 6 M |
| 095-C- | Escape from Custody | 3 | DD | 1 Y |
| 095-D1 | Escape from Pretrial Confinement | 3 | DD | 1 Y |
| 095-D2 | Escape from Post-Trial Confinement | 3 | DD | 5 Y |
| 096-A- | Release Prisoner without Authority | 3 | DD | 2 Y |
| 096-B1 | Allow Escape:  Neglect | 1 | BCD | 1 Y |
| 096-B2 | Allow Escape:  Design | 3 | DD | 2 Y |
| 097--- | Unlawful Detention | 4 | DD | 3 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 48 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 098-A- | Delay Disposition of Case | 1 | BCD | 6 M |
| 098-B- | Fail to Enforce Procedural Rules | 3 | DD | 5 Y |
| 099-A- | Before Enemy: Run Away | 8 | Death | Life |
| 099-B- | Before Enemy: Shameful Abandon/Surrender/Deliver Command | 8 | Death | Life |
| 099-C- | Before Enemy: Endanger Command/Unit/Place/Ship | 8 | Death | Life |
| 099-E- | Before Enemy: Cowardly Conduct | 8 | Death | Life |
| 099-F- | Before Enemy: Quit Place of Duty to Plunder/Pillage | 8 | Death | Life |
| 099-G- | Before Enemy: Cause False Alarms | 8 | Death | Life |
| 099-H- | Before Enemy: Willful Failure to Encounter Enemy | 8 | Death | Life |
| 099-I- | Before Enemy: Fail to Afford Relief or Assistance | 8 | Death | Life |
| 100-A- | Compel Surrender | 8 | Death | Life |
| 100-B- | Strike Flag Before Enemy | 8 | Death | Life |
| 101-A- | Disclose Parole/Countersign to Unauthorized | 8 | Death | Life |
| 101-B- | Give Parole/Countersign Different from Authorized | 8 | Death | Life |
| 102--- | Forcing Safeguard | 8 | Death | Life |
| 103-A1 | Fail to Secure Property: $500 or Less | 1 | BCD | 6 M |
| 103-A2 | Fail to Secure Property: More than $500 | 3 | DD | 5 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 49 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 103-B1 | Fail to Report/Turn Over Property: $500 or Less | 1 | BCD | 6 M |
| 103-B2 | Fail to Report/Turn Over Property: More than $500 | 3 | DD | 5 Y |
| 103-C1 | Dealing In Captured Property: $500 or Less | 1 | BCD | 6 M |
| 103-C2 | Dealing In Captured Property: More than $500 | 3 | DD | 5 Y |
| 103-D- | Looting, Pillaging | 7 | DD | Life |
| 104-A- | Aiding the Enemy | 8 | Death | Life |
| 104-B- | Harboring or Protecting the Enemy | 8 | Death | Life |
| 104-C- | Giving Intelligence to the Enemy | 8 | Death | Life |
| 104-D- | Communicating With the Enemy | 8 | Death | Life |
| 105-A- | Misconduct as POW: For Favorable Treatment | 7 | DD | Life |
| 105-B- | Misconduct as POW: Maltreat Prisoner | 7 | DD | Life |
| 106--- | Spying | 8 | Death | N/A |
| 106-A- | Espionage | 8 | Death | Life |
| 107-A- | Sign False Document | 3 | DD | 5 Y |
| 107-B- | False Official Statements | 3 | DD | 5 Y |
| 108-A1 | Sell Military Property: $500 or Less | 1 | BCD | 1 Y |
| 108-A2 | Sell Military Property: More than $500 | 4 | DD | 10 Y |
| 108-A3 | Sell Military Property: Firearm or Explosive | 4 | DD | 10 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 50 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 108-B1 | Neglect: Damage Milt Property:  $500 or Less | 1 | None | 6 M |
| 108-B2 | Neglect: Damage Milt Property:  More than $500 | 2 | BCD | 1 Y |
| 108-C1 | Willful Damage Military Property:  $500 or Less | 1 | BCD | 1 Y |
| 108-C2 | Willful: Damage Military Property:  More than $500 | 4 | DD | 10 Y |
| 108-C3 | Willful Damage Military Property:  Firearm or Explosive | 4 | DD | 10 Y |
| 109-A1 | Waste or Spoil Nonmilitary Property:  $500 or Less | 1 | BCD | 1 Y |
| 109-A2 | Waste or Spoil Nonmilitary Property:  More than $500 | 3 | DD | 1 Y |
| 109-B1 | Destroy or Damage Nonmilitary Property:  $500 or Less | 1 | BCD | 1 Y |
| 109-B2 | Destroy or Damage Nonmilitary Property:  More than $500 | 3 | DD | 5 Y |
| 110-A- | Hazard Vessel:  Willful | 8 | Death | Life |
| 110-B- | Hazard Vessel:  Negligent | 4 | DD | 2 Y |
| 111-A1 | Drunk Driving:  Personal Injury | 2 | DD | 18 M |
| 111-A2 | Drunk Driving:  Other Cases | 1 | BCD | 6 M |
| 111-B1 | Reckless Driving:  Personal Injury | 2 | DD | 18 M |
| 111-B2 | Reckless Driving:  Other Cases | 1 | BCD | 6 M |
| 112--- | Drunk on Duty | 1 | BCD | 9 M |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 51 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 112AA1 | Drugs:  Possess Schedule I, II, or III Drugs | 3 | DD | 5 Y |
| 112AA2 | Drugs:  Possess Schedule IV or V Drugs | 1 | DD | 2 Y |
| 112AA3 | Drugs:  Possess Marijuana Less than 30 Grams | 1 | DD | 2 Y |
| 112AA4 | Drugs:  Possess Marijuana More than 30 Grams | 3 | DD | 5 Y |
| 112AB1 | Drugs:  Possess w/Intent to Distribute Schedule I, II, or III | 5 | DD | 15 Y |
| 112AB2 | Drugs:  Possess w/Intent to Distribute Schedule IV or V | 4 | DD | 10 Y |
| 112AB3 | Possess with Intent to Distribute Marijuana | 5 | DD | 15 Y |
| 112AC1 | Drugs:  Use Schedule I, II, or III Drugs | 3 | DD | 5 Y |
| 112AC2 | Drugs:  Use Schedule IV or V Drugs | 1 | DD | 2 Y |
| 112AC3 | Drugs:  Use Marijuana Less than 30 Grams | 1 | DD | 2 Y |
| 112AC4 | Drugs:  Use Marijuana More than 30 Grams | 3 | DD | 5 Y |
| 112AD1 | Drugs:  Distribute Schedule I, II, or III Drugs | 5 | DD | 15 Y |
| 112AD2 | Drugs:  Distribute Schedule IV or V Drugs | 4 | DD | 10 Y |
| 112AD3 | Distribution of Marijuana | 5 | DD | 15 Y |
| 112AE1 | Drugs:  Manufacture Schedule I, II, or III Drugs | 5 | DD | 5 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 52 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 112AE2 | Drugs: Manufacture Schedule IV or V Drugs | 4 | DD | 2 Y |
| 112AE3 | Drugs:  Manufacture Marijuana Less than 30 Grams | 1 | DD | 2 Y |
| 112AE4 | Drugs: Manufacture Marijuana More than 30 Grams | 3 | DD | 5 Y |
| 112AF1 | Drugs:  Mfg w/Intent to Distribute Schedule I, II, or III | 5 | DD | 15 Y |
| 112AF2 | Drugs:  Mfg w/Intent to Distribute Schedule IV or V | 4 | DD | 10 Y |
| 112AG1 | Drugs:  Introduce Schedule I, II, or III Drugs | 3 | DD | 5 Y |
| 112AG2 | Drugs:  Introduce Schedule IV or V Drugs | 1 | DD | 2 Y |
| 112AG3 | Drugs:  Introduce Marijuana Less than 30 Grams | 1 | DD | 2 Y |
| 112AG4 | Drugs:  Introduce Marijuana More than 30 Grams | 4 | DD | 5 Y |
| 112AH1 | Drugs:  Introduce w/Intent to Distribute Schedule I, II, or III | 5 | DD | 15 Y |
| 112AH2 | Drugs:  Introduce w/Intent to Distribute Schedule IV or V | 4 | DD | 10 Y |
| 112AH3 | Introduce with Intent to Distribute Marijuana | 5 | DD | 15 Y |
| 112AI1 | Drugs:  Import and/or Export Schedule I, II, or III | 5 | DD | 15 Y |
| 112AI2 | Drugs:  Import and/or Export Schedule IV or V | 4 | DD | 10 Y |
| 112AI3 | Import/Export Marijuana | 5 | DD | 15 Y |
| 113-A1 | Misbehave:  Sentinel in War | 8 | Death | Life |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 53 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 113-A2 | Misbehave:  Sentinel with Special Pay | 5 | DD | 10 Y |
| 113-A3 | Misbehave:  Sentinel other Places | 2 | DD | 1 Y |
| 114--- | Dueling | 1 | DD | 1 Y |
| 115-A1 | Malinger:  Time of War | 3 | DD | 3 Y |
| 115-A2 | Malinger:  Other | 1 | DD | 1 Y |
| 115-B1 | Injure Self:  Time of War | 5 | DD | 10 Y |
| 115-B2 | Injure Self:  Other | 3 | DD | 5 Y |
| 116-A- | Riot | 5 | DD | 10 Y |
| 116-B- | Breach Of Peace | 1 | None | 6 M |
| 117--- | Provoking Speech/Gesture | 1 | None | 6 M |
| 117A-- | Wrongful Broadcast or Distribution of Intimate Visual Images | To Be Determined | To Be Determined | To Be Determined |
| 118-A- | Murder:  Premeditated | 8 | Death | MandatoryLife sentence (MLif) |
| 118-B- | Murder:  Intent to Kill/Inflict Great Bodily Harm | 8 | DD | Life |
| 118-C- | Murder:  Act Dangerous to Others | 8 | DD | Life |
| 118-D- | Murder:  With Specified Offenses | 8 | Death | MLif |
| 119-A- | Manslaughter:  Voluntary | 7 | DD | 15 Y |
| 119A-A | Injuring an Unborn Child | * | Pres | Pres |
| 119A-B | Killing an Unborn Child | * | Pres | Pres |
| 119A-C | Attempting to Kill an Unborn Child | * | Pres | Pres |
| 119A-D | Intentionally Killing an Unborn Child | * | Pres | Pres |
| 119-B1 | Manslaughter:  Involuntary | 4 | DD | 10 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 54 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| 119-B2 | Manslaughter:  Involuntary with Specified Offenses | 4 | DD | 10 Y |
|---|---|---|---|---|
| 120-A- | Rape Before 1 Oct 07 | 7 | Death | Life |
| 120-A1 | Rape:  Using Force on /after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120-A2 | Rape:  Causing Grievous Bodily Harm, on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120-A3 | Rape:  Threatening Death, Grievous Bodily Harm, Kidnapping. on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120-A4 | Rape:  Rendering Unconscious on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120-A5 | Rape:  Administering Drug, Intoxicant, or Similar Substance on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120-AA | Rape:  Using Unlawful Force, on/after 28 Jun 12 | 7 | DD | Life |
| 120-AB | Sexual Assault | 6 | DD | 30 Y |
| 120-AC | Aggravated Sexual Contact | 6 | DD | 20 Y |
| 120-AD | Abusive Sexual Contact | 6 | DD | 7 Y |
| 120-B1 | Carnal Knowledge with a Child 12 to 16 Years of Age Before 1 Oct 07 | 4 | DD | 20 Y |
| 120-B2 | Carnal Knowledge with a Child under 12 Years of Age Before 1 Oct 07 | 7 | DD | Life |
| 120-B3 | Rape of a Child:  12 to Under 16 Years Old, on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 55 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 120-B4 | Rape of a Child: Under 12 Years Old, on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120-B5 | Rape of a Child: Using Force on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120-B6 | Rape of a Child: Causing Grievous Bodily Harm, on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120-B7 | Rape of a Child: Threatening Death, Causing Grievous Bodily Harm, Kidnapping, on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120-B8 | Rape of Child: Rendering Unconscious, on/after 1 Oct 07 through 27 June 12 | 7 | Death | Life |
| 120-B9 | Rape of a Child: Administering Drugs, Intoxicant, or Similar Substance on/after 1 Oct 07 through 27 Jun 12 | 7 | Death | Life |
| 120BB1 | Rape of a Child: Under 12 Years Old, on/after 28 Jun 12 | 7 | DD | Life |
| 120BB2 | Rape of a Child: Has Attained the Age of 12, on/after 28 Jun 12 | 7 | DD | Life |
| 120BB3 | Sexual Assault of a Child | 7 | DD | 30 Y |
| 120BB4 | Sexual Abuse of a Child | 7 | DD | 20 Y |
| 120CC1 | Indecent Viewing; Indecent Visual Recording; Broadcasting of Distribution | 7 | DD | 1 Y; 5 Y; 7 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 56 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 120CC2 | Forcible Pandering | 7 | DD | 12 Y |
| 120-E1 | Aggravated Sexual Contact Using Force on/after 1 Oct 07 | 6 | DD | 20 Y |
| 120-E2 | Aggravated Sexual Contact Causing Grievous Bodily Harm on/after 1 Oct 07 | 6 | DD | 20 Y |
| 120-E3 | Aggravated Sexual Contact Threatening Death, Grievous Bodily Harm, Kidnapping, on/after 1 Oct 07 | 6 | DD | 20 Y |
| 120-E4 | Aggravated Sexual Contact Rendering Unconscious on/after 1 Oct 07 | 6 | DD | 20 Y |
| 120-E5 | Aggravated Sexual Contact Administering Drug, Intoxicant, or Similar Substance on/after  1 Oct 07 | 6 | DD | 20 Y |
| 120-E6 | Aggravated Sexual Contact: Using Physical Violence, Strength, Power, or Restraint to Any Person | 6 | DD | 20 Y |
| 120-E7 | Aggravated Sexual Contact:  By Causing Grievous Bodily Harm | 6 | DD | 20 Y |
| 120-E8 | Aggravated Sexual Contact: By Using Threats or Placing in Fear | 6 | DD | 20 Y |
| 120-E9 | Aggravated Sexual Contact: By Rendering Another Unconscious | 6 | DD | 20 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 57 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 120-F1 | Aggravated Sexual Contact with a Child 12 to 16 Years Old:  Using Force | 6 | DD | 20 Y |
| 120-F2 | Aggravated Sexual Contact with a Child 12 to 16 Years Old:  Using or Displaying a Dangerous Weapon | 6 | DD | 20 Y |
| 120-F3 | Aggravated Sexual Contact: with a Child 12 to 16 Years Old:  By Suggestion or Possession of a Dangerous Weapon or Object | 6 | DD | 20 Y |
| 120-F4 | Aggravated Sexual Contact with a Child 12 to 16 Years Old:  Using Violence, Strength, Power, or Restraint to Any Person | 6 | DD | 20 Y |
| 120-F5 | Aggravated Sexual Contact with a Child 12 to 16 Years Old:  By Causing Grievous Bodily Harm | 6 | DD | 20 Y |
| 120-F7 | Aggravated Sexual Contact with a Child 12 to 16 Years Old:  By Rendering Another Unconscious | 6 | DD | 20 Y |
| 120-F8 | Aggravated Sexual Contact with a Child 12 to 16 Years Old:  By Administering a Drug, Intoxicant, or Other Similar Substance | 6 | DD | 20 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 58 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 120-G1 | Abusive Sexual Contact by Using Threats or Placing in Fear | 6 | DD | 20 Y |
| 120-G2 | Abusive Sexual Contact Causing Bodily Harm, on/after 1 Oct 07 | 5 | DD | 7 Y |
| 120-G3 | Abusive Sexual Contact when Victim is Substantially Incapacitated/Unable to Appraise Act, Decline Participation, or Communicate Unwillingness, on/after 1 Oct 07 | 5 | DD | 7 Y |
| 120-G4 | Aggravated Sexual Contact with a Child 12 but Under 16 Years Old, Rendering Unconscious, on/after 1 Oct 07 | 6 | DD | 20 Y |
| 120-G5 | Aggravated Sexual Contact with a Child 12 but Under 16 Years Old, Administering Drug, Intoxicant, or Similar Substance, on/after 1 Oct 07 | 6 | DD | 20 Y |
| 120- H1 | Indecent Liberty with a Child, on/after 1 Oct 07 | 3 | DD | 15 Y |
| 120- I1 | Indecent Act On/after 1 Oct 07 | 4 | DD | 15 Y |
| 120- J1 | Forcible Pandering On/after 1 Oct 07 | 4 | DD | 5 Y |
| 120- K1 | Wrongful Sexual Conduct on/after 1 Oct 07 | 2 | DD | 1 Y |
| 120-L1 | Indecent Exposure: On/after 1 Oct 07 | 2 | DD | 1 Y |
| 120A-- | Stalking | 5 | DD | 3 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 59 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 121-A1 | Larceny:  Milt Property $500 or Less | 1 | BCD | 1 Y |
| 121-A2 | Larceny:  Milt Property More than $500 | 3 | DD | 10 Y |
| 121-B1 | Larceny:  Nonmilitary Property $500 or Less | 1 | BCD | 6 M |
| 121B1A | Larceny:  Nonmilitary Property $500 or Less: Misuse of Government Purchase Card | 2 | BCD | 6 M |
| 121-B2 | Larceny:  Nonmilitary Property More than $500 | 3 | DD | 5 Y |
| 121B2A | Larceny:  Nonmilitary Property More than $500: Misuse of Government Purchase Card | 3 | DD | 5 Y |
| 121-C1 | Misappropriate:  $500 or Less | 1 | None | 3 M |
| 121-C2 | Misappropriate:  More than $500 | 2 | BCD | 6 M |
| 121-C3 | Misappropriate:  Plane, Boat | 2 | DD | 2 Y |
| 122-A- | Robbery:  With Firearm | 6 | DD | 15 Y |
| 122-B- | Robbery:  Other Cases | 5 | DD | 10 Y |
| 123-A- | Forgery:  Making/Altering | 3 | DD | 5 Y |
| 123AA1 | Bad Check:  Defraud $500 or Less | 1 | BCD | 6 M |
| 123AA2 | Bad Check:  Defraud More than $500 | 2 | DD | 5 Y |
| 123AB- | Bad Check:  Deceive | 1 | BCD | 6 M |
| 123-B- | Forgery:  Uttering | 3 | DD | 5 Y |
| 124--- | Maiming | 4 | DD | 7 Y |
| 125-A- | Sodomy:  Force | 6 | DD | Life |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 60 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 125-B1 | Sodomy: Child 12 to 16 Yrs Old | 4 | DD | 20 Y |
| 125-B2 | Sodomy: Child under 12 Yrs Old | 7 | DD | Life |
| 125-C- | Sodomy: Other | 4 | DD | 5 Y |
| 126-A- | Arson: Aggravated | 6 | DD | 20 Y |
| 126-B1 | Arson: Property $500 or Less | 2 | DD | 1 Y |
| 126-B2 | Arson: Property More than $500 | 4 | DD | 5 Y |
| 127--- | Extortion | 5 | DD | 3 Y |
| 128-A- | Assault: Simple | 2 | None | 3 M |
| 128-A1 | Assault: With Unloaded Firearm | 3 | DD | 3 Y |
| 128-A2 | Assault, Simple: Upon a Child Under the Age of 16 | 2 | None | 3 M |
| 128-B- | Assault: By Battery | 1 | BCD | 6 M |
| 128-C- | Assault: Commissioned Officer (Not in Execution of Office) | 2 | DD | 3 Y |
| 128-D- | Assault: CWO (Not in Execution of Office) | 1 | DD | 18 M |
| 128-E- | Assault: NCO or PO (Not in Execution of Office) | 1 | BCD | 6 M |
| 128-F- | Assault: Military or Civilian Law Officer | 3 | DD | 3 Y |
| 128-G- | Assault: Battery on a Child under 16 | 2 | DD | 2 Y |
| 128-H1 | Assault, Aggravated: Dangerous Weapon, Means of Force Likely to Harm | 5 | DD | 8 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 61 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 128-H2 | Assault, Aggravated: Dangerous Weapon, Means of Force Likely to Harm (Loaded Firearm) | 3 | DD | 3 Y |
| 128-H3 | Assault, Aggravated: Dangerous Weapon, Means Of Force Likely To Harm (Child Under 16) | 5 | DD | 5 Y |
| 128-J1 | Assault, Aggravated: Intentionally Inflicted Grievous Bodily Harm | 7 | DD | 10 Y |
| 128-J2 | Assault, Aggravated: Intentionally Inflicted Grievous Bodily Harm (Loaded Firearm) | 5 | DD | 5 Y |
| 128-J3 | Assault, Aggravated: Intentionally Inflicted Grievous Bodily Harm (Child Under 16) | 7 | DD | 8 Y |
| 129--- | Burglary | 5 | DD | 10 Y |
| 130--- | Housebreaking | 5 | DD | 5 Y |
| 131-A- | Perjury: Giving False Testimony | 3 | DD | 5 Y |
| 131-B- | Perjury: Subscribing False Statement | 3 | DD | 5 Y |
| 132-A- | Fraud: Make False Claim | 5 | DD | 5 Y |
| 132-B- | Fraud: Present False Claim | 5 | DD | 5 Y |
| 132-C- | Fraud: False Document with Claim | 5 | DD | 5 Y |
| 132-D- | Fraud: False Oath in Connection with Claim | 5 | DD | 5 Y |
| 132-E- | Fraud: Forgery of Signature | 5 | DD | 5 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 62 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 132-F- | Fraud:  Use Forged Signature | 5 | DD | 5 Y |
| 132-G1 | Deliver Lesser Amt than on Receipt:  $500 or Less | 1 | BCD | 6 M |
| 132-G2 | Deliver Lesser Amt than on Receipt:  More than $500 | 5 | DD | 5 Y |
| 132-H1 | Make/Deliver Rcpt w/out Full Knowledge:  $500 or Less | 1 | BCD | 6 M |
| 132-H2 | Make/Deliver Rcpt w/out Full Knowledge:  More than $500 | 5 | DD | 5 Y |
| 133-A- | Conduct Unbecoming Officer:  Copy/Cheat | 3 | DIS | Pres |
| 133-B- | Conduct Unbecoming Officer:  Drunk/Disorderly | 3 | DIS | Pres |
| 133-C- | Conduct Unbecoming Officer:  Fraternization (Unprofessional Relationship) | 3 | DIS | Pres |
| 133-D- | Conduct Unbecoming Officer:  Other | 3 | DIS | Pres |
| 133-E- | Conduct Unbecoming Officer:  Sexually Violent Offense Against a Minor | 7 | DIS | Pres |
| 134-A1 | Abusing Animal | 1 | None | 3 M |
| 134-B1 | Adultery | 1 | DD | 1 Y |
| 134-B2 | Bigamy | 1 | DD | 2 Y |
| 134-B3 | Cohabitation:  Wrongful | 1 | None | 4 M |
| 134-B4 | Fraternization | 3 | DIS | 2 Y |
| 134-B5 | Prostitution Offense (Pandering) | 3 | DD | 5 Y |
| 134B5A | Pandering: Arrange/Receive Consideration for Arranging Sexual Intercourse or Sodomy | 5 | DD | 5 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 63 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 134-B6 | Prostitution Offense (Prostitution) | 2 | DD | 1 Y |
| 134B6A | Prostitution: Involving a Minor | 3 | DD | 1 Y |
| 134-B7 | Prostitution Offense (Purchasing Prostitution) | 2 | DD | 1 Y |
| 134-C1 | Assault: Indecent | 5 | DD | 5 Y |
| 134-C2 | Assault: Intent to Murder | 7 | DD | 20 Y |
| 134-C3 | Assault: Intent to Manslaughter | 7 | DD | 10 Y |
| 134-C4 | Assault: Intent to Rape | 7 | DD | 20 Y |
| 134-C5 | Assault: Intent to Rob | 7 | DD | 10 Y |
| 134-C6 | Assault: Intent to Sodomize | 7 | DD | 10 Y |
| 134-C7 | Assault: Intent to Housebreak | 5 | DD | 5 Y |
| 134-C8 | Assault: Intent Arson/Burglary | 7 | DD | 5 Y |
| 134-C9 | Homicide: Negligent | 4 | BCD | 3 Y |
| 134-D1 | Bribery | 5 | DD | 5 Y |
| 134-D2 | Graft | 2 | DD | 3 Y |
| 134-E1 | Burn With Intent to Defraud | 4 | DD | 10 Y |
| 134-F1 | Check: Worthless Make/Utter | 1 | BCD | 6 M |
| 134-F2 | Child Endangerment by Design | 3 | DD | 4 Y |
| 134-F3 | Child Endangerment by Design Resulting in Grievous Bodily Harm | 7 | DD | 8 Y |
| 134-F4 | Child Endangerment by Design Resulting in Harm | 5 | DD | 5 Y |
| 134-F5 | Child Endangerment by Culpable Negligence Resulting in Grievous Bodily Harm | 3 | DD | 3 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 64 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 134-F6 | Child Endangerment by Culpable Negligence Resulting in Harm | 1 | BCD | 2 Y |
| 134-G1 | Correctional Custody:  Escape | 2 | DD | 1 Y |
| 134-G2 | Correctional Custody:  Breach | 2 | BCD | 6 M |
| 134-G3 | Break Quarantine | 1 | None | 6 M |
| 134-G4 | Restriction:  Breaking | 1 | None | 1 M |
| 134-G5 | Parole:  Violation of | 1 | BCD | 6 M |
| 134-G6 | Prisoner:  Allowing to do Unauthorized Act | 1 | None | 3 M |
| 134-H1 | Fail to Pay Debt | 1 | BCD | 6 M |
| 134-H2 | Fail to Pay Debt:  Government Travel Card | 1 | BCD | 6 M |
| 134-I1 | Disloyal Statement | 4 | DD | 3 Y |
| 134-J0 | Drunk:  Unable to Perform Duties | 1 | None | 3 M |
| 134-J1 | Drunk:  Aboard Ship (on Station) | 1 | None | 3 M |
| 134-J2 | Drunk:  Other Cases, Bring Discredit | 1 | None | 1 M |
| 134-J3 | Drunk/Disorderly:  On Ship | 1 | BCD | 6 M |
| 134-J4 | Drunk/Disorderly:  Bring Discredit | 1 | None | 6 M |
| 134-J5 | Drunk/Disorderly:  Other | 1 | None | 3 M |
| 134-J6 | Drink Liquor With Prisoner | 1 | None | 3 M |
| 134-J7 | Drunk Prisoner | 1 | None | 3 M |
| 134-J8 | Disorderly Conduct:  Bring Discredit | 1 | None | 4 M |
| 134-J9 | Disorderly Conduct:  Other Cases | 1 | None | 1 M |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 65 of 93

Table 1. UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 134-K1 | Milt Pass:  Wrongful Make/Tamper/ Alter/Counterfeit | 2 | DD | 3 Y |
| 134-K2 | Milt Pass:  Wrongful Sale/Gift/ Loan/Disposition | 2 | DD | 3 Y |
| 134-K3 | Milt Pass:  Wrongful Use/Possess | 2 | DD | 3 Y |
| 134-K4 | Milt Pass:  All Other | 1 | BCD | 6 M |
| 134-L1 | False Pretense:  $500 or Less | 1 | BCD | 6 M |
| 134-L2 | False Pretense:  More than $500 | 2 | DD | 5 Y |
| 134-M1 | False Swearing | 2 | DD | 3 Y |
| 134-N1 | Firearm:  Discharge Neglect | 1 | None | 3 M |
| 134-N2 | Firearm:  Discharge, Willful | 2 | DD | 1 Y |
| 134-N3 | Weapon:  Carry Concealed | 3 | BCD | 1 Y |
| 134-O1 | Flee Scene:  Accident | 1 | BCD | 6 M |
| 134-P1 | Gamble with Subordinate | 1 | None | 3 M |
| 134-P2 | Jump Vessel | 1 | BCD | 6 M |
| 134-P3 | Straggling | 1 | None | 3 M |
| 134-P4 | Wearing Unauthorized Insignia | 1 | BCD | 6 M |
| 134-Q1 | Impersonate, Intent to Defraud:  Officer, WO, NCO | 3 | DD | 3 Y |
| 134-Q2 | Impersonate, No Intent to Defraud:  Officer, WO, NCO | 1 | BCD | 6 M |
| 134-Q3 | Impersonate, Intent to Defraud: Other | 3 | DD | 3 Y |
| 134-Q4 | Impersonate, No Intent to Defraud: Other | 1 | BCD | 6 M |
| 134-R1 | Indecent Acts Before 1 Oct 07 | 5 | DD | 7 Y |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 66 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 134-R2 | Indecent Exposure  Before 1 Oct 07 | 1 | BCD | 6 M |
| 134-R3 | Indecent Language to Child under 16 | 2 | DD | 2 Y |
| 134-R4 | Indecent Language:  All Other | 1 | BCD | 6 M |
| 134-R5 | Indecent or Lewd Acts With Another Before 1 Oct 07 | 4 | DD | 5 Y |
| 134-S1 | Kidnapping | 7 | DD | Life |
| 134-S2 | Kidnapping: Child (Not Parent) | 7 | DD | Life |
| 134-S3 | Human Trafficking/Commercial Sex Acts | 3 | BCD | 6 M |
| 134-S4 | Human Trafficking/Involuntary Servitude | 3 | BCD | 6 M |
| 134-T1 | Mail:  Destroy, Steal, Take, Open | 3 | DD | 5 Y |
| 134-T2 | Mail: Deposit Obscenity | 3 | DD | 5 Y |
| 134-U1 | Misprision:  Serious Offense | 2 | DD | 3 Y |
| 134-U2 | Obstruct Justice | 3 | DD | 5 Y |
| 134-U3 | Perjury:  Subornation of | 3 | DD | 5 Y |
| 134-U4 | Wrongful Interferences w/Admin Proceeding | 3 | DD | 5 Y |
| 134-U5 | Public Record:  Alter/Remove | 2 | DD | 3 Y |
| 134-U6 | Request Commission Of Offense | 1 | None | 4 M |
| 134-U7 | Solicit Another to Commit Offense | * | Pres | Pres |
| 134U7A | Solicit Another to Commit Offense: Sex Offense | * | Pres | Pres |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 67 of 93

Table 1.  UCMJ Codes For DoD Use, Continued

| DIBRS CODE | DESCRIPTION | SEVERITY | MAXIMUM DISCHARGE | MAXIMUM CONFINEMENT |
|---|---|---|---|---|
| 134-U8 | Refuse To Testify | 2 | DD | 5 Y |
| 134-V1 | Unlawful Entry | 1 | BCD | 6 M |
| 134-V2 | Property:  Seizure, Destruction, Removal | 2 | DD | 1 Y |
| 134-V3 | Stolen Property: Receive/Conceal/ Buy $500 or Less | 1 | BCD | 6 M |
| 134-V4 | Stolen Property: Receive/Conceal/ Buy More than $500 | 2 | DD | 3 Y |
| 134-W1 | Sentinel:  Disrespect | 1 | None | 3 M |
| 134-W2 | Sentinel:  Loitering in Time of War | 8 | DD | 2 Y |
| 134-W3 | Sentinel:  Loitering at other Times | 1 | BCD | 6 M |
| 134-X1 | Threat: Bomb | 3 | DD | 5 Y |
| 134-X2 | Threat:  Communicate | 5 | DD | 3 Y |
| 134-Y1 | Crime and Offenses Not Capital | * | Pres | Pres |
| 134-Y2 | Assimilative Crimes Act of 1948, as Amended | * | Pres | Pres |
| 134-Y3 | Assimilative Crimes Act of 1948, as Amended: Sexually Violent Against a Minor | * | Pres | Pres |
| 134-Y4 | Assimilative Crimes Act of 1948, as Amended: Kidnapping a Minor | * | Pres | Pres |
| 134-Z- | Other 134 | * | Pres | Pres |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 68 of 93

APPENDIX 2 TO ENCLOSURE 2

TEMPLATE FOR ACKNOWLEDGEMENT OF MANDATORY
SUPERVISED RELEASE (MSR) BRIEFING

Figure.  Template for Acknowledgment of MSR Briefing

---

Subject:  Acknowledgement of Mandatory Supervised Release (MSR) Briefing

1.  In accordance with DoDI 1325.07, "Administration of Military Correctional Facilities and Clemency and Parole Authority:"  If you are not approved for or you have not accepted parole, you may be reviewed by your Military Department Clemency and Parole Board (C&PB) for release at your minimum release date under MSR.  MSR is similar to parole.  A prisoner released on MSR through good conduct time (GCT) and abatement credits is subject to supervision by a U.S. probation officer up to the full-term of the sentence imposed.

2.  If placed on MSR, you will be under the supervision of a U.S. probation officer with specific release conditions.  You will remain on supervised release provided you comply with conditions of release.  You will continue to be entitled to an annual clemency review by your Service C&PB.  The Service C&PB may, at its discretion or upon request of the supervising probation officer, modify any terms or conditions of supervision or may terminate supervision entirely.  Violations of MSR conditions may lead to revocation of MSR and possible return to confinement.

3.  You are required to complete a release plan.  Information required to complete your MSR plan includes where and with whom you will live with and, except in the case being medically disabled, either guaranteed employment, an offer of effective assistance to obtain employment, or acceptance in a valid educational or vocational program.  Obtaining this information and these documents in a timely manner will assist in your transition to MSR.  These documents can be sent directly to a correctional facility or can be sent to you and then delivered to the facility staff.  They do not have to be notarized or in a special format. GCT, earned time (ET), or special acts abatement (SAA) earned but held in abeyance will be awarded upon approval of an acceptable MSR plan.  Failure to prepare an acceptable MSR plan may result in no award of GCT, ET, and SAA or, for those inmates with vested abatement, forfeiture of abatement through a D&A board process.  Upon release on MSR, all GCT, ET, and SAA will be waived.

4.  It is to your advantage to prepare yourself for release through good behavior, program participation, preparation of a viable release plan, and acceptance of parole, if offered.  In either parole or MSR, you will be under some sort of supervision upon release.  Parole will be an earlier release from confinement than MSR.

5.  I, _____, have been briefed and provided a copy of this document concerning MSR.

Prisoner signature: _____  Date: _____

Briefed and served by: _____  Date: _____

---

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 69 of 93

APPENDIX 3 TO ENCLOSURE 2

ABATEMENT OF SENTENCES TO CONFINEMENT

1.  ABATEMENT.  GCT, ET, and SAA, as described in this appendix, are the only types of abatement of a sentence to confinement authorized in an MCF or for DoD prisoners transferred to an FBOP facility.

2.  GCT.  GCT is a deduction from a prisoner's release date for good conduct and faithful observance of all facility rules and regulations.

    a.  Eligibility

        (1)  Subject to section 7 of this appendix, GCT shall be awarded to each prisoner serving a sentence imposed by a court-martial for a definite term of confinement.

        (2)  For a prisoner who has an approved finding of guilty for an offense that occurred after October 1, 2004, the award of GCT shall be conditioned on the prisoner submitting an acceptable supervision plan and fully cooperating in all other respects with the mandatory supervision policy herein, if directed to do so.

        (3)  A pretrial prisoner shall earn GCT for confinement served, but any earned GCT shall not be awarded until a sentence is adjudged.

        (4)  GCT shall not be awarded to a prisoner who has a life, life without eligibility for parole, or death sentence.  A prisoner with one of these sentences shall earn GCT, but it shall be held in abeyance and awarded only if the sentence is reduced to a determinate length.

        (5)  Earned GCT for a prisoner not eligible for parole or MSR shall be administratively determined at the adjudged date solely as an administrative convenience for establishing the MRD.

    b.  Rate of Earning

        (1)  A prisoner, any of whose offenses occurred before January 1, 2005, shall have GCT calculated as:

            (a)  5 days for each month of the sentence, if the sentence is less than 1 year.

            (b)  6 days for each month of the sentence, if the sentence is at least 1 year, but less than 3 years.

            (c)  7 days for each month of the sentence, if the sentence is at least 3 years, but less than 5 years.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 70 of 93

(d)  8 days for each month of the sentence if the sentence is at least 5 years, but less than 10 years.

(e)  10 days for each month of the sentence, if the sentence is 10 years or more.

(f)  Partial month rates will be calculated IAW Table 2.

Table 2.  Old Partial Month Rate of Earning Table

| PORTION OF MONTH OF SENTENCE | LESS THAN 1 YEAR | NOT LESS THAN 1 YEAR AND LESS THAN 3 YEARS | NOT LESS THAN 3 YEARS AND LESS THAN 5 YEARS | NOT LESS THAN 5 YEARS AND LESS THAN 10 YEARS | 10 YEARS AND OVER, EXCLUDING LIFE | PORTION OF MONTH OF SENTENCE |
|---|---|---|---|---|---|---|
| 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| 2 | 0 | 0 | 0 | 0 | 0 | 2 |
| 3 | 0 | 0 | 0 | 0 | 1 | 3 |
| 4 | 0 | 0 | 0 | 1 | 1 | 4 |
| 5 | 0 | 1 | 1 | 1 | 1 | 5 |
| 6 | 1 | 1 | 1 | 1 | 2 | 6 |
| 7 | 1 | 1 | 1 | 1 | 2 | 7 |
| 8 | 1 | 1 | 1 | 2 | 2 | 8 |
| 9 | 1 | 1 | 2 | 2 | 3 | 9 |
| 10 | 1 | 2 | 2 | 2 | 3 | 10 |
| 11 | 1 | 2 | 2 | 2 | 3 | 11 |
| 12 | 2 | 2 | 2 | 3 | 4 | 12 |
| 13 | 2 | 2 | 3 | 3 | 4 | 13 |
| 14 | 2 | 2 | 3 | 3 | 4 | 14 |
| 15 | 2 | 3 | 3 | 4 | 5 | 15 |
| 16 | 2 | 3 | 3 | 4 | 5 | 16 |
| 17 | 2 | 3 | 3 | 4 | 5 | 17 |
| 18 | 3 | 3 | 4 | 4 | 6 | 18 |
| 19 | 3 | 3 | 4 | 5 | 6 | 19 |
| 20 | 3 | 4 | 4 | 5 | 6 | 20 |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 71 of 93

Table 2. Old Partial Month Rate of Earning Table, Continued

| PORTION OF MONTH OF SENTENCE | LESS THAN 1 YEAR | NOT LESS THAN 1 YEAR AND LESS THAN 3 YEARS | NOT LESS THAN 3 YEARS AND LESS THAN 5 YEARS | NOT LESS THAN 5 YEARS AND LESS THAN 10 YEARS | 10 YEARS AND OVER, EXCLUDING LIFE | PORTION OF MONTH OF SENTENCE |
|---|---|---|---|---|---|---|
| 21 | 3 | 4 | 4 | 5 | 7 | 21 |
| 22 | 3 | 4 | 5 | 5 | 7 | 22 |
| 23 | 3 | 4 | 5 | 6 | 7 | 23 |
| 24 | 4 | 4 | 5 | 6 | 8 | 24 |
| 25 | 4 | 5 | 5 | 6 | 8 | 25 |
| 26 | 4 | 5 | 6 | 6 | 8 | 26 |
| 27 | 4 | 5 | 6 | 7 | 9 | 27 |
| 28 | 4 | 5 | 6 | 7 | 9 | 28 |
| 29 | 4 | 5 | 6 | 7 | 9 | 29 |
| 30 | 5 | 6 | 7 | 8 | 10 | 30 |

(2)  With respect to a prisoner with an approved finding of guilty, all of whose offenses occurred after December 31, 2004, GCT shall be calculated at a rate of 5 days for each month of confinement, and 1 day for each 6-day portion of a month (see Table 3), regardless of sentence or multiple sentence length.

Table 3. Partial Month Rate of Earning Table

| NUMBER OF DAYS | GCT | NUMBER OF DAYS | GCT |
|---|---|---|---|
| 1 | 0 | 16 | 2 |
| 2 | 0 | 17 | 2 |
| 3 | 0 | 18 | 3 |
| 4 | 0 | 19 | 3 |
| 5 | 0 | 20 | 3 |
| 6 | 1 | 21 | 3 |
| 7 | 1 | 22 | 3 |
| 8 | 1 | 23 | 3 |
| 9 | 1 | 24 | 4 |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 72 of 93

Table 3.  Partial Month Rate of Earning Table, Continued

| NUMBER OF DAYS | GCT | NUMBER OF DAYS | GCT |
|---|---|---|---|
| 10 | 1 | 25 | 4 |
| 11 | 1 | 26 | 4 |
| 12 | 2 | 27 | 4 |
| 13 | 2 | 28 | 4 |
| 14 | 2 | 29 | 4 |
| 15 | 2 | 30 | 5 |

c.  Administration

(1)  The Military Services may elect to calculate an anticipated release date at the beginning of a prisoner's sentence to confinement based on the GCT that could be earned for the entire period of the sentence or sentences.  GCT shall reduce a prisoner's release date on a day-for-day basis.

(2)  If a sentence to confinement is later reduced by the convening authority, as a result of appellate action, or due to a grant of clemency, the prisoner's release date shall be recomputed based on the new sentence.

(3)  Upon return to confinement, a parole or supervised release violator shall earn GCT at the rate applicable to the sentence in effect at the time of the violation of parole or supervised release.

3.  ET.  ET is a deduction of days from a prisoner's release date earned for participation and graded effort in the areas of work, offense-related or other rehabilitation programs, education, self-improvement and personal growth, and support activities.

a.  Eligibility

(1)  A prisoner serving a sentence imposed by a court-martial is eligible to earn ET.

(2)  For a prisoner who has an approved finding of guilty for an offense that occurred after October 1, 2004, the award of ET shall be conditioned on the prisoner submitting an acceptable supervision plan and fully cooperating in all other respects with the mandatory supervision policy herein.

(3)  A pretrial prisoner is ineligible for ET.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 73 of 93

(4) A prisoner with a life, life without eligibility for parole, or death sentence shall earn ET, but such abatement shall be held in abeyance and only awarded if the sentence is reduced to a determinate sentence.

(5) The Commandant, USDB, shall evaluate a prisoner confined in a FBOP facility for ET at the time of the prisoner's annual clemency consideration. Based on the FBOP facility's annual evaluation and submissions, the Commandant shall determine the amount, if any, of ET to award the prisoner for the prior year, using the ET activities list and rates of earning in effect at the USDB. The amount of ET to be awarded shall not be based on the amount of ET the prisoner was earning prior to entering the FBOP system.

(6) ET may be awarded even though the prisoner has previous forfeitures of ET or GCT.

b. Rate of Earning

(1) An eligible prisoner may earn up to 8 days per month ET, regardless of sentence or multiple sentence length, for participation and graded effort in authorized component areas. ET shall only be earned when overall evaluations are average or higher.

(2) The Military Services may delegate to MCF commanders the authority to determine the activities eligible for ET at their respective facilities and, subject to limitations of section 6 of this appendix, the rate of earning at which a prisoner may earn ET by participating in those activities. The activities shall be published and made available to all prisoners.

(3) A prisoner may participate in activities during a given month that make him or her eligible for more than 8 days ET, but a maximum of 8 days ET may be earned per month.

(4) Incremental and proportional rates are authorized when a prisoner engages in an activity for a portion of a month.

c. Administration

(1) ET shall be recorded separately from GCT. A record of ET for each prisoner shall be maintained by the MCF.

(2) When calculating a prisoner's anticipated release date at the beginning of a prisoner's sentence to confinement, the Military Services shall not consider ET that could be earned during the sentence.

(3) Recommendations for award of ET may be made by a formal board or by any other method deemed appropriate by the Military Services, but shall be approved or denied by the MCF commander in full or in part.

(4) ET shall be earned, within authorized limits, through evaluation of the separate ET program components. Evaluation of each component shall be documented on the DD Form

2712, or on an equivalent form approved by the USD(P&R) at intervals determined by the Military Services, but at least quarterly, and shall reduce a prisoner's release date accordingly.

    d.  Limitations

        (1)  When an eligible prisoner does not enroll in, progress in, or complete available offense-related or maintenance programs primarily designed to address problems directly associated with their criminal offense or other rehabilitation programs, a maximum of 5 days ET per month may be earned within other components of the ET program.  This limitation does not apply to a prisoner on a waiting list for an offense-related or maintenance program, but no ET may be earned for that program until the prisoner successfully completes the program.  In the event the prisoner fails to successfully complete the entire offense-related or maintenance program none of the associated ET for program participation shall be earned.

        (2)  Subject to Military Service guidelines, a maximum of 5 days ET per month may be earned within the work component of the ET program.

        (3)  ET shall not be earned within 30 days of the scheduled release date from confinement.

    e.  Components

        (1)  Work.  A prisoner in an MCF, unless precluded from doing so because of a disciplinary, medical, or other reason determined appropriate by the MCF commander, shall engage in useful employment under appropriate supervision.

           (a)  A prisoner shall be employed in maintenance, support, and vocational training activities that provide work of a useful, constructive nature, consistent with their custody grade, physical and mental condition, behavior, confining offense, sentence status, previous training, individual correctional requirements, and installation/facility needs.

           (b)  A prisoner, when not engaged in prescribed training or counseling, shall perform full 8-hour days of useful, constructive work and a standard 40-hour workweek.  This restriction does not limit the authority of commanders to direct extra work during emergencies, prevent the assignment of a prisoner to details that normally encompass weekends, or prevent a prisoner from volunteering for extra work.

           (c)  Reception and orientation processing may qualify as work.

           (d)  A prisoner shall work a minimum of 40 hours each week to receive ET for work unless the MCF commander determines that the failure to complete 40 hours was due to factors outside the prisoner's control.  Up to 8 hours of offense-related programs per week can count towards the 40-hour workweek.

        (2)  Offense-Related or Other Rehabilitation Programs.  A prisoner may earn ET by conscientiously participating, e.g., progressing, in facility rehabilitation programs.  To the

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 75 of 93

maximum extent possible, ET programs shall address problems associated with a prisoner's criminal activity or behavior.

(3) <u>Education</u>. A prisoner may earn ET while pursuing formal education objectives, including but not limited to, completion of vocational education sequences, general equivalency degrees, or post-secondary degrees or credits when the institution awarding the certificate, license, diploma, degree, or credits to the prisoner has been accredited by an accrediting agency recognized by the U.S. Department of Education.

(a) Participation in non-traditional sources of educational credit, e.g., College-Level Examination Program, Defense Activity for Non-Traditional Educational Support, American College Test, and military education, may qualify for earning of ET when authorized by the Military Service responsible for the MCF.

(b) Time spent obtaining a certificate, license, diploma, degree, or post-secondary credits shall generally be in addition to the normal workweek for which ET for work can be earned, unless such coursework is related to vocational training and education.

(c) ET may be earned only for coursework performed by correspondence, classroom attendance, or participation in vocational training and education while in confinement.

(d) Once a prisoner achieves an education objective, additional ET shall not be earned for that objective.

(e) To be eligible for education ET, a prisoner's higher education objectives must be identified in writing, pre-authorized by the MCF commander, and on file with the MCF's academic division. The commander shall normally approve educational programs offered by an accrediting agency recognized by the U.S. Department of Education.

(4) <u>Self-Improvement and Personal Growth</u>. A prisoner may earn ET by participating in self-improvement and personal growth programs that have been identified in writing and pre-authorized by the MCF commander.

(5) <u>Support Activities</u>. A prisoner may earn ET by participating in support activities, to include community service programs, special projects and work assignments supportive of institutional goals or missions, volunteer work, and work encompassing weekends and holidays, and for extraordinary achievements that do not rise to the level of those for which special acts abatement may be earned.

4. <u>SAA</u>. SAA is a deduction of days from a prisoner's release date earned for a specific act of heroism, humanitarianism, or extraordinary institutional or community support deemed appropriate by the MCF commander.

a. <u>Eligibility</u>

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 76 of 93

(1)  A prisoner serving a sentence imposed by a court-martial is eligible for SAA.

(2)  For a prisoner who has an approved finding of guilty for an offense that occurred after October 1, 2004, the award of SAA shall be conditioned on the prisoner submitting an acceptable supervision plan and fully cooperating in all other respects with the mandatory supervision policy herein, if directed to do so.

(3)  A pretrial prisoner is not eligible for SAA.

(4)  A prisoner with a life, life without eligibility for parole, or death sentence may earn SAA, but such abatement shall be held in abeyance.

b.  <u>Rate of Earning</u>.  The Military Services may authorize a maximum of 2 days of SAA per month for a period not to exceed 12 months for a single special act.  At no time shall a prisoner receive more than 2 days of SAA per month; additional special acts may only extend the period of abatement, but may not increase the number of days of SAA that can be received in any given month.

c.  <u>Administration</u>.  SAA shall reduce a prisoner's normal release date on a day-for-day basis as earned.

5.  <u>MONTHLY LIMIT ON TOTAL OF ALL TYPES OF ABATEMENT</u>.  The total of GCT, ET, and SAA awarded for any 1 month shall not exceed 15 days.

6.  <u>PRISONER ACKNOWLEDGMENT OF CONDITIONAL AWARD OF ABATEMENT</u>.  A prisoner who has an approved finding of guilty for an offense that occurred after October 1, 2004 will be informed of and given an opportunity to acknowledge in writing during facility in-processing that the award of GCT, ET, or SAA is conditioned on the prisoner submitting an acceptable supervision plan and fully cooperating in all other respects with the mandatory supervision policy pursuant to this instruction, if directed to do so.  The acknowledgment shall also state that if the MCF commander determines that this condition has not been met, deductions from the prisoner's release date for earning GCT, ET, or SAA held in abeyance shall be not be awarded.

7.  <u>FORFEITURE AND RESTORATION OF ABATEMENTS</u>.  As a consequence of violations of institutional rules or the UCMJ, an MCF commander may direct that a prisoner forfeit GCT, ET, and SAA.

a.  <u>Forfeiture</u>

(1)  The MCF shall use a D&A board for forfeitures.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 77 of 93

(2)  Only abatement that has actually been earned before or on the date of a violation is subject to forfeiture.  GCT subtracted from a prisoner's release date IAW subparagraph 2.c.(1) of this appendix, but not yet earned, is not subject to forfeiture.

(3)  Generally, GCT will be forfeited prior to forfeiture of ET, and ET will be forfeited prior to forfeiture of SAA.

(4)  Sentences that have expired with allowance for GCT, ET, and SAA may not be revived for the purpose of forfeiting GCT, ET, and SAA earned thereon.

(5)  Earned GCT for a pretrial prisoner is subject to forfeiture in the same manner as a post-trial prisoner, but forfeitures shall be held in abeyance until the sentence to confinement begins.

b.  <u>Restoration</u>.  Forfeited GCT, ET, and SAA may be reinstated at the discretion of the MCF commander or, in the case of a prisoner transferred to the FBOP, the Commandant of the USDB.

APPENDIX 4 TO ENCLOSURE 2

LISTING OF OFFENSES REQUIRING SEX OFFENDER PROCESSING

1.  A Service member who is convicted in a general or special court-martial of any of the offenses listed in Table 4, must register with the appropriate authorities in the jurisdiction (State, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Northern Mariana Islands, the United States Virgin Islands, and Indian Tribes) in which he or she will reside, work, or attend school upon leaving confinement, or upon conviction if not confined.  Generally, this registration must take place within 3 days of release from confinement or within 3 days of conviction if not confined.

2.  Appropriate DoD officials, as designated in implementing Service regulations, must inform the person so convicted of his or her duty to register and must inform the appropriate officials in the offender's stated jurisdiction of residence as soon as possible after conviction (if not confined) and prior to the prisoner's release (if confined).  Any failure of the appropriate DoD officials to notify an offender of his or her requirement to register will not serve to relieve that offender of his or her duty to so register.

3.  A Service member convicted of any offenses listed in Table 4 or convicted of offenses similar to those offenses listed below, shall be advised that the individual jurisdictions in which the offender might live, work, or attend school may require registration for offenses not listed below. Each registration jurisdiction sets its own sex offender policy and laws.

4.  Effective immediately, reporting (and notice to convicted persons) is required based on a qualifying conviction of any offense listed below, without regard to the date of the offense or the date of the conviction for anyone currently incarcerated or under supervision (parole or mandatory supervised release).

5.  The offenses defined before October 1, 2007, are included to facilitate identification of those prisoners who were convicted of offenses occurring before October 1, 2007; however, reporting could still be required if the offense for which convicted occurred before October 1, 2007, but contained elements that would require reporting if the offense had occurred on or after October 1, 2007.

6.  Notwithstanding the offenses listed in Table 4, offenses under Articles 120 or 134 of the UCMJ that constitute only public sex acts between consenting adults do not require sex offender registration (i.e., indecent exposure).  An offense involving consensual sexual conduct between adults is not a reportable offense, unless the adult victim was under the custodial care of the offender at the time of the offense.  Additionally, an offense involving consensual sexual conduct is not a reportable offense if the victim was at least 13 years old and the offender was not more than 4 years older than the victim (as determined by date of birth).

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 79 of 93

Table 4. Offenses Defined before October 1, 2007

| UCMJ ARTICLE | DIBRS CODE | OFFENSE |
|---|---|---|
| 120 | 120A | Rape |
| 120 | 120B1/2 | Carnal Knowledge |
| 125 | 125A | Forcible Sodomy |
| 125 | 125B1/2 | Sodomy of a Minor |
| 133 | 133D | Conduct Unbecoming an Officer (involving any sexually violent offense or a criminal offense of a sexual nature against a Minor or kidnapping of a Minor) |
| 134 | 134-B6 | Prostitution Involving a Minor |
| 134 | 134-B6A | Pornography Involving a Minor |
| 134 | 134-C1 | Indecent Assault |
| 134 | 134-C4 | Assault with Intent to Commit Rape |
| 134 | 134-C6 | Assault with Intent to Commit Sodomy |
| 134 | 134-R1 | Indecent Act with a Minor |
| 134 | 134-R3 | Indecent Language to a Minor |
| 134 | 134-R5 | Indecent or Lewd Acts with Another |
| 134 | 134R6B | Possession of Child Pornography with Intent to Distribute |
| 134 | 134R6C | Distribution of Child Pornography |
| 134 | 134R6D | Production of Child Pornography |
| 134 | 134- S2 | Kidnapping of a Minor (by a person not parent) |
| 134 | 134-Z | Conduct Prejudicial to Good Order and Discipline (involving any sexually violent offense or a criminal offense of a sexual nature against a Minor or kidnapping of a Minor) |
| 134 | 134- Y3 | Assimilative Crime Conviction (of a sexually violent offense or a criminal offense of a sexual nature against a Minor) |
| 134 | 134-Y4 | Assimilative Crime Conviction of Kidnapping of a Minor |
| 80 | | Attempt (to commit any of the foregoing) |
| 81 | | Conspiracy (to commit any of the foregoing) |
| 82 | 082-A | Solicitation (to commit any of the foregoing) |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 80 of 93

Table 5.  Offenses Defined on or After October 1, 2007 and Before June 28, 2012

| UCMJ ARTICLE | DIBRS CODE | OFFENSE |
|---|---|---|
| 120(a)(1) | 120-A1 | Rape.  Using Force |
| 120(a)(2) | 120-A2 | Rape.  Causing Grievous Bodily Harm |
| 120(a)(3) | 120-A3 | Rape. Threatening Death, Grievous Bodily Harm, Kidnapping |
| 120(a)(4) | 120-A4 | Rape.  Rendering Unconscious |
| 120(a)(5) | 120-A5 | Rape.  Administering Drug, Intoxicant, Or Similar Substance |
| 120(b)(1) | 120-B3 | Rape Of Child.  12 to 16 Years Old |
| 120(b)(2) | 120-B4 | Rape Of Child.  Under 12 Years Old |
| 120(b)(2) | 120-B5 | Rape Of Child.  Using Force |
| 120(b)(2) | 120-B6 | Rape Of Child.  Causing Grievous Bodily Harm |
| 120(b)(2) | 120-B7 | Rape Of Child. Threatening Death, Grievous Bodily Harm, Kidnapping |
| 120(b)(2) | 120-B8 | Rape Of Child.  12 - Under 16 Years Old. Administering Drug, Intoxicant, Or Similar Substance. Rending Another Person Unconscious |
| 120(b)(2) | 120-B9 | Rape of a Child Administering Drug, Intoxicant, or Similar Substance |
| 120(c)(1)(A) | 120-C1 | Aggravated Sexual Assault.  Threatening Or Placing in Fear (Other than Of Death, Grievous Bodily Harm, Kidnapping) |
| 120(c)(1)(B) | 120-C2 | Aggravated Sexual Assault.  Causing Bodily Harm |
| 120(c)(2) | 120-C3 | Aggravated Sexual Assault.  When Victim is Substantially Incapacitated/Unable to Appraise Act, or Decline Participation, Or Communicate Unwillingness |
| 120(c) | 120-C4 | Aggravated Sexual Assault when Victim is Substantially Incapable to Communicate Unwillingness |
| 120(d) | 120-D1 | Aggravated Sexual Assault of a Child.  12 - Under 16 Years Old |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 81 of 93

Table 5. Offenses Defined on or After October 1, 2007 and Before June 28, 2012, Continued

| UCMJ ARTICLE | DIBRS CODE | OFFENSE |
|---|---|---|
| 120(e) | 120-E0 | Aggravated Sexual Contact by Administering a Drug, Intoxicant, or Other Similar Substance |
| 120(e) | 120-E1 | Aggravated Sexual Contact. |
| 120(e) | 120-E2 | Aggravated Sexual Contact. with a Child 12 to 16 Years Old Causing Grievous Bodily Harm |
| 120(e) | 120-E3 | Aggravated Sexual Contact with a Child Under 12 Years Old |
| 120(e) | 120-E4 | Aggravated Sexual Contact. Using Force |
| 120(e) | 120-E5 | Aggravated Sexual Contact. Using or Displaying a Dangerous Weapon |
| 120(e) | 120-E6 | Aggravated Sexual Contact Using Physical Violence, Strength, Power, or Restraint to any Person |
| 120(e) | 120-E7 | Aggravated Sexual Contact by Causing Grievous Bodily Harm |
| 120(e) | 120-E8 | Aggravated Sexual Contact by Using Threats or Placing in Fear |
| 120(e) | 120-E9 | Aggravated Sexual Contact by Rendering Another Unconscious |
| 120(f) | 120-F1 | Aggravated Sexual Contact with a Child 12 to 16 Years Old Using Force |
| 120(f) | 120-F2 | Aggravated Sexual Contact with a Child 12 to 16 Years Old Using or Displaying a Dangerous Weapon |
| 120(f) | 120-F3 | Aggravated Sexual Contact with a Child 12 to 16 Years Old by Suggestion or Possession of a Dangerous Weapon or Object |
| 120(f) | 120-F4 | Aggravated Sexual Contact with a Child 12 to 16 Years Old Using Violence, Strength, Power, or Restraint to any Person |
| 120(f) | 120-F5 | Aggravated Sexual Contact with a Child 12 to 16 Years Old by Causing Grievous Bodily Harm |
| 120(f) | 120-F6 | Aggravated Sexual Contact with a Child 12 to 16 Years Old by Using Threats or Placing in Fear |
| 120(f) | 120-F7 | Aggravated Sexual Contact with a Child 12 to 16 Years Old by Rendering Another Unconscious |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 82 of 93

Table 5.  Offenses Defined on or After October 1, 2007 and Before June 28, 2012, Continued

| UCMJ ARTICLE | DIBRS CODE | OFFENSE |
|---|---|---|
| 120(f) | 120-F8 | Aggravated Sexual Contact with a Child 12 to 16 Years Old by Administering a Drug, Intoxicant, or Other Similar Substance |
| 120(g) | 120-G1 | Abusive Sexual Contact by Using Threats or Placing in Fear |
| 120(g) | 120-G2 | Abusive Sexual Conduct Causing Bodily Harm |
| 120(g) | 120-G3 | Abusive Sexual Conduct when Victim is Substantially Incapacitated/Unable to Appraise Act, Decline Participation, or Communicate Unwillingness |
| 120(g) | 120-G4 | Abusive Sexual Contact with a Child 12 to Under 16 Years Old |
| 120(h) | 120- H1 | Indecent Liberty with a Child |
| 120(i) | 120- I1 | Indecent Acts |
| 120(j) | 120- J1 | Forcible Pandering |
| 120(k) | 120- K1 | Wrongful Sexual Contact |
| 120(l) | 120-L1 | Indecent Exposure |
| 125 | 125A | Forcible Sodomy |
| 125 | 125B1 | Sodomy of a Minor 12 to 16 Years Old |
| 125 | 125-B2 | Sodomy of a Minor Under 12 Years Old |
| 125 | 125-C | Sodomy, Other Cases |
| 133 | 133D | Conduct Unbecoming an Officer that describes conduct Otherwise Listed in this Table |
| 134 | 134-B6 | Prostitution Involving a Minor |
| 134 | 134-C4 | Assault with Intent to Commit Rape |
| 134 | 134-C6 | Assault with Intent to Commit Sodomy |
| 134 | 134-S1 | Kidnapping of a Minor (by a person not parent) |
| 134 | 134-Z | Pornography Involving a Minor |
| 134 | 134-Z | Conduct Prejudicial to Good Order and Discipline (involving any conduct otherwise listed in this table) |
| 80 | | Attempt (to commit any of the foregoing) |
| 81 | | Conspiracy (to commit any of the foregoing) |
| 82 | 082-A | Solicitation (to commit any of the foregoing) |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 83 of 93

Table 6. Offenses Defined on or After June 28, 2012

| UCMJ ARTICLE | DIBRS CODE | OFFENSE |
|---|---|---|
| 120(a) | 120AA | Rape, using unlawful force |
| 120(a) | 120AA1 | Rape |
| 120(a) | 120-AB | Rape, using force causing or likely to cause death or grievous bodily harm to any person |
| 120(a) | 120-AC | Rape, threatening that other person unconscious |
| 120(a) | 120-AD | Rape, first rending that person unconscious |
| 120(a) | 120-AE | Rape, administering to that other person by force or threat of force, or without the knowledge or consent of that person, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of that other person to appraise or control conduct |
| 120(b) | 120AA2 | Sexual Assault |
| 120(c) | 120AA3 | Aggravated Sexual Contact |
| 120(c) | 120AA4 | Abusive Sexual Contact |
| 120(c) | 120-CA | Aggravated Sexual Contact, using lawful force |
| 120(c) | 120-CB | Aggravated Sexual Contact, using force causing or likely to cause death or grievous bodily harm to any person |
| 120(c) | 120-CC | Aggravated Sexual Contact, threatening or placing that person in fear that any person will be subject to death, grievous bodily harm, or kidnapping |
| 120(c) | 120-CD | Aggravated Sexual Contact, first rendering that other person unconscious |
| 120(c) | 120-CE | Aggravated Sexual Contact, administering to that other person by force or threat of force, or without the knowledge or consent of that person, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of that other person to appraise or control conduct |
| 120(d) | 120-DA | Abusive Sexual Contact, threatening or placing that other person in fear |
| 120(d) | 120-DC | Abusive Sexual Contact, making a fraudulent representation that the sexual contact serves a professional purpose |
| 120(d) | 120-DD | Abusive Sexual Contact, inducing a belief by any artifice, pretense, or concealment that the person is another person |
| 120(d) | 120-DE | Abusive Sexual Contact, by committing sexual contact upon another person when the person knows or reasonably should know that the other person is asleep, unconscious, or otherwise unaware that the sexual contact is occurring |
| 120(d) | 120-DF | Abusive Sexual Contact, by committing sexual contact upon another person when the other person is incapable of consenting to the sexual contact due to impairment by any drug, intoxicant, other similar substance, and that condition is known or reasonably should be known by the other person |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 84 of 93

Table 6. Offenses Defined on or After June 28, 2012, Continued

| UCMJ ARTICLE | DIBRS CODE | OFFENSE |
|---|---|---|
| 120(d) | 120-DG | Abusive sexual contact, by committing sexual contact upon another person when the other person is incapable of consenting to the sexual contact due to impairment y a mental disease or defect or physical disability and that condition is known or reasonably should be known by the person |
| 120b(a) | 120BA1 | Rape of a Child (Under 12 years of age) |
| 120b(a) | 120BA2 | Rape of a Child (Has attained the age of 12) |
| 120b(a) | 120BA3 | Rape of a Child, at least 12 years of age, by threatening or placing that child in fear |
| 120b(a) | 120BA4 | Rape of a Child, at least 12 years of age, by rendering that child unconscious |
| 120(a) | 120B5 | Rape of a Child, at least 12 years of age, by administering to that child a drug, intoxicant, or other similar substance |
| 120b(b) | 120B B1 | Sexual Assault of a Child |
| 120b(c) | 120BC1 | Sexual Abuse of a Child, committing a lewd act with sexual contact |
| 120(b) | 120-BA | Sexual Assault, threatening or placing that other person in fear |
| 120(b) | 120-BC | Sexual Assault, making a fraudulent representation that the sexual act serves a professional purpose |
| 120(b) | 120-BD | Sexual Assault, including a belief by an artifice, pretense, or concealment that the person is another person |
| 120(b) | 120-BE | Sexual Assault, by committing a sexual act upon another person when the person knows or reasonably should know that the sexual act is occurring |
| 120(b) | 120-BF | Sexual Assault, by committing a sexual act upon another person when the other person is incapable of consenting to the sexual act due to impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person |
| 120(b) | 120-BG | Sexual Assault, by committing a sexual act upon another person when the other person is incapable of consenting to the sexual act due to impairment by a mental disease or defect, or physical disability, and that condition is known or reasonably should be known by the person |
| 120b(c) | 120BC2 | Sexual Abuse of a Child, committing lewd act by intentionally exposing one's genitalia, anus, buttocks, or female areola or nipple |
| 120b(c) | 120BC3 | Sexual Abuse of a Child, committing lewd act by communicating indecent language |
| 120b(c) | 120BC4 | Sexual Abuse of a Child, committing lewd act with indecent contact |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 85 of 93

Table 6. Offenses Defined on or After June 28, 2012, Continued

| UCMJ ARTICLE | DIBRS CODE | OFFENSE |
|---|---|---|
| 120c(a) | 120CA1 | Indecent Viewing, Visual Recording, or Broadcasting knowingly and wrongfully viewing the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy |
| 120c(a) | 120CA2 | Indecent Viewing, Visual Recording, or Broadcasting – knowingly photographing, videotaping, filming, or recording by any means the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy |
| 120c(a) | 120CA3 | Indecent Viewing, Visual Recording, or Broadcasting – knowingly broadcasting or distributing any such recordings that the person knew or reasonably should have known was made without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy |
| 120c(b) | 120 CB | Forcible Pandering |
| 120c(c) | 120CC | Indecent Exposure |
| 133 | 133D | Conduct Unbecoming an Officer, Other |
| 134 | 134-B6 | Prostitution |
| 134 | 134-C6 | Assault with Intent to Commit Sodomy |
| 134 | 134-S2 | Kidnapping of a Minor (by a person not parent) |
| 134 | 134-Z | Conduct Prejudicial to Good Order and Discipline (involving any conduct otherwise listed in this table) |
| 134 | 134R6A | Possession of Child Pornography |
| 134 | 134R6B | Possession of Child Pornography, with intent to distribute |
| 134 | 134R6C | Distribution of Child Pornography |
| 134 | 134R6D | Production of Child Pornography |
| 80 | | Attempt (to commit any of the foregoing) |
| 81 | | Conspiracy (to commit any of the foregoing) |
| 82 | 082-A | Solicitation (to commit any of the foregoing) |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 86 of 93

APPENDIX 5 TO ENCLOSURE 2

Table 7.  DoD Forms

| FORM NUMBER | NAME |
|---|---|
| 499 | Prisoner's Mail and Correspondence Record |
| 503 | Health Assessment Certification for Segregation |
| 504 | Request and Receipt for Health and Comfort Supplies |
| 506 | Daily Strength Record of Prisoners |
| 509 | Inspection Record of Prisoner in Segregation |
| 510 | Prisoner Request |
| 512 | Installation Custody – Minimum Custody Agreement |
| 515 | Roster of Prisoners |
| 553-1 | Parole/Mandatory Supervised Release (MSR) Violator Wanted by the Armed Forces |
| 2704 | Victim/Witness Certification and Election Concerning Prisoner Status |
| 2705 | Notification to Victim/Witness of Prisoner Status |
| 2706 | Annual Report on Victim and Witness Assistance |
| 2707 | Confinement Order |
| 2707-1 | Department of Defense Report of Result of Trial |
| 2708 | Receipt for Pre-Trial/Post Trial Prisoner or Detained Person |
|  |  |
| 2710 | Prisoner Background Summary |
| 2710-1 | Prisoner Sentence Computation |
| 2711 | Initial Custody Classification |
| 2711-1 | Custody Reclassification |
| 2712 | Prisoner Evaluation |
| 2713 | Prisoner Observation Report |
| 2714 | Prisoner Disciplinary Report/Action |
| 2715 | Clemency/Parole Submission |
| 2715-1 | Disposition Board Recommendation |
| 2715-2 | Prisoner Summary Data |
| 2715-3 | Prisoner Restoration, Return to Duty, and Clemency and Parole Statement |
| 2716 | Parole Acknowledgement Letter |
| 2716-1 | Department of Defense Certificate of Supervised Release |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 87 of 93

Table 7.  DoD Forms, Continued

| FORM NUMBER | NAME |
|---|---|
| 2717 | Department of Defense Voluntary/Involuntary Appellate Leave Action |
| 2718 | Prisoner Release Order |
| 2719 | Continuation Sheet |
| 2791 | Notice of Release/Acknowledgement of Convicted Sex Offender Registration Requirements |
| 2720 | Annual Correctional Report |

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 88 of 93

ENCLOSURE 3

INFORMATION REQUIREMENTS

1.  All forms have been cleared IAW DoD 7750.07-M (Reference (s)).

2.  The Military Services shall develop procedures to ensure that the MCF complete, submit, and update the corrections segment of the Defense Incident- Based Reporting System as required IAW DoDD 7730.47 (Reference (t)) and DoD 7730.47-M (Reference (u)).

3.  Annual confinement and clemency/parole reports shall be submitted to the Office of the USD(P&R) no later than February 16th for the preceding calendar year.  Military Services shall submit an annual confinement report using DD Form 2720, "Annual Correctional Report."  The Service central office for corrections matters shall approve the data on the DD Form 2720 before submission to Office of the USD(P&R), Attention:  Legal Policy, 4000 Defense Pentagon, Washington, DC 20301-4000.  The "Annual Correctional Report" has been assigned Report Control Symbol DD-P&R(A)2067 IAW Reference (s).

4.  The Military Departments shall establish procedures to ensure that required prisoner information is provided to the FBI for inclusion in the computerized criminal history file (III) of the National Crime Information Center.  The provision of prisoner information to the FBI is exempt from licensing IAW parts 101-11.204(b)(2)(iii) of Title 41 Code of Federal Regulations (Reference (v)).

5.  MCFs will consult with the local joint terrorism task force, or another similar agency on on-going but not less than semi-annually, on all terrorism matters to include:  lists of known terrorist prisoners in custody; intelligence regarding prisoners with suspected terrorist ties; and information regarding specific incidents, events, or threats affecting the MCF that have a possible terrorism connection.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 89 of 93

# GLOSSARY

## PART I.  ABBREVIATIONS AND ACRONYMS

ACA          American Correctional Association

BCD          bad conduct discharge

C&PB         clemency and parole board

DD           dishonorable discharge
DIBRS        Defense Incident-Based Reporting System
DIS          dismissal
DNA          deoxyribonucleic acid
DoDD         DoD Directive
DoDI         DoD Instruction
D&A          discipline and adjustment

ET           earned time

FBI          Federal Bureau of Investigations
FBOP         Federal Bureau of Prisons

GCT          good conduct time
GED          general equivalency diploma

IAW          in accordance with
ICE          Immigration and Customs Enforcement

M            month or months
MCF          military correctional facility
MLif         mandatory life sentence
MOA          memorandum of agreement
MRD          minimum release date
MSR          mandatory supervised release

NAF          nonappropriated fund
SAA          special acts abatement

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 90 of 93

UCMJ        Uniform Code of Military Justice
USACIL      U.S. Army Criminal Investigation Laboratory
USDB        U.S. Disciplinary Barracks
USD(P&R)    Under Secretary of Defense for Personnel and Readiness
USPO        U.S. Probation Officer


V/W         victim or witness
V/WAP       Victim/Witness Assistance Program

## PART II.  DEFINITIONS

These terms and their definitions are for the purposes of this instruction.

abatement

    ET.  A deduction of days from a prisoner's release date earned for participation and graded effort in the areas of work, offense-related or other rehabilitation programs, education, self-improvement and personal growth, and support activities.

    forfeiture.  The loss of ET/GCT/SAA directed by the MCF commander that has been held in abeyance awarded as a consequence of violations of institutional rules or the UCMJ.

    GCT.  GCT is a deduction of days from a prisoner's release date for good conduct and faithful observance of all facility rules and regulations.

    SAA.  A deduction of days from a prisoner's release date earned for a specific act of heroism, humanitarianism, or extraordinary institutional or community support deemed appropriate by the MCF commander.

action tantamount to a finding of guilty.  A court action where, notwithstanding the absence of a specific finding of guilty, the court proceeds in a manner that is inconsistent with any reasonable hypothesis other than an assumed guilt of misconduct.  The most common example of this exists where, under statutory authority, a court or other agency of the judicial or legal system (to include a State or county prosecuting attorney) without a specific finding of guilty, and with the consent of the individual, proceeds to subject the individual to some form of deprivation or restraint of the person's theretofore unfettered liberty for a period of time as a condition to some ultimate official act of grace, forgiveness, or dismissal of charges; for example, successful probation in return for a clean record.

adjudged date.  The date the sentence is announced.

crime of violence.  Any crime that has as an element that involves the use, attempted use, or threatened use of physical force against the person or property of another, or by its nature,

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 91 of 93

involves a substantial risk that physical force against the person or property of another may be used in committing the offense.

criminal offense against a victim who is a minor, under the age of 18 years.  Any criminal offense that consists of:

Kidnapping of a minor, except by a parent;

False imprisonment of a minor, except by a parent;

Criminal sexual conduct toward a minor;

Solicitation of a minor to engage in sexual conduct;

Use of a minor in a sexual performance;

Solicitation of a minor to practice prostitution;

Any conduct that by its nature is a sexual offense against a minor; or

An attempt to commit an offense described above in any of the offenses against a victim who is a minor for the purposes of this definition.

Conduct that is criminal only because of the age of the victim shall not be considered a criminal offense if the perpetrator is under the age of 18 years.

classification.  A process for determining the level of custody and program requirements for military prisoners.

confinement.  The restraint of a person imposed by order of competent authority, either pending disposition of charges (pre-trial) or as a result of a sentence adjudged by court-martial.

corrections council.  An authorized DoD board composed of corrections representatives from each Military Service and a representative from the Military Department C&PB from each Military Department and chaired by a senior staff member appointed by the USD(P&R).

custody.  The degree of supervision each military prisoner requires.

custody levels.  The classification level assigned to each military prisoner signifying the degree of supervision and type of restraint appropriate based on the prisoner, the circumstances of the confinement, and all other appropriate factors. The four basic custody levels are maximum custody, medium custody, minimum custody, and installation custody or trusty.  Facilities may further subdivide these custody grades as required to facilitate additional security controls.

MSR.  A form of conditional release granted to a qualifying individual who has served that portion of his or her sentence to confinement up to their MRD.  This form of release is served until the adjusted maximum release date unless otherwise revoked or remitted by the respective Military Department C&PB.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 92 of 93

parole.  A prisoner on a conditional release from confinement, under the guidance and supervision of a USPO.

prisoner.  A person sentenced by a court-martial to confinement or death and ordered into confinement by competent authority whether or not the sentence has been ordered approved by the convening authority.  A person placed into confinement by competent authority pending trial by court-martial is a pretrial prisoner.

privileged mail.  All correspondence between a prisoner and the President or Vice President of the United States, Secretaries of the Military Departments, courts, members of the U.S. Congress or their representatives, general counsels, inspectors-general or their representatives, clergy, the Service parole authority, the prisoner's defense counsel, or military or civilian attorneys of record is considered privileged mail.

risk

internal risk.  The potential danger a prisoner represents to staff, other prisoners, and the day-to-day good order of the facility.

external risk.  The potential danger a prisoner represents to the community for possible recidivism or other criminal behavior

return to military control date.  The date and hour when an absentee, deserter, or parole violator surrenders to, is delivered to, is apprehended by or for military authorities, or otherwise comes under the control of military personnel.

segregation

administrative.  The separation of a prisoner from general population to prevent injury to others or to himself or herself, or to promote the general, safe, and orderly administration of the MCF.

disciplinary.  The separation of a prisoner from general population as an administrative disciplinary measure.  A group of cells or secure rooms used to house those prisoners who have serious adjustment problems, or create anxiety and disruption among other prisoners in the general population.  Programs, movements, and privileges should be limited only as necessary for the maintenance of good order.

supervised release.  Both parole and MSR.

supervisee.  A prisoner on either parole or MSR.

Case 1:20-cv-00330-LCB-JEP   Document 26-1   Filed 06/10/21   Page 93 of 93